UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION AT TOLEDO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOE LIMA, LLC, | ) | Judge Whipple |
| | ) | |
| Debtor. | ) | Case No. 08-35508 (MAW) |

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION,
PURSUANT TO SECTIONS 105(A), 363(B), 364(B) AND 503(B)(9) OF THE
BANKRUPTCY CODE, FOR AN ORDER AUTHORIZING IT TO PAY THE
PREPETITION CLAIMS OF ADMINISTRATIVE CLAIMHOLDERS
AND GRANTING CERTAIN OTHER RELATED RELIEF**

GOE Lima, LLC, as debtor and debtor in possession (the "Debtor"), respectfully states as follows:

**Background**

1. On October 14, 2008 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor is authorized to continue to operate its business and manage its property as a debtor and debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtor is an Ohio limited liability company wholly owned by non-debtor Greater Ohio Ethanol, LLC ("GOE"). The manager of GOE is non-debtor GOE Management

{W1402233.4}      1

Company, LLC (the "Manager"). The Debtor maintains its corporate headquarters in Lima, Ohio.

4. The Debtor was formed for the purpose of constructing, owning and operating an ethanol production plant (the "Plant") capable of producing approximately 54 million gallons of ethanol per year (nameplate capacity). During the Plant construction process, the Debtor experienced significant design and construction issues, resulting in increased construction costs as well as delays in the completion of the Plant and commencement of operations.

5. The Debtor has entered into a five year "take or pay" offtake contract with BP Products North America, Inc. ("BP"), its only customer, to purchase a minimum of 90% of nameplate capacity, or 48.6 million gallons per year, of ethanol produced at the Plant (the "BP Contract"). The BP Contract effectively eliminates corn and natural gas pricing risk from the operational profit profile for the Debtor and removes the costs and risks associated with transporting ethanol from the Plant.

6. The Plant began producing ethanol in May, 2008 and construction was completed in July, 2008. The Debtor has experienced significant production, and consequently cash flow, issues due to electrical and equipment defects at the Plant.

7. The Debtor's inability to operate the Plant at expected production levels, in conjunction with the unanticipated costs of fixing the construction defects at the Plant and the current worldwide credit crisis, has left the Debtor with insufficient liquidity to continue its operations outside of the protection of chapter 11. Consequently, the Debtor has commenced

this case in order to assess, restructure and improve its business and manufacturing operations, while working with its bank lenders and other creditors to restructure its balance sheet.[1]

## Jurisdiction

8. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

9. Pursuant to Sections 105(a), 363(b), 364(b) and 503(b)(9) of the Bankruptcy Code, the Debtor hereby seeks the entry of an order: (a) authorizing, but not requiring, in the exercise of the Debtor's business judgment, the payment of certain claims for the value of goods received by the Debtor in the ordinary course of its business during the 20-day period prior to the Petition Date, which are entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code; and (b) granting related relief.

## Basis for Relief

10. The Debtor is highly mindful of its fiduciary obligations to seek to preserve and maximize the value of its estate. Accordingly, the preservation and maximization of the going concern value of the Debtor's business, including the preservation of key business relationships, are among management's primary goals as the Debtor transitions into Chapter 11. Providing seamless payment to certain essential suppliers is imperative to the Debtor's production of ethanol and related fuels, which accounts for 90% of the Debtor's sales. The Debtor has identified four corn suppliers holding prepetition claims totaling $876,695.02, whose ongoing

---

[1] A more detailed overview of the Debtor's business and the events leading to the commencement of this chapter 11 case can be found in the Affidavit of Gregory A. Kruger in Support of Chapter 11 Petition and First Day Motions

{W1402233.4} 3

support is critical to the Debtor's operations and whose claims are entitled to administrative expense priority (the "Twenty-Day Administrative Claims").

11. The Debtor does not have any viable alternatives to obtain substitute corn from other suppliers, even COD, because substitute corn is not available in sufficient quantities on a timely basis. Affidavit, ¶56. These four essential corn suppliers may have the ability to sell their corn to other existing or new customers perceived to offer less financial risk. *Id.* The Twenty-Day Administrative Claims of these essential suppliers arise from deliveries that were necessary for the Debtor's continued production during the first days of this chapter 11 case. In an all fairness, these claims should be paid. *Id*. For these reasons, the Debtor has determined that it must be able to satisfy the Twenty-Day Administrative Claims of these four essential suppliers to ensure that a sufficient amount of corn will continue to be available to it for its ethanol production, without interruption. *Id*.

### Request for Authority to Pay Claims Under Section 503(b)(9)

12. Under Section 503(b)(9) of the Bankruptcy Code, as administrative claims incurred in the ordinary course of the Debtor's business, the Debtor believes that it is authorized to pay Twenty-Day Administrative Claims pursuant to Sections 363(c)(1) of the Bankruptcy Code; however, as prepetition claims, the Debtor also believes that it is not required to reconcile or pay the Twenty-Day Administrative Claims prior to the conclusion of this case.

13. Accordingly, for the avoidance of doubt, the Debtor requests that the Court enter an order clarifying that the Debtor is authorized, but not required, to pay the Twenty-Day Administrative Claims, or any portion thereof, in the ordinary course of the Debtor's businesses on the terms and conditions set forth herein.

---

(the "Affidavit"), which was filed with the Court on October 16, 2008.

{W1402233.4}   4

*The Twenty-Day Administrative Claim Payments*

14. The Debtor's management and employees have exercised high levels of care in reviewing the facts and circumstances of its Twenty-Day Administrative Claims to determine which essential suppliers they believe could cause material business disruptions if the Debtor does not obtain the relief sought herein.

15. As a *quid pro quo* for, and as a condition to, the payment of the Twenty-Day Administrative Claims, the Debtor will require all recipients to make postpetition supply commitments on prepetition payment terms.

16. The Debtor seeks authority, in its sole discretion, to pay the Twenty-Day Administrative Claims, up to the maximum aggregate amount of $876,695.02 (the "Payment Cap").

*Twenty-Day Administrative Claim Payment Terms*

17. In an effort to ensure that the payment of any Twenty-Day Administrative Claims provides the Debtor with the maximum benefit to its estate, the Debtor proposes that each recipient of a payment (a "Twenty-Day Administrative Claim Payment") be required to: (a) continue to extend trade credit and provide other business terms on a postpetition basis (consistent with past practices), including with respect to any applicable credit limits, the pricing of goods, on terms at least as favorable as those extended prepetition, or on such other terms that are acceptable to the Debtor in its business judgment, until the Debtor emerges from chapter 11; and (b) release to the Debtor as requested goods or other assets of the Debtor in the essential supplier's possession (collectively, the "Trade Terms").

18. If the recipient of a Twenty-Day Administrative Claim Payment fails to provide the Debtor with the requisite Trade Terms, then (a) any Twenty-Day Administrative Claim Payment received will be deemed an unauthorized postpetition transfer under Section 549 of the

Bankruptcy Code that the Debtor may (i) recover in cash or goods or (ii) at the Debtor's option, apply against any outstanding administrative claim held by such recipient; and (b) upon recovery of any Twenty-Day Administrative Claim Payment, the corresponding prepetition claim will be reinstated in the amount recovered by the Debtor, less the Debtor's reasonable costs to recover such amounts.

*Procedures for Twenty-Day Administrative Claim Payments*

19. The Debtor shall implement and provide notice of the conditions set forth in the preceding paragraphs through the following procedures:

- Any check pursuant to which a Twenty-Day Administrative Claim Payment is made will be accompanied by (a) a letter from the Debtor explaining that acceptance of the check constitutes agreement to provide the Trade Terms and explaining the consequences of any failure to comply with such agreement and (b) a copy of the order granting this Motion (collectively, the "Administrative Claimant Information").

- If the Debtor makes Twenty-Day Administrative Claim Payment wire transfer or automated clearinghouse transaction, the Administrative Claimant Information will be sent by the Debtor, and received and agreed upon by the recipient, prior to the payment.

- Each check issued on account of a Twenty-Day Administrative Claim Payment may, in the Debtor's sole discretion, include a restrictive endorsement on the back of the check as follows:

By accepting this check, the payee agrees (a) to provide the payor and its affiliates with normalized trade credit and provide other business terms on a postpetition basis (consistent with past practices), including with respect to any applicable credit limits, pricing and the provision of equivalent levels of service, on terms at least as favorable as those extended to the payor and its affiliates prior to the commencement of payor's Chapter 11 case, or as are otherwise acceptable to the payor, for the duration of the payor's Chapter 11 case pending in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court"), and (b) upon request, to release to payor any property of payor in payee's possession. Payee hereby submits to the jurisdiction of the Bankruptcy Court for the enforcement of such agreement.

### Request for Authority for Banks to Honor and Pay Checks and Funds Transfers Related to Twenty-Day Administrative Claims

20. In addition, by this Motion, the Debtor requests that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtor in the Debtor's sole discretion, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to, Twenty-Day Administrative Claims, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtor represents that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Twenty-Day Administrative Claims. Accordingly, the Debtor believes that checks other than those relating to authorized payments will not be honored inadvertently.

21. The Debtor further represents that it has anticipated access to sufficient debtor in possession financing[2] to pay all Twenty-Day Administrative Claims, up to the amount of the Payment Cap.

22. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim constitutes a Twenty-Day Administrative Expense Claim; or (e) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

---

[2] Concurrently with the filing of this Motion, the Debtors have filed a motion seeking approval of the DIP Facility.

{W1402233.4}                                   7

### Request for Waiver of Stay

23. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." As set forth above, the immediate payment of the Twenty-Day Administrative Claims is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the ten-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Authority for the Requested Relief

*The Court Has The Discretion To Authorize The Immediate Payment of the Twenty-Day Administrative Claims.*

24. Under Section 503(b)(9), holders of allowed Twenty-Day Administrative Claims are entitled to payment at the conclusion of this case. Therefore, this Motion addresses only a timing issue as to the proposed payments. It is within the Court's sound direction, under section 105(a) of the Bankruptcy Code, to determine the timing of payment of administrative expenses under Section 503(b)(9). *See In re Bookbinders' Restaurant, Inc.*, 2006 WL 3858020 (Bankr. E.D.Pa. 2006).

25. In determining whether or not to permit the immediate payment of the Twenty-Day Administrative Claims as requested in the Motion, the Court may consider potential "prejudice to the debtor, hardship to the claimant, and ... detriment to other creditors." *See id.* (citing *In re Garden Ridge Corporation,* 323 B.R. 136, 143 (Bankr. D.N.J. 2005)).

26. As set forth herein, the Debtor believes that the immediate payment of four Twenty-Day Administrative Claims is imperative to its continued operations and success in this case, and that it will be significantly prejudiced absent such payments.

27. Absent Twenty-Day Administrative Claim Payments to the four essential corn suppliers, the Debtor's estate is at significant risk of loss of value due to ceased operations. As such, the Debtor submits that the Court, in its sound discretion, should permit the Debtor to make Twenty-Day Administrative Expense Claim Payments on the terms set forth herein in an amount not to exceed the Payment Cap.

28. Further, section 105(a) of the Bankruptcy Code permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Sixth Circuit jurisprudence, the Court's equitable powers arising under Section 105(a) of the Bankruptcy Code need not be utilized to enhance the powers granted by another provision of the Bankruptcy Code, but are only "constrained to actions or determinations that are 'not inconsistent' with the Bankruptcy Code." *ATD Corp. v. Advantage Packaging, Inc.* (In re ATD Corp.), 352 F.3d 1062, 1066 (6th Cir.2003). Allowing the payment of the Twenty-Day Administrative Claims is not inconsistent with any provision in the Bankruptcy Code.

*Courts Have Recognized A Debtor's Authority To Make Post petition Payments Of Essential Prepetition Claims Under A Variety Of Rationales.*

29. To justify payment of a pre-petition debt, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process. *See In re Eagle-Picher Industries, Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R.

{W1402233.4}                                            9

174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger v. Logansport, Crawfordsville and Southwestern R y. Co.*, 106 U.S. 286, 311 (1882)). Indeed, it is well established under the "doctrine of necessity" that bankruptcy courts have the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the going concern value of a debtor's business, thereby facilitating its reorganization. *See, e.g., Eagle-Picher* at 126, *Miltenberger*, 106 U.S. at 311 (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay preexisting debts of certain classes, out of the earnings of the receivership.. . ."); *Mich. Bureau of Workers' Disability Comp. v. Chateaugav (In re Chateaugav Corp.)*, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include authorizing a debtor to pay prepetition debts); *see also In re Lehigh & New England Rv. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "'necessity of payment' doctrine . . . 'permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid'") (citations omitted); *In re Just for Feet*, 242 B.R. 821, 825 (D. Del. 1999) (recognizing "the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during Chapter 11").

30.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. A debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect

and preserve the going concern value of an operating business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re SIS Corp.*, 108 B.R. 608, 609-10 (Bankr. N.D. Ohio 1989) (recognizing that payments on account of prepetition claims may be authorized by a court "premised upon overriding practical and policy reasons"); *In re CoServ. L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted).

31. Additionally, other Bankruptcy Code provisions imply that such post-petition payments may be authorized. Section 549(a) of the Bankruptcy Code, which governs postpetition transfers, provides that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case. . . that is not authorized . . . by the court." Thus, by necessary implication, a bankruptcy court may authorize appropriate postpetition payments to satisfy prepetition obligations. *See Dubuque Packing Co. v. Stonitsch (In re Isis Foods. Inc.)*, 37 B.R. 334, 336 n.3 (W.D. Mo. 1984) ("[P]roposed transfers [to pay prepetition claims may] be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack").

32. Certain of the payments proposed by the Motion may also be justified pursuant to section 364 of the Bankruptcy Code. At least one court has relied upon section 364(b) to authorize the payment of prepetition claims where the claimant agrees to provide postpetition credit in exchange for the payment of such claims. *See In re Payless Cashways, Inc*., 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing the debtor to pay the prepetition claims of

essential suppliers under Section 364 of the Bankruptcy Code where such vendors agreed to continue to do business with and extend credit to the debtor postpetition). The court reasoned that the approval of such an extension of credit is within the scope of the court's authority to authorize a debtor to obtain postpetition credit. *See id*. at 547. Here, the Debtor proposes to pay Twenty-Day Administrative Claims only upon the recipient's agreement to the Trade Terms, which may include credit extensions.

33. In a bankruptcy case, the proposed uses of a debtor's cash are divided into two categories by section 363 of the Bankruptcy Code. Where the proposed use is "in the ordinary course of business," the transaction may be undertaken by the debtor without bankruptcy court approval.[3] Conversely, where the proposed use is "other than in the ordinary course of business," the debtor may only engage in the transaction "after notice and a hearing." 11 U.S.C. § 363(b)(1). Thus, under Section 363 of the Bankruptcy Code, any possible use of all debtor's cash is permissible so long as it is approved by the court. Because the Motion and the Affidavit provide detailed explanations of the business reasons supporting the proposed use, the Debtor has met the requirement of applicable law, and the use of its cash in that manner should be approved by the Court.

34. The factual circumstances and record before the Court support the proposed payment of the pre-petition claims. The Motion and the Affidavit provide detailed, substantial factual backing in respect of the necessity of the relief requested in the Motion and the potentially harmful consequences that could befall the Debtor absent such relief. Further, this evidence demonstrates that all creditors are likely to benefit from the payment of the claims to be paid pursuant to this Motion.

## Conclusion

35. If the requested relief is not granted, there is a substantial risk that the Debtor's business operations would be significantly - and perhaps irreparably – undermined and any going concern value would be substantially diminished, if not lost. It is the Debtor's business judgment, therefore, that authority to pay immediately the four Twenty-Day Administrative Claims described in the Motion in an amount not to exceed the Payment Cap of $876,695.02 is absolutely essential to the success of this chapter 11 case and the Debtor's efforts to preserve and maximize value available to their stakeholders. Accordingly, for all of the reasons set forth herein and in the Motion and the Affidavit, the relief requested in the Motion should be granted in full.

## Memorandum of Law

36. This Motion includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, the Debtor respectfully requests that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(a) that a separate memorandum of law be submitted.

## Notice

37. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the creditors holding the twenty (20) largest unsecured claims against the Debtor's estates, as identified in the Debtor's chapter 11 petitions; (c) counsel to the DIP Agent; (d) counsel to the Prepetition Senior Agent; (e) counsel to the Prepetition Junior Lenders; (f) all other known parties with liens of record on assets of the

---

[3] See 11 U.S.C. § 363(c)(1) ("[T]he trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the

Debtor as of the Petition Date; (g) all financial institutions at which the Debtor maintains deposit accounts; (h) the landlords for all non-residential real properties occupied by the Debtor as of the Petition Date; (i) the local office for the Internal Revenue Service; (j) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001, or 9014 or requesting to receive notice prior to the date hereof.  The Debtor submits that no other or further notice need be provided.

## No Prior Request

36.	No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court (a) enter an order granting the relief requested herein; and (b) grant such other and further relief to the Debtor as the Court may deem proper.

Dated: October 16, 2008	Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

By: */s/ Timothy J. Hurley*
    Timothy J. Hurley (0006458) (*pro hac vice* admission pending)
    W. Timothy Miller (0059952)
    Paige Leigh Ellerman (0071561)
    Richard L. Ferrell, III (0063176)
    425 Walnut Street, Suite 1800
    Cincinnati, OH  45202
    (513) 381-2838 (Telephone)
    (513) 381-0205 (Facsimile)
    hurley@taftlaw.com
    miller@taftlaw.com
    ellerman@taftlaw.com
    ferrell@taftlaw.com

    **PROPOSED ATTORNEYS FOR DEBTOR AND DEBTOR-IN-**

---

ordinary course without notice or a hearing.").

# POSSESSION

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by the United States Bankruptcy Court's electronic transmission service and/or by Federal Express to all persons listed below at the addresses indicated on this 16th day of October, 2008.

/s/ Timothy J. Hurley

Gem, Inc.
Hussien Y. Shousher, President
6842 Commodore Drive
Walbridge, OH  43465
Fax:  (419) 666-7004

James S. Carr, Esq.
Jason R. Adams, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178
Email:  jcarr@kelleydrye.com

Center Line Electric
26554 Lawrence
Center Line, MI  48015
Fax:  (586) 759-2453

Nedra Corporation
8291 Road 21
Payne, OH  45880
Fax:  (419) 263-3230

Benchmark Design USA
2155 N. McMullen Booth
Clearwater, FL  33759
Fax:  (727) 669-7039

SSOE, Inc. Architects
Vincent P. DiPofi, Sr. Vice President
1001 Madison Avenue
Toledo, OH  43604-1585
Fax:  (419) 255-6101

PVS Nolwood Chemicals, Inc.
5639 Paysphere Circle
Chicago, IL  60674
Fax:  (313) 571-6765

American Electric Power
P.O. Box 24401
Canton, OH  44701-4401
Fax:  (614) 716-1560

Eagle Contr. & Envir Services
P.O. Box 872
Eastland, TX  76448-0872
Fax:  (254) 629-8625

FGDI
19901 N. Dixie Highway, Suite B
Bowling Green, OH  43402
Fax:  (419) 352-6710

Novozymes North America
P.O. Box 7247-7554
Philadelphia, PA  19170
Fax:  (919) 494-3421

Farmers Commission Co.
520 W Wyandot Avenue
P.O. Box 59
Upper Sandusky, OH  43351
Fax:  (419) 294-6348

Lippincott-Ace Electric
872 St. Johns Avenue
Lima, OH 45804-1536
Fax: (419) 222-2357

City of Lima – Utilities
P.O. Box 1198
Lima, OH 45802-1198
Fax: (419) 221-5207

Process Plus, LLC
James Wendle, President
1340 Kemper Meadow Drive
Cincinnati, OH 45240
Fax: (513) 742-7593

Brand Scaffold R&EP, Inc.
P.O. Box 91473
Chicago, IL 60693
Fax: (708) 957-0084

Edward L. Ripley, Esq.
King & Spalding, LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Email: eripley@kslaw.com

Bruce C. Silvers, Esq.
Kate K. Simon, Esq.
Anna M. Boelitz, Esq.
Bingham & McCutchen LLP
One State Street
Hartford, CT 06103-3178
Email: bruce.silvers@bingham.com

Kenneth M. Goodman
Office of the United States Trustee
HMM U.S. Courthouse
201 Superior Ave E, Suite 441
Cleveland OH 44114-1240
Email: Kenneth.M.Goodman@usdoj.gov

Ottawa Oil Co.
P.O. Box 346
Ottawa, OH 45875
Fax: (419) 523-5568

Alberici Constructors, Inc.
P.O. Box 795032
St. Louis, MO 63179
Fax: (314) 733-2001

Pump Pros
7601 Innovation Way
Mason, OH 45040
Fax: (513) 860-9775

Industrial Boiler & Mechanical
P.O. Box 5100
3325 N. Hawthorne Street
Chattanooga, TN 37406
Fax: (423) 629-5333

Patricia B. Fugée, Esq.
Roetzel & Andress
One SeaGate, Suite 1700
Toledo, OH 43604
Email: pfugee@ralaw.com

Maria D. Giannirakis
Office of the United States Trustee
H.M. U.S. Courthouse
201 Superior Avenue
Cleveland, OH 44114
Email: maria.d.giannirakis@usdoj.gov

Internal Revenue Service
1240 East Ninth Street, Room 457
Cleveland, OH 44199
Fax: (216) 522-2066

{W1404267.2}