**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION AT TOLEDO**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOE LIMA, LLC, | ) | Judge Whipple |
| | ) | |
| Debtor. | ) | Case No. 08-35508 (MAW) |

**DEBTOR'S MOTION TO ESTABLISH BID AND SALE PROCEDURES,
PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND
BANKRUPTCY RULES 6004 AND 6006 AND SUBJECT THERETO,
FOR THE SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS
AND THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED CONTRACTS**

GOE Lima, LLC, as debtor and debtor in possession (the "Debtor"), pursuant to Bankruptcy Code sections 363 and 365 and Bankruptcy Rules 6004 and 6006, moves this Court for entry of an order (the "Procedures Order") authorizing an auction process, approving bid procedures, and setting a final hearing (the "Sale Hearing") for the disposition of substantially all of the Debtor's assets and contracts and related relief (the "Motion"). In support of its Motion, the Debtor respectfully represents as follows:

<u>Summary of Relief Requested</u>

The Debtor is in the process of marketing substantially all of its assets and contracts for sale and seeks to establish procedures for a bid and sale process. The goal is a transparent process designed to determine the highest and best bid for the assets and contracts under current market conditions.

<u>Background</u>

1.      On October 14, 2008 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

{W1425734.3}

2.      The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An Official Committee of Unsecured Creditors has been appointed in this case (the "Committee").

3.      The Debtor is an Ohio limited liability company wholly owned by non-debtor Greater Ohio Ethanol, LLC ("GOE"). The manager of GOE is non-debtor GOE Management Company, LLC (the "Manager"). The Debtor maintains its corporate headquarters in Lima, Ohio.

4.      The Debtor was formed for the purpose of constructing, owning and operating an ethanol production plant (the "Plant") capable of producing approximately 54 million gallons of ethanol per year (nameplate capacity). During the Plant construction process, the Debtor experienced significant design and construction issues, resulting in increased construction costs as well as delays in the completion of the Plant and commencement of operations.

5.      The Debtor has entered into a five year "take or pay" offtake contract with BP Products North America, Inc. ("BP"), its only customer, to purchase a minimum of 90% of nameplate capacity, or 48.6 million gallons per year, of ethanol produced at the Plant (the "BP Contract"). The BP Contract effectively eliminates corn and natural gas pricing risk from the operational profit profile for the Debtor and removes the costs and risks associated with transporting ethanol from the Plant.

6.      The Plant began producing ethanol in May, 2008 and construction was completed in July, 2008. The Debtor has experienced significant production, and consequently cash flow, issues due to electrical and equipment defects at the Plant.

7.      The Debtor's inability to operate the Plant at expected productions levels, in conjunction with the unanticipated costs of fixing the construction defects at the Plant and current

{W1425734.3}

worldwide credit crisis, has left the Debtor with insufficient liquidity to continue its operations outside of the protection of chapter 11.[1]

8.     On November 7, 2008, SunTrust Bank, agent for the Debtor's pre- and post-petition lenders, informed the Debtor that it would no longer permit the use of its cash collateral for the production of any ethanol other than work-in-process at the Plant as of that date.

### Sale and Auction Procedures

9.     Pursuant to Bankruptcy Code sections 363 and 365, and Bankruptcy Rules 6004 and 6006, the Debtor seeks approval of procedures for the submission of bids and the sale of the Plant and related assets and assumption and assignment of associated executory contracts.  The Debtor in the exercise of its business judgment, after consulting with its senior secured/DIP lenders and the Committee, has decided to test the market and determine what value a sale of its assets will bring.  The Debtor's financial advisors, GlassRatner, will be working with others and will prepare basic information to send to prospective interested parties.  Parties that respond and are interested will then be required to execute a non-disclosure/confidentiality agreement and then be given access to various data.  Further, if interested parties desire a Plant visit, those arrangements can be made.

10.     The bid and sale process will be a cooperative effort by and between the Debtor, the senior secured/DIP lenders and the Committee (collectively the "Steering Committee").   It is anticipated that parties interested in submitting bids will also have the opportunity to meet with BP to discuss the BP Contract.  Parties must submit bids in accordance with the procedures described herein.

---

[1] A more detailed overview of the Debtor's business and events leading to the commencement of this Chapter 11 case can be found in the Affidavit of Gregory A. Kruger in Support of Chapter  11 Petition and First Day Motions and Applications, which was filed with the Court on October 16, 2008.

{W1425734.3}

11.     In order to facilitate an orderly sale process, the Debtor has prepared a "form" Asset Purchase Agreement (the "Agreement") providing for the purchase and sale of the Purchased Assets (defined below), in a form to be provided with notice of the bid procedures to parties in interest, interested bidders, and non-debtor parties to executory contracts, which contains the Debtor's preferred transaction terms and transaction structure.   A schedule of the executory contracts that may be assumed and assigned in conjunction with the Agreement will also be provided with notice of the bid procedures.  The Debtor has not selected a "stalking horse" bidder and, as a result, all potential purchasers will compete on a level playing field in connection with their efforts to acquire the Purchased Assets.  The Agreement contemplates a sale of the Purchased Assets, free and clear of liens, claims, encumbrances and other interests, and contains the following material terms:

   a.   <u>Purchased Assets</u> -- The Plant, and all related additions, fixtures as well as all equipment and machinery owned by the Debtor;

   b.   <u>Assumed Contracts</u> -- each bidder is entitled to select the executory contracts and unexpired leases that the bidder desires to acquire;

   c.   <u>Purchase Price</u> – paid in immediately available funds at closing;

   d.   <u>Assumed Liabilities</u> – include "cure" payments under assumed contracts, post-closing liabilities under assumed contracts, certain employee-related liabilities and post-closing liabilities related to or arising from the Purchased Assets or the Business;

   e.   <u>Required Cash Deposit</u> – $75,000 payable under the Agreement, tendered on the date the bidder's initial bid is submitted, plus an additional 10% of the purchase price payable by the successful bidder; and

   f.   <u>Postclosing Indemnification by Debtor</u> – none.

12.     The Agreement will be "shopped" in the marketplace using the sale and bidding process described below so as to ensure that the estate realizes the maximum value for the Purchased Assets.  The Debtor's proposed process for continuing to market the Purchased Assets for sale (the "Proposed Sale Process") is intended to ensure that all interested parties can compete on a level playing field in an open and fair process.  Accordingly, the Debtor requests that this

{W1425734.3}

Court approve the Proposed Sale Process, including the following bid procedures (the "Bid Procedures"):

a. <u>Initial Bid</u>. Any third party that is interested in acquiring all the Purchased Assets must submit an "Initial Bid" in conformance with the Bid Procedures by not later than 5:00 p.m. local time in Lima, Ohio on December 15, 2008 (the "Bid Deadline"). Any such Initial Bid must:

    i. Contain a signed definitive asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the form Agreement) with, at a minimum, the following requirements: (i) having substantially identical terms and conditions as the Agreement; (ii) containing terms and conditions no less favorable to the Debtor's estate than the terms and conditions in the Agreement (provided that no Initial Bid shall provide for the payment to the bidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement); (iii) the agreement should not be subject to any (1) financing contingency, (2) contingency relating to the completion of unperformed due diligence, (3) contingency related to the approval of the bidder's board of directors or other internal approvals or consents, (4) material adverse change clause, or (5) any conditions precedent to the bidder's obligation to purchase the Purchased Assets other than those in the Agreement; (iv) designating the executory contracts and unexpired leases as to which the bidder seeks assumption by the Debtor and assignment to the bidder and any other assets of the Debtor that are subject to the bid; (v) be subject to acceptance by the Debtor solely by its execution of the bid and approval of the bid by the Court; (vi) be accompanied by the deposit described below; (vii) be received at or prior to the Bid Deadline; and (viii) provide for the payment of an all-cash purchase price;

    ii. Include a cashiers' or certified check payable to the order of GOE Lima, LLC, debtor in possession representing a deposit in the amount of $75,000 (it being understood that deposits may also be sent by wire transfer of immediately available funds)[2];

    iii. To the extent not previously provided to the Debtor, be accompanied by evidence satisfactory to the Steering Committee in its reasonable discretion that the bidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under the Agreement (or its equivalent) in the event that it submits the Prevailing Bid at the Auction (as defined below);

    iv. Remain open and irrevocable until ten days after the entry of an order by the Court approving a definitive agreement providing for the sale of the Purchased Assets; and

---

[2] If a bidder submits a bid that is selected as the Prevailing Bid (as defined below) and such bidder subsequently defaults or breaches, then the deposit submitted by such bidder shall be deemed forfeited and shall be retained by the Debtor.

{W1425734.3}

v. Be submitted to (i) GOE Lima, LLC, 2485 Houx Parkway, Lima, Ohio 45804 Attention: President and CEO (Fax no.: (949) 281-2114), (ii) counsel to the Debtor, Taft Stettinius & Hollister LLP, 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202, Attention: Timothy J. Hurley (Fax no.: (513) 381-0205), (iii) financial advisors to the Debtor, GlassRatner Advisory & Capital Group, LLC, 200 Barr Harbor Drive, Suite 400, W. Conshohocken, Pennsylvania, 19428, Attention: Ian Ratner and Wayne Weitz (Fax no.: (815) 301-8656), (iv) counsel to the lenders providing postpetition secured financing, King & Spalding LLP, 1100 Louisiana, Houston, Texas 77002, Attention: Sarah R. Borders (Fax no: (404) 572-5100) and Edward L. Ripley (Fax no.: (713) 751-3290), and (v) counsel to the Committee, Frost Brown Todd LLC, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio 45202, Attention: Beth A. Buchanan and Ronald E. Gold (Fax no: (513) 651-6981) in each case so as to be received not later than the Bid Deadline. The Steering Committee may extend the Bid Deadline without further notice and for one or more bidders, but shall not be obligated to do so. The Debtor has been, and will continue, providing due diligence information to potential bidders; provided, however, the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline or to any person that the Steering Committee determines is not reasonably likely to be a Qualified Bidder. The Debtor will provide non-public due diligence information only to those parties who have entered into appropriate confidentiality arrangements with the Debtor.

b. Auction. In the event that the Debtor timely receives two or more conforming Initial Bids from prospective purchasers as described above (each, a "Qualified Bidder"), then the Debtor, in consultation with the Steering Committee, may conduct an auction with respect to the sale of the Purchased Assets on December 17, 2008, beginning at 11:00 a.m. local time, at the offices of Taft Stettinius & Hollister LLP, or at such other location as may be designated by the Debtor, in consultation with the Steering Committee (the "Auction"). Based upon the terms of the qualified bids received, the level of interest expressed as to particular assets, and such other information as the Debtor determines is relevant, the Debtor may conduct the Auction in the manner the Debtor determines, in consultation with the Steering Committee, will achieve the maximum realizable value for the Purchased Assets. In order to participate in the Auction, each prospective purchaser shall be required to comply with the requirements of the Bid Procedures and to submit an Initial Bid that is timely and that complies in all respects with the Bid Procedures Order. At the Auction, Qualified Bidders may submit successive bids in increments of at least $50,000 greater than the prior bid for the purchase of the Purchased Assets until there is only one offer that the Debtor, in consultation with the Steering Committee determines is the highest or best offer, subject to Bankruptcy Court approval (the "Prevailing Bid"). Qualified Bidders shall also be permitted to make other modifications to their bids at the Auction in order to make their bids more

{W1425734.3}

favorable to the estate. All bidding for the Purchased Assets will be concluded at the Auction and there will be no further bidding at the Sale Hearing. If no conforming Initial Bid from a Qualified Bidder shall have been received at or prior to the Bid Deadline, the Auction will not be held and the Sale Hearing will be cancelled.

c.   Sale Hearing. The Sale Hearing will be conducted at _____ p.m. local time, on December 19, 2008, at the United States Bankruptcy Court, 411 U.S. Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio 43604, before the Honorable Mary Ann Whipple, United States Bankruptcy Judge, at which time the Debtor intends to present the Prevailing Bid or Bids for approval by the Court pursuant to the provisions of Sections 105, 363(b), 363(f), 363(m), 363(n), and 365 of the Bankruptcy Code. The Debtor shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing. Upon the failure to consummate a sale of the Purchased Assets after the Sale Hearing because of the occurrence of a breach or default under the terms of the Prevailing Bid, the next highest or otherwise best bid, as disclosed at the Sale Hearing, shall be deemed the Prevailing Bid without further order of the Court and the parties shall be authorized to consummate the transaction contemplated by the backup Prevailing Bid.

d.   Highest and/or Best Bid. At all times during the Proposed Sale Process, the Debtor, in consultation with the Steering Committee, retains the right to determine which bid constitutes the highest or otherwise best offer for the purchase of the Purchased Assets, and which bid should be selected as the Prevailing Bid, if any, all subject to final approval by the Court pursuant to the provisions of Section 363(b) of the Bankruptcy Code. When evaluating the bids, the Debtor and the Steering Committee shall consider the financial and contractual terms of each bid and factors affecting the speed and certainty of closing each bid. Without limiting the generality of the foregoing, the Debtor may, at any time before entry of an order of the Court approving a Prevailing Bid, reject any bid that, after consultation with the Steering Committee, is determined to be (i) inadequate or insufficient, (ii) contrary to the requirements of the Bankruptcy Code or the Proposed Sale Process, or (iii) contrary to the best interests of the estate or its creditors. The Debtor may adopt rules for the Auction, in consultation with the Steering Committee, that will better promote the goals of the Auction. Upon the Steering Committee's determination of the Prevailing Bid, the prevailing bidder must tender a deposit in the amount of 10% of the purchase price by cashiers' or certified check payable to the order of GOE Lima, LLC, debtor in possession (it being understood that such deposit may also be sent by wire transfer of immediately available funds);

e.   Sale Implementation. Following the approval of the Prevailing Bid or Bids at the Sale Hearing, the Debtor will be authorized to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the Prevailing Bid, including (but not limited to) seeking entry of one or more sale orders.

{W1425734.3}

13.     The Debtor believes that the Proposed Sale Process offers the best opportunity for the Debtor to maximize the value of the Business and the Purchased Assets for the benefit of its estate following significant marketing efforts, taking into account the current circumstances and funding environment available to the Debtor.  Therefore, the Debtor believes that implementation of the Proposed Sale Process is in the best interests of the estate herein, and should be approved.

## **Relief Requested**

14.     By this Motion, the Debtor requests that the Court grant the following relief:

a.  Following the Bid Procedures Hearing, enter an order approving the Proposed Sale Process and the Bid Procedures, including the procedures for submitting Initial Bids, conducting the Auction and identifying the Prevailing Bid or Bids; and

b.  Following the Sale Hearing, enter one or more orders approving the sale of the Purchased Assets in accordance with the Proposed Sale Process and making the following determinations, among others, with respect to such sale or sales:

   i.   that such sale has been agreed upon, and will be made and completed, in good faith, for purposes of the provisions of Section 363(m) of the Bankruptcy Code;

   ii.  that such sale shall be made, and the Purchased Assets shall be delivered to the successful bidder, free and clear of any and all liens, claims, encumbrances and interests (other than as specified in the definitive agreement);

   iii. that the parties who submitted Prevailing Bids shall receive good, valid and marketable title to the purchased assets (including the executory contracts and unexpired leases included within each Prevailing Bid that is approved by the Court);

   iv.  that the ten (10) day stay period provided for in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure shall not be in effect with respect to the Sale Order and the Sale Order shall be effective and enforceable immediately upon its entry; and

   v.   that pursuant to the Orders of the Court, the DIP Liens shall attach to the sale proceeds and that such liens, claims, encumbrances and interests in or to the Purchased Assets shall attach to the proceeds in the same manner and priority as existed on the Petition Date.

{W1425734.3}

<u>**Legal Arguments In Support of Requested Relief**</u>

    A.    <u>**The Proposed Sale of Purchased Assets and/or Assumption and Assignment of Executory Contracts Is Within the Sound Business Judgment of the Debtor.**</u>

15.    Section 363 of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ... ." 11 U.S.C. § 363(b)(1). Under the laws of this Circuit, a court may approve a sale of a debtor's assets under Section 363(b) "when a sound business purpose dictates such action." *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 290 (6th Cir. 1986). In making its determination, a court should consider the following factors: whether the terms of the proposed sale reflect the highest and best offer for the assets, whether the negotiations were conducted at arm's length, and whether the sale is in the best interest of the estate and its creditors. *In re Nicole Energy Services, Inc.***,** 385 B.R. 201 (Bankr. S.D. Ohio 2008)(citations omitted); *see also W.A. Mallory Co., Inc.*, 214 BR. 834, 836 (Bankr. E.D. Va. 1997); *In re WBO Partnership*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

16.    Similarly, a debtor in possession may assume an executory contract where assumption is a reasonable exercise of its business judgment. *See* 11 U.S.C. § 365(a); *Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc.***,** 25 B.R. 484 (Bankr. S.D. Ohio 1982); *see also In re Extraction Techs.*, 296 B.R. 393, 399 (Bankr. E.D. Va. 2001); *In re Richmond Metal Finishers*, 756 F.2d 1043, 1046-47 (4th Cir. 1985). This requirement is satisfied where a debtor in possession determines in good faith that assumption of an executory contract will benefit the estate. *See In re Gucci*, 193 B.R. 411, 414-15 (S.D.N.Y. 1996).

17.    Courts generally show great deference to a debtor in possession's decisions when applying the business judgment standard. *See In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy

{W1425734.3}

court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw."). Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Richmond Metal Finishers*, 756 F.2d at 1047.

18.     The proposed sale of the Debtor's assets and the assumption and assignment of the Debtor's executory contracts as contemplated herein is justified by the circumstances of the Debtor's chapter 11 case. The Debtor has ceased its ethanol production operations and is attempting to orderly liquidate its assets for the benefit of the its estate and creditors. As part of this process, the Debtor seeks to potentially generate cash proceeds for the benefit of the Debtor's estate and creditors. *See* 11 U.S.C. 365(d)(3); *In re TreeSource Indus.*, 363 F.3d 994, 997 (9th Cir. 2004).

19.     The timeline provided by the proposed auction process is necessary to obtain the maximum value for the Debtor's assets and to preserve the value of the Plant under the circumstances. This timeline will not, however, come at the expense of parties in interest. The proposed auction procedures provide parties with ample opportunity to object, appear and be heard with respect to all dispositions contemplated by the auction process. *See In re US Airways Group, Inc.*, 287 B.R. 643, 646-49 (Bankr. E.D. Va. 2002) (approving "fast track" authority to renegotiate or reject executory contracts where rights of interested parties are preserved).

20.     The notice provided by the Debtor will provide sufficient notice for the relief requested herein. With respect to a sale of estate assets, notice is sufficient if it includes the terms and conditions of the sale, states the time for filing objections and provides a general description of the property. *See WA. Mallory*, 714 B.R. at 837; *WBO Partnership*, 189 B.R. at 103.

{W1425734.3}

21.     Subject to this Court's approval, the Debtor will provide notice of the auction to interested parties by serving the order approving this Motion. The order will clearly identify the deadline fixed for filing objections to any disposition of Debtor's assets and/or executory contracts. The notice will also include the auction procedures, a list of the executory contracts that may be assumed and assigned, and terms of the sale agreement and will be served to, among others, entities known or thought to have a bona fide interest in the relief requested, all parties to executory contracts, and all parties who have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtor's chapter 11 case.

22.     The proposed auction procedures will ensure that each transaction contemplated by the auction will be conducted in good faith.  A purchaser's good faith may be satisfied where a sale is the product of arm's-length negotiations between parties.  *See WBO Partnership*, 189 B.R. at 103 (stating that "[a] negotiation conducted at arm's length helps to ensure that the agreed price ultimately will be fair and reasonable"); *In re Apex Oil Co.*, 92 B.R. 847, 870 (Bankr. E.D. Mo. 1988).  Alternatively, lack of good faith is typically determined by actions that involve fraudulent conduct, collusion or an attempt to take unfair advantage of other bidders during the sale proceedings.  *See In re Willemain*, 764 F.2d 1019, 1023 (4th Cir. 1985).

23.     The auction procedures require each disposition to be an arm's-length transaction.  The Debtor intends to undertake significant marketing efforts in order to seek the largest potential buyer pool.  The auction procedures require each eligible bidder to submit extensive documentation with respect to its financial ability to close on the sale of any assets and/or to its ability to satisfy obligations under the executory contracts.  Eligible bids will be analyzed with respect to the bidder's ability to consummate a transaction swiftly.  The open auction will also provide transparency to the bidding process and make reasonably certain that any successful bid is

     {W1425734.3}

the highest or otherwise best bid for such asset, all under the direction and supervision of the Steering Committee.

24.     The auction procedures will ensure that that any price obtained for the assets will be fair and reasonable.  The competitive bidding process should enable the Debtor to capture value from the assets and/or executory contracts for the benefit of the Debtor's estate and creditors by taking full advantage of the potential buyer pool.  The financial information required of eligible bidders will also permit the Debtor and the Steering Committee to analyze each bid with respect to the potential purchaser's ability to satisfy the financial obligations assumed thereby.  Furthermore, the marketing efforts the Debtor intends to undertake prior to the auction will ensure that any successful bids represent a fair value for the assets in question.  *See W.A. Mallory*, 214 B.R. at 837-38.  The flexibility provided by the auction procedures is consistent with the discretion typically afforded procedures governing the disposition of assets under section 363(b).  *See id*. at 838 (stating that "[e]stablishing an arbitrary percentage which a proposed purchase price needs to meet before a sale is consummated does not serve the purposes of the Bankruptcy Code...").  If a party raises legitimate concerns about the extent to which the auction procedures will ensure fair value for the Debtor's assets, the Debtor intends to present evidence at the final sale hearing confirming that such a price is reasonable under the circumstances.

25.     In sum, the proposed sale procedures contemplated herein reflect a sound business purpose and are a valid exercise of the Debtor's business judgment.

**B.     The Debtor Will Cure All Defaults Under Any Assumed Executory Contracts And Parties Will Receive Adequate Assurances of Future Performance.**

26.     A debtor in possession may assume and assign an executory contract only where the trustee has cured all existing defaults under that executory contract.  *See* 11 U.S.C. § 365(b)(1), (f)(2); *see In re Shangra-La. Inc*., 167 F.3d 843, 849 (4th Cir. 1999).  In addition, a debtor in

{W1425734.3}

possession must provide adequate assurance of future performance under the assumed executory contract if the debtor has defaulted. *See* 11 U.S.C. § 365(b)(1), (f)(2); *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). The requirements of "adequate assurance" depend on the facts and circumstances of each case. *See, e.g., In re Martin Paint Stores*, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996).

27.     If a party requires, at the final sale hearing, the proposed buyer will demonstrate that any proposed transfers consummated through the assumption and assignment of executory contracts as contemplated herein will satisfy the requirements of section 365(b) and (f).   The Debtor believes that the sale price and process for the assets sold pursuant to the auction will be sufficient to cure any defaults applicable to assumed executory contracts.   The auction procedures require each potential assignee to provide assurances to satisfy the standards set forth in the Bankruptcy Code. *See Ames*, 287 B.R. at 115-16.   For example, the auction procedures require each bidder to provide financial information regarding the bidder's ability to fulfill its financial obligations. *See In re CilycoGenesys, Inc.*, 352 B.R. 568, 578 (Bankr. D. Mass. 2006) (stating that "it is appropriate to evaluate the financial condition of the assignee and the likelihood that the non-debtor will receive the benefit of its bargain from the assignee.").

## C.     The Auction Will Satisfy the Requirements of Section 363(f) for a Sale Free and Clear.

28.     By this Motion, the Debtor seeks entry of an order authorizing the disposition of the Debtors' assets and/or interests in its executory contracts free and clear of any interest, pursuant to section 363(f) of the Bankruptcy Code, including, without limitation, any claims (as that term is defined in Bankruptcy Code), liens (including, without limitation, mechanic's, materialmen's or other consensual and non-consensual liens and statutory liens), leases, subleases, licenses, contracts, guaranties, options, rights of recoupment, rights of recovery, claims for reimbursement,

claims for contribution, claims for indemnity, claims for environmental liability, claims for tax liability, decrees of any court or foreign or domestic governmental entity, or other encumbrances upon the assets and/or executory contracts that are the subject of such sale and/or assumption and assignment, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the petition date, whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, with all the foregoing to attach to the cash proceeds of the sale as adequate protection thereof, pursuant to section 363(e) of the Bankruptcy Code, in the order of their priority with the same validity, force and effect which they now have, subject to any claims or defenses the Debtor or any other party in interest may possess with respect thereto.

29.     Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate free and clear of all interests (including liens, claims and encumbrances) if (a) applicable nonbankruptcy law permits the sale of such property free and clear of such interest (b) the entity with the interest consents, (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (d) such interest is in *bona fide* dispute or (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. *See* 11 U.S.C. § 363(f); *see also Precision Indus. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003). Section 363(f) is drafted in the disjunctive. Satisfaction of any one of the factors set forth in section 363(f) allows a sale, including the dispositions contemplated herein, and transfer assets of the estate free and clear. However, pursuant to Bankruptcy Code section 363(f)(2), the senior secured/DIP Lenders must consent to the Prevailing Bid and Prevailing Bidder, and the Banks reserve their rights to credit bid

at any time prior to the conclusion of the Sale Hearing, pursuant to Bankruptcy Code section 363(k).

30.     The Debtor believes that creditors with any interest in the assets and/or executory contracts will consent to the proposed dispositions free and clear of liens, claims, encumbrances and other such interests, if applicable.  *See* 11 U.S.C. §363(f) (2).  As noted, above, the auction should enable the Debtor to realize the highest and best offers, if any, for the assets and/or executory contracts.  *See Ames*, 287 B.R. at 118-19.  To the extent such creditors do not consent explicitly or implicitly, the Debtor believes that the sale will satisfy one or more of the factors in section 363(f), including by the disposition order entered after the final sale hearing providing that any relevant interests attach to the applicable proceeds of such sale to the same extent, priority and validity as in the applicable asset and/or executory contract.

D.     **The Successful Bidders at the Auction Will Be Entitled to the Protections Afforded to Good Faith Purchasers.**

31.     A good faith purchaser who has acquired an assignment of rights under a debtor's assumed executory contract is protected from the untimely reversal or modification of the transaction.  *See* 11 U.S.C. § 363(m); *Weingarten Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 743-44 (6th Cir. 2005).  A good faith purchaser, in turn, is one who purchases assets for value through an arm's-length transaction.  *See Willemain*, 764 F.2d at 1023.

32.     The auction procedures ensure that any transaction will be conducted with arm's-length negotiations through which the Debtor will seek to maximize the value available for its assets and/or executory contracts and relieve the burdens associated therewith.  The Debtor therefore requests that any successful bidders be (a) deemed a purchaser in good faith and (b) afforded all the protections available under section 363(m) of the Bankruptcy Code.

{W1425734.3}

## Memorandum of Law

33.     This Motion includes citations to the applicable authorities and does not raise any novel issues of law.  Accordingly, the Debtor respectfully requests that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(a) that a separate memorandum of law be submitted.

## Notice

34.     No trustee or examiner has been appointed in this chapter 11 case.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the creditors holding the twenty (20) largest unsecured claims against the Debtor's estates, as identified in the Debtor's chapter 11 petitions; (c) counsel to the DIP Agent; (d) counsel to the Prepetition Senior Agent and DIP lenders; (e) counsel to the Prepetition Junior Lenders; (f) counsel to the Official Committee of Unsecured Creditors; (g) all other known parties with liens of record on assets of the Debtor as of the Petition Date; (h) the landlords for all non-residential real properties occupied by the Debtor as of the Petition Date; (i) the local office for the Internal Revenue Service; (j) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001, or 9014 or requesting to receive notice prior to the date hereof (the "Auction Notice Parties").  The Debtor submits that no other or further notice need be provided.

## No Prior Request

35.     No prior request for the relief sought in this Motion has been made to this or any other court in connection with this chapter 11 case.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order establishing the bid and sale procedures described herein and grant such other and further relief to the Debtor as the Court may deem proper.

Dated: November 14, 2008

{W1425734.3}

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

By: */s/ Timothy J. Hurley*
  Timothy J. Hurley (0006458) (*pro hac vice*)
  W. Timothy Miller (0059952)
  Paige Leigh Ellerman (0071561)
  Richard L. Ferrell, III (0063176)
  425 Walnut Street, Suite 1800
  Cincinnati, OH  45202
  (513) 381-2838 (Telephone)
  (513) 381-0205 (Facsimile)
  hurley@taftlaw.com
  miller@taftlaw.com
  ellerman@taftlaw.com
  ferrell@taftlaw.com

**ATTORNEYS FOR
DEBTOR AND DEBTOR-IN-
POSSESSION**

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing has been furnished by the United States Bankruptcy Court's electronic transmission service and/or by electronic mail and/or by Federal Express and/ or U.S. Mail, overnight, postage prepaid to all persons listed below at the addresses indicated on this 14th day of November, 2008.

          */s/ Timothy J. Hurley*

                              {W1425734.3}

Alberici Constructors, Inc.
P.O. Box 795032
St. Louis, MO  63179
Fax:  (314) 733-2001

Elizabeth Alphin, Esq.
Mapother & Mapother PSC
801 West Jefferson Street
Louisville, KY  40202
loubknotices@mapother-atty.com
*Counsel for DCFS USA LLC*

American Electric Power
P.O. Box 24401
Canton, OH  44701-4401
Fax:  (614) 716-1560

Sarah R. Borders
King & Spalding LLP
1180 Peachtree Street, 29th Floor
Atlanta, GA 30309
sborders@kslaw.com
*Co-counsel for SunTrust Bank*

Brand Energy & Infrastructure Services
Attention:  Mario Pratts, Credit Manager
1830 Jasmine
Pasadena, TX  77503
mario.pratts@beis.com

Jeremy M. Campana, Esq.
Thompson Hine LLP
3900 Key Tower
127 Public Square
Cleveland, OH  44114
Jeremy.Campana@ThompsonHine.com
*Counsel for Caterpillar Financial Services*

James S. Carr, Esq.
Jason R. Adams, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178
KDWBankruptcyDepartment@kelleydrye.com
jcarr@kelleydrye.com
jadams@kelleydrye.com
*Counsel for BP Products North America, Inc.*
*and BP Canada Energy Marketing Corp.*

Center Line Electric
26554 Lawrence
Center Line, MI  48015
Fax:  (586) 759-2453

David J. Coyle, Esq.
Shumaker Loop & Kendrick LLP
North Courthouse Square
1000 Jackson Street
Toledo, Ohio 43604-5573
dcoyle@slk-law.com
*Counsel for Smith-Boughan, Inc.*

De Lage Landen Financial Services
1111 Old Eagle School Road
Wayne, PA 19087-1453
Fax:  (610) 386-5840

Steven L. Diller, Esq.
124 Main Street
Van Wert, OH  45891
dillerlaw@roadrunner.com
*Counsel for Nedra Corporation*

Eagle Constr. & Envir. Services
P.O. Box 872
Eastland, TX  76448-0872
Fax:  (254) 629-8625

FGDI
19901 N. Dixie Highway, Suite B
Bowling Green, OH  43402
Fax:  (419) 352-6710

{W1425734.3}

Farmers Commission Co.
520 W. Wyandot Avenue
P.O. Box 59
Upper Sandusky, OH  43351
Fax:  (419) 294-6348

First Capital Leasing
P. O. Box 309
Frankfort, KY  40602-0309

Patricia B. Fugee, Esq.
Roetzel & Andress
One SeaGate, Suite 1700
Toledo, OH  43604
pfugee@ralaw.com
*Co-Counsel for SunTrust Bank*

Anthony L. Geiger, Esq.
Tammi K. Hursh, Esq.
209 N. Main Street, 6th Floor
Lima, OH  45801
tony.geiger@cityhall.lima.oh.us
tammie.hursh@cityhall.lima.oh.us
*Co-Counsel for City of Lima, Ohio*

Maria D. Giannirakis, Esq.
Kenneth M. Goodman, Esq.
Office of the United States Trustee
441 H.M. U.S. Courthouse
201 Superior Avenue
Cleveland, OH  44114
maria.d.giannirakis@usdoj.gov

Ronald E. Gold, Esq.
Beth A. Buchanan, Esq.
Frost Brown Todd LLC
2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202-4182
rgold@fbtlaw.com
bbuchanan@fbtlaw.com
*Counsel for Official Committee of Unsecured
Creditors*

Golden Giant, Inc.
13300 S. Vision Dr.
Kenton, OH  43326-0389
Fax:  (419) 673-1384

Jeffrey J. Harmon, Esq.
Cors & Bassett, LLC
537 E. Pete Rose Way, Suite 400
Cincinnati, Ohio 45202
jjh@corsbasset.com
*Counsel for Process Plus LLC*

Benjamin Z. Heywood, Esq.
Lyden Liebenthal & Chappell, Ltd.
5470 Main Street, #300
Sylvania, OH  43560
bzh@lydenlaw.com
*Counsel for Interested Party, Daniel Vining*

Vaughn A. Hoblet, Esq.
Marshall & Melhorn LLC
Four SeaGate, Eighth Floor
Toledo, OH  43604
hoblet@marshall-melhorn.com
*Counsel for Dunbar Mechanical, Inc.*

Industrial Boiler & Mechanical
P.O. Box 5100
3325 N. Hawthorne Street
Chattanooga, TN  37406
Fax:  (423) 629-5333

Internal Revenue Service
1240 East Ninth Street, Room 457
Cleveland, OH  44199
Fax:  (216) 522-2066

William G. Kendall, Esq.
212 N. Elizabeth Street, Suite 410
Lima, OH  45801-4374
Fax:  (419) 229-1840
*Counsel for Lippincott Plumbing-Heating
& Air Conditioning, Inc dba Ace Electric*

{W1425734.3}

Alan Howard Klodell, Esq.
Ohio Attorney General's Office
Transportation Section
150 E. Gay Street, 22nd Floor
Columbus, OH 43215
aklodell@ag.state.oh.us
*Counsel for Ohio Rail Development Commission*

Angelina E. Lim
Johnson, Pope, Bokor, Ruppel & Burns, LLP
Post Office Box 1368
Clearwater, Florida 33757
angelinal@jpfirm.com
*Counsel for Benchmark Design USA, Inc.*

Matthew L. Matheney, Esq.
John F. Kostelnik, Esq.
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, OH 44114-1230
mmatheney@frantzward.com
jkostelnik@frantzward.com
*Counsel for GEM Industrial, Inc.*

Novozymes North America
P.O. Box 7247-7554
Philadelphia, PA 19170
Fax: (919) 494-3421

Cornelius J. O'Brien, Esq.
Eckert Seamans Cherin & Mellott LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
cobrien@eckertseamans.com
*Counsel for Gortech Global Fabrication*

Ottawa Oil Co.
P.O. Box 346
Ottawa, OH 45875
Fax: (419) 523-5568

Dennis M. Ostrowski, Esq.
Mapother & Mapother, PSC
801 West Jefferson Street
Louisville, KY 40202
loubknotices@mapother-atty.com
*Counsel for DCFS USA LLC and for Daimler Chrysler Financial Serv Amer LLC*

Pump Pros
7601 Innovation Way
Mason, OH 45040
Fax: (513) 860-9775

R. D. Jones Excavating, Inc.
10225 Alger Road
Harrod, OH 45850
Fax: (419) 648-6948

Rex Louisiana, Inc.
2875 Needmore Road
Dayton, OH 45414
Fax: (937) 276-8643

Edward L. Ripley, Esq.
King & Spalding, LLP
1100 Louisiana, Suite 4000
Houston, TX 77002
eripley@kslaw.com
*Co-Counsel for SunTrust Bank*

H. Buswell Roberts, Esq.
Shumaker Loop & Kendrick LLP
1000 Jackson Street
Toledo, OH 43604-5573
broberts@slk-law.com
*Co-Counsel for City of Lima, Ohio*

Bruce C. Silvers, Esq.
Kate K. Simon, Esq.
Anna M. Boelitz, Esq.
Bingham & McCutchen LLP
One State Street
Hartford, CT 06103-3178
bruce.silvers@bingham.com
anna.boelitz@bingham.com
kate.simon@bingham.com
DNeumann@BFCA.COM

{W1425734.3}

Staff Masters of Jacksonville
1840 Southside Blvd.
Suite 1A
Jacksonville, FL  32216
staffmasters@lbu.com

Sunbelt Rentals
2341 Deerfield Drive
Fort Mill, SC  29715

Sunbelt Rentals
1275 W. Mound Street
Columbus, OH  43223
Fax:  (614) 341-9779

Richard A. Sundquist, Esq.
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435
rsundquist@clarkhill.com
*Counsel for PVS-Nolwood Chemicals, Inc.*

Joseph R. Torda, Esq.
Cynthia G. Tesznar
Barkan & Robon Ltd.
1701 Woodlands Drive
Toledo, OH  43637
cgt.bar-rob@buckeye-express.com
*Counsel for SSOE, Inc. Architects*

Mark A. Van Dyne
Baran, Piper, Tarkowsky,
Fitzgerald & Theis Co., LPA
121 W. High Street, 9th Floor
P. O. Box 568
Lima, OH  45802-0568
lima@baranlaw.com
*Counsel for Jeffers Crane Service, Inc.*

{W1425734.3}