**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



_____
Mary Ann Whipple
United States Bankruptcy Judge

**Dated: February 18 2009**

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT TOLEDO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOE LIMA, LLC, | ) | Judge Whipple |
| | ) | |
| Debtor. | ) | Case No. 08-35508 (MAW) |

### ORDER AUTHORIZING SALE OF DEBTOR'S ASSETS PURSUANT TO SECTIONS 363(B) OF THE BANKRUPTCY CODE, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

This matter is before the Court upon the motion of GOE Lima, LLC, debtor and

debtor-in-possession (the "Debtor"), pursuant to Bankruptcy Code sections 363 and 365

and Bankruptcy Rules 6004 and 6006, for the entry of an order or orders (a) authorizing

the sale free and clear of liens, claims, encumbrances and interests of certain of the

Debtor's assets (the "Assets") and the assumption and assignment of certain designated

11338833.1
11344292.1

contracts, or in the alternative, (b) converting its Chapter 11 bankruptcy case to a case

under Chapter 7 of the Bankruptcy Code pursuant to Bankruptcy Code section 1112(a)

(Doc. No. 321)(the "Sale Motion"). Notice of the Sale Motion and of the Prevailing

Bidder[1] for the Assets having been served on all creditors and parties in interest,

including all parties who have previously indicated an interest in purchasing the Debtors'

Assets; objections to the Sale Motion were filed by the Official Committee of Unsecured

Creditors (the "Committee") [Doc. No. 331], the holders of the Debtor's Junior

Subordinated Secured Notes (the "Subordinated Noteholders") [Doc. No. 332], and Pump

Pro's, Inc. [Doc. No. 333]; and it appearing that proper and adequate notice of the Sale

Motion and of the Prevailing Bidder has been given and that no other or further notice is

required; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

**A.** **Purchaser and Asset Purchase Agreement**

1. The Prevailing Bidder for the sale of the Assets, as set forth in the asset

purchase agreement attached hereto as Exhibit "A" (the "Purchase Agreement") is

Paladin Ethanol Acquisition, LLC ("Purchaser").

2. The selection of the Prevailing Bidder was made after solicitation of

higher and better offers and the employment of certain other sale procedures (the "Sale

Procedures") previously approved by the Court in the Order Granting Motion to Establish

Bid and Sale Procedures, Pursuant to Bankruptcy Code Sections 363 and 365 and

Bankruptcy Rules 6004 and 6006, and Subject Thereto, for the Sale Free and Clear of

Liens, Claims, Encumbrances and Interests of Substantially all of the Debtor's Assets and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

11344292.1

the Assumption and Assignment of Designated Contracts (Doc. No. 173)(the "First Sale Procedures Order"), and the Order Granting Debtor's Motion to (A) Approve Modified Bid and Sale Procedures, Pursuant to Bankruptcy Code Sections 363 and 365 and Bankruptcy Rules 6004 and 6006 and Subject thereto, for the Sale Free and Clear of Liens, Claims, Encumbrances and Interests of Substantially all of the Debtor's Assets and the Assumption and Assignment of Designated Contracts, (B) Approve Stalking Horse Bid and Bid Protections, (C) Schedule Auction Date for Sale of Assets and (D) Schedule Hearing on Approval of Sale of Assets (Doc. No. 268)(the "Modified Bid Procedures Order")(collectively, the First Sale Procedures Order and the Modified Sale Procedures Order are referred to herein as the "Prior Sale Procedures Orders"). In addition, notice of the hearing on the proposed sale to the Prevailing Bidder was sent to all parties in interest in the Notice of Prevailing Bidder for Sale of Debtor's Assets and of Hearing on Related Motion (Doc. No. 328)(the "Sale Notice"), filed on February 9, 2009.

3. Pursuant to an order entered on February 6, 2009 (Doc. No. 323), an expedited hearing to consider the relief requested in the Sale Motion was scheduled for February 11, 2009 at 10:30 a.m. (the "Sale Hearing").

### B. Jurisdiction, Final Order, Objections and Statutory Predicates

4. The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C.§1334. This proceeding is a core proceeding pursuant to 28 U.S.C.§157(b)(2)(A) and (N). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§1408 and 1409.

11344292.1

3

5.    The statutory predicates for the relief sought herein are sections §§105(a), 362, 363(b), (f), and (m), 364(c)(1), 365, 1107, and 1108 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

6.    The proposed sale as set forth in the Sale Notice and the Purchase Agreement constitutes a sale of property of the estate outside the ordinary course of business within the meaning of Section 363(b) of the Bankruptcy Code.

7.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a).  The Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set for the herein and that the 10-day stay imposed by Bankruptcy Rule 6004(g) be deemed waived.

### C.    Notice of Sale of the Assets

8.    The Debtor complied with all the procedures for notice of the Sale Motion, the Sale Notice, the Prevailing Bidder, and Sale Hearing.  The Sale Notice was served upon all parties in interest, including all parties asserting any lien or interest in any of the Assets or any of the Debtors' leases and other executory contracts to be assumed and assigned, all parties who filed a notice of appearance in this case, counsel for the Committee of Unsecured Creditors, the Office of the United States Trustee, and all parties who indicated an interest in acquiring the Assets.

9.    The Court finds that notice of the Sale Motion, the Sale Notice, the Prevailing Bidder and the Sale Hearing as described above, was proper, timely, adequate, sufficient, proper under the circumstances, and in compliance with Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules, and that no other or further notice is required.

10.    A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the right of third parties to submit higher or otherwise better offers for all or any portion of the Assets has been afforded to all interested persons and entities.

**D.    Good Faith of Purchaser**

11.    The Purchaser has at all times acted in good faith in all respects relating to the sale of the Assets pursuant to the Purchase Agreement, which was negotiated and entered into by the parties in good faith and from arm's length bargaining positions and Purchaser therefore qualifies as a good faith purchaser within the meaning of 11 U.S.C.§363(m), and is therefore entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with the proceeding.

12.    The Debtor aggressively marketed the sale of the Assets.  All parties who executed a confidentiality agreement or otherwise expressed any interest in acquiring the business and the Assets of the Debtor received adequate opportunity to submit a competing bid.  The sale of the Assets to Purchaser pursuant to the Purchase Agreement constitutes an arm's length transaction, entitled to the protections of section 363(m) of the Bankruptcy Code.

13.    Neither the Debtor nor any of its attorneys and advisors has colluded with the Purchaser, its representatives, attorneys, agents and advisors.

**E.    Approval of Sale Motion**

14.    The terms of the Purchase Agreement are fair and reasonable under the circumstances of this Chapter 11 Case and these proceedings, and correspond to current market standards.  The terms constitute the highest and best offer obtainable for the

Assets and are fair and adequate. The sale procedures approved by the Court in the Prior Sale Procedures Orders afforded a full, fair, and reasonable opportunity for any party to make a higher or otherwise better offer for the Assets.

15.     The consideration for the Assets set forth in the Purchase Agreement (i) is fair and reasonable, (ii) represents the highest and best offer for the Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable state and federal law.

16.     The Debtor has full power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby and to otherwise transfer the Assets to Purchaser, free and clear of all liens, claims and encumbrances; and no further consents or approvals are required for the Debtor to consummate the transactions contemplated in the Purchase Agreement.

17.     The Sale Motion should therefore be approved as it is in the best interests of the creditors, and the Debtor's estate.

**F.     Section 363 Sale**

18.     The sale of the Assets to Purchaser, pursuant to Sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, is free and clear of all liens, claims, encumbrances or interests held by any third parties in any of the Assets with those interests to attach to the proceeds of the Sale in the same order and with the same priority as they currently hold, subject to the provisions for distributions of certain sale proceeds set forth below.

19.     The Debtor has presented a sound business justification for the sale of the Assets to Purchaser free and clear of all claims, liens, encumbrances, liabilities, and interests pursuant to the Purchase Agreement and it is a reasonable exercise of the

Debtor's business judgment to consummate the sale of the Assets to Purchaser and to execute, deliver, and perform its obligations under the Purchase Agreement.

20. The execution, delivery, and performance by the Debtor of the Purchase Agreement in accordance with its terms is in the best interest of the Debtor, its creditors and other parties in interest.

### G. Assumption and Assignment of Leases and Contracts

21. Purchaser has identified certain executory contracts for assumption and assignment under the Purchase Agreement (the "Proposed Assigned Contracts"). Such Proposed Assigned Contracts are not being assumed and assigned pursuant to this Order. Purchaser reserves the right to seek to have such Proposed Assigned Contracts assumed and assigned pursuant to Section 365 of the Bankruptcy Code prior to closing of the sale of the Assets and the rights of the parties to such Proposed Assigned Contracts to object to the assumption and assignment of their respective contracts is expressly reserved until such date and time as agreed to between the Purchaser and such parties or as otherwise set by this Court . In the event that that a party to a Proposed Assigned Contract files an objection to such assumption and assignment, and such objection is not resolved, the Court will conduct a hearing to determine such objections. In the event that any objections to the assumption and assignment of the Proposed Assigned Contracts are resolved by agreement of the parties, the consensual resolution may be presented to the Court in a proposed order without any further hearing.

. **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

11344292.1

7

A.     Consistent with the provisions of this Order, the Sale Motion is hereby GRANTED, the Purchase Agreement, as supplemented by this Order, is approved in its entirety, and the performance of the Purchase Agreement by the Debtor and the Purchaser in accordance with its terms is hereby approved in all respects. The Debtor is authorized and directed to implement and perform its obligations under the Purchase Agreement and to take such other actions reasonably necessary to effectuate its terms, including the execution of deeds, bills of sales, assignments or any other documents required to effectuate the transfers.

B.     All objections to the Sale Motion or the relief requested therein that have not been (a) withdrawn, waived, or settled as announced to the Court at the Sale Hearing and pursuant to the terms of this Order, or (b) addressed or provided for in this or other orders of the Court, are hereby overruled on the merits.

C.     Pursuant to Sections 105 and 363 of the Bankruptcy Code, the Assets shall be sold, conveyed, granted, assigned, transferred, and delivered by the Debtor to the Purchaser or its designee to take title to and/or possession of any of the Assets under the Purchase Agreement free and clear of any and all encumbrances, claims, liens, mortgages, security interests, restrictions, prior assignments, obligations, pledges, charges and liabilities against the Debtor or the Assets. Any such interests shall, subject to the provisions set forth in the Final Financing Order, the First DIP Extension Order and any other DIP financing orders entered by the Court, attach to the proceeds of the Sale contemplated by the Purchase Agreement to the same extent and with the same validity and priority as such interests had with respect to the Assets.

D.     Potential bidders had adequate notice of the bid deadlines, the sale procedures, the proposed auctions for the sale of the Assets, and the Sale Hearing and were given an adequate opportunity to make competing bids for the Assets.  All entities claiming liens claims, encumbrances or interests in or against the Assets had adequate notice of the Sale Motion, the Sale Notice, the Prevailing Bidder and the Sale Hearing.

E.     The Purchase Agreement, as supplemented by this Order, is hereby approved in all respects, and shall be deemed in full force and effect, binding and benefiting the Debtor, the Debtor's estate, and the Purchaser, subject only to the provisions of this Order.

F      All persons and entitles are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

G.     The purchase price to be paid pursuant to the Purchase Agreement for the Assets is fair and reasonable, in accordance with current market standards, and constitutes reasonably equivalent value and fair consideration.   Neither the Debtor nor any of its attorneys and advisors have colluded with the Purchaser, its representatives, attorneys, agents and advisors.  The Debtor is authorized to implement and consummate all of the transactions and perform the obligations contemplated by the Purchase Agreement, including, without limitation, (i) the sale of the Assets to Purchaser and the assumption and assignment of executory contracts as designated by Purchaser which are either resolved consensually with the other parties to such executory contracts or as may be determined by the Court at a hearing on any proposed assumption and assignment or

11344292.1

9

rejection, and (ii) the delivery of special warranty deeds, bills of sale, assignments, and all other necessary documentation to effectuate the sale.

      H.      At Closing (as defined in the Purchase Agreement), pursuant to the Purchase Agreement, the Debtor shall deliver title to and possession of the Assets free and clear of liens pursuant to Section 363(f) of the Bankruptcy Code, with the exception of any Assumed Liabilities as set forth in the Purchase Agreement.

      I.      The Purchaser is not a mere continuation of the Debtor nor does the Purchaser constitute a successor to the Debtor. Purchaser is not expressly or impliedly agreeing to assume any of the Debtor's liabilities, leases, or contracts, unless specifically enumerated in the Purchase Agreement. The purchase of the Assets does not constitute a merger or de facto merger of the Debtor and the Purchaser. The transactions contemplated in the Purchase Agreement are not entered into fraudulently or in order to escape liability from the Debtor's debts.

      J.      Purchaser shall not be deemed to have assumed any liabilities of the Debtor except as specifically detailed in the Purchase Agreement.

      K.      Purchaser shall not be liable for any claims against the Debtor or any of their predecessors or affiliates. Purchaser shall have no successor or vicarious liabilities of any kind resulting from the transaction contemplated by the Purchase Agreement, or from any action of the Debtor or its agents.

      L.      This Order shall be binding in all respects upon the Debtor, its estate, all creditors thereof, and holders of equity interests, whether known or unknown, in any of the Debtor, all governmental units with claims against the Debtor, any holders of liens, claims, encumbrances or interests in or against the Assets, all non-Debtor parties to any

leases or executory contracts assumed and assigned to Purchaser or rejected by the

Debtor, all successors and assigns of the Purchaser, the Debtor and any future or

subsequent trustees in either Chapter 11 or 7 of the Bankruptcy Code.

     M.     All entities that are in possession of some or all of the Assets at Closing

(as defined in the Purchase Agreement) are directed to surrender possession of such

Assets to the Purchaser or its assignee at the Closing.

     N.     The Purchaser is a good faith purchaser within the meaning of section

363(m) of the Bankruptcy Code with respect to the negotiation of the Purchase

Agreement, the acquisition of the Assets and all matters related to the foregoing and, as

such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

     O.     Pursuant to Rules 7062, 9014, 6004(h), and 6006(d) of the Federal Rules

of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the

Debtor is authorized to close the Sale immediately upon entry of the Order and in

accordance with the Purchase Agreement.

     P.     A certified copy of this Order may be filed with the appropriate Clerk

and/or recorded with the Recorder to act to cancel any liens or claims of record.

     Q.     The automatic stay provisions of section 362 of the Bankruptcy Code are

vacated and modified to the extent necessary to implement the terms and conditions of

the Purchase Agreement and the provisions of this Order.

     R.     This Order is and shall be binding upon all entities, including, without

limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

units and departments, secretaries of state, federal and local officials, and all other

11344292.1

persons and entities who may be required by operation of law or their duties of their office, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure and title.

S.      There are no brokers involved in consummating the sale of the Assets and no brokers' commissions are due.

T.      The failure to specifically include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement, as supplemented by this Order, be authorized and approved in its entirety.

U.      The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

V.      Pursuant to, and to the extent necessary under Bankruptcy Rules 5003, 6004(h), 6006(d), 7062, 9014, 9021, and 9022, the Court hereby expressly finds and concludes that there is no just cause for delay in the implementation of this Order. This Order therefore shall not be stayed for ten (10) days after its entry. This Order shall be effective and enforceable immediately upon entry, and any stay thereof, including without limitation pursuant to Rule 6004(h) and Rule 6006(d), is hereby abrogated.

W.      At the Closing, the Purchase Price (as defined in the Purchase Agreement) shall be reduced to satisfy any DIP financing provided by the Purchaser pursuant to the Purchase Agreement and Section 364(d) of the Bankruptcy Code and the balance of the

Purchase Price ("Net Cash Proceeds") to be paid by the Purchaser pursuant to the Purchase Agreement shall be distributed as follows:

First, to SunTrust Bank as agent for the DIP Lenders pursuant to the Final Financing Order and the First DIP Extension Order (the "Financing Orders") in an amount sufficient to satisfy the Amended DIP Obligations outstanding (as defined in the Financing Orders); and

Second, to SunTrust Bank as agent for the Prepetition Senior Lenders (as defined in the Financing Orders) to satisfy a portion of the Prepetition Senior Obligations; provided however, that from this amount the Prepetition Senior Lenders have agreed to pay the following:

(a)    $346,740 to the professional fee escrow accounts ($225,000 to Debtor's counsel, $91,740 to Debtor's financial advisor and $30,000 to Committee counsel) representing the unfunded amount of the Carve-Out (as defined in the Financing Orders) (the "Unfunded Carve-Out") for fees and expenses of the professionals employed by the Debtor and the Committee in this case; and,

(b) an amount to the Ohio Rail Development Commission equal to its pro rata share of the Net Cash Proceeds after payment of the Amended DIP Obligations and the Unfunded Carve-Out, to satisfy a portion of the indebtedness owed by the Debtor.

X.    The objection of the Committee to the Sale Motion is resolved as follows:

(a)    The Debtor and the Committee shall propose a joint plan of liquidation (the "Plan"), which Plan shall provide for the creation of a liquidating trust (the "Liquidating Trust") to provide the means and mechanism for the effective collection and liquidation of the remaining assets of the Debtor, including but not limited to all claims

11344292.1

and causes of action of the Debtor or the Debtor's estate including causes of action arising under chapter 5 of the Bankruptcy Code (collectively, the "Causes of Action" and together with any other remaining assets of the Debtor or the Debtor's estate, the "Remaining Assets"), into cash and for the distribution of the resulting cash to holders of allowed claims.

(b)     The Plan shall provide for the appointment of a trustee (the "Liquidating Trustee") for the Liquidating Trust who will supervise and carry out the pursuit, collection and liquidation of the Remaining Assets and distributions to holders of allowed claims.  The DIP Lenders and the Prepetition Senior Lenders do not oppose the appointment of Ronald E. Gold as the Liquidating Trustee or the hiring of Frost Brown Todd LLC as counsel for the Liquidating Trustee.

(c)     Upon Closing of the sale, the Prepetition Senior Lenders shall pay to the Debtor's estate the sum of $200,000 to be used to pay the fees and expenses of the Liquidating Trustee and professionals hired by the Liquidating Trustee for the administration of the Liquidating Trust and the pursuit, collection and liquidation of the Remaining Assets, with such funds to be deposited with Counsel for the Committee.  The DIP Lenders and the Prepetition Senior Lenders hereby consent to the allocation to and use by the Debtor's estate of any balance remaining in the professional fee escrow accounts of the professionals employed by the Debtor or the Committee, after payment of all allowed fees and expenses of such professionals, to pay the fees and expenses of the Liquidating Trustee and professionals hired by the Liquidating Trustee for the administration of the Liquidating Trust and the pursuit, collection and liquidation of the Remaining Assets.

08-35508-maw     Doc 360     FILED 02/18/09     ENTERED 02/18/09 16:36:56     Page 14 of 33

(d)     After Closing of the sale, the Prepetition Senior Lenders shall receive eighty percent (80%) of the proceeds of all Remaining Assets, after deducting the reasonable costs of pursuit, collection and liquidation (the "Limited Proceeds") in satisfaction of their remaining claims against Debtor and its estate and the Prepetition Senior Lenders shall pay to the Debtor's estate any amounts in excess of such Limited Proceeds to which the Prepetition Senior Lenders would otherwise be entitled to receive from the Remaining Assets as additional consideration for the releases granted herein, with all such funds in excess of the Limited Proceeds to be distributed pursuant to the terms of any plan confirmed by this Court or orders of this Court.

(e)     All proceeds from the promissory note referenced as Exhibit B to the Purchase Agreement shall be paid to the Prepetition Senior Lenders and shall not constitute property of the Debtor's estate.

(f)     In consideration for the agreements and benefits conferred upon the Debtor's creditors and estate pursuant to sections W and X of this Order, the DIP Lenders, the Prepetition Senior Lenders and SunTrust Bank, as agent for each, and their respective affiliates, officers, directors, shareholders, employees, representatives, agents, successors and assignees (the "DIP/Senior Lender Release Parties") are hereby released of all claims, rights, causes of action of, or defenses by, and all liabilities owing to, the Debtor and the Debtor's estate (other than any rights or obligations under sections W and X of this Order) arising out of or based on any facts or circumstances relating to the Debtor or the Debtor's estate, the DIP/Senior Lender Release Parties' connections to or dealings with the Debtor or the Debtor's estate occurring prior to entry of this Order.

(g)     The Committee and/or the Liquidating Trustee shall have, and the Purchaser is hereby deemed to consent to, standing to pursue all Causes of Action on behalf of the Debtor and the Debtor's estate.

(h)     Purchaser shall preserve and grant the Committee and/or the Liquidating Trustee full and complete access the Debtor's books and records, upon reasonable notice and during normal business hours, for the purposes of administering this Chapter 11 case and/or the Liquidating Trust until such time as this Chapter 11 case is closed by an order of this Court.

Y.     Except as expressly set forth herein, all parties reserve their respective rights, claims and defenses, if any, including without limitation, any objection(s) to any disclosure statement, plan of reorganization, or orders of the Court.

Z.     In the event of any conflict or inconsistency between this Order and the Purchase Agreement, the terms of this Order shall control and be binding in all respects.

###

08-35508-maw     Doc 360     FILED 02/18/09     ENTERED 02/18/09 16:36:56     Page 16 of 33

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made as of this 12th day of February, 2009, by and between GOE Lima, LLC, an Ohio limited liability company ("Seller"), and Paladin Ethanol Acquisition, LLC, a Delaware limited liability company, or its designee ("Purchaser"). Seller and Purchaser are sometimes individually referred to in this Agreement as a "Party" and collectively as the "Parties".

## WITNESSETH:

WHEREAS, Seller is a debtor and debtor in possession under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in that certain Case No. 08-35508 (MAW) filed on October 14, 2008 (the "Bankruptcy Case") and currently pending before the United States Bankruptcy Court for the Northern District of Ohio, Western Division at Toledo (the "Bankruptcy Court");

WHEREAS, Seller was in the business of operating an ethanol production plant (the "Business");

WHEREAS, subject to the approval of the Bankruptcy Court, Seller desires to sell, transfer, assign, convey and transfer the Purchased Assets (as defined below) and to assign the Assumed Contracts and Assumed Liabilities (each as defined below), and Purchaser desires to purchase, take delivery of and assume the Purchased Assets, the Assumed Contracts and the Assumed Liabilities, upon the terms and subject to the conditions set forth herein; and

WHEREAS, the transactions contemplated by this Agreement (the "Transactions") are subject to the terms and conditions hereof;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby reciprocally acknowledged, the Parties agree as follows:

1.  Definitions.

    a.  "Assumed Contracts" shall mean each of those executory contracts and unexpired leases set forth on Exhibit A hereto, except for any such contract or lease which requires the consent of a third party to its assignment and assumption by the Purchaser and such consent is not obtained on or before the Closing and the Purchaser has not waived in writing the receipt of such consent on or before the Closing.

    b.  "Assumed Liabilities" shall mean all (i) Cure Payments, (ii) all liabilities of Seller arising on or after the Closing under the Assumed Contracts, and (iii) all liabilities directly relating to the Purchased Assets and arising on or after the Closing.

    c.  "Bankruptcy Case" has the meaning set forth in the first Recital.

    d.  "Bankruptcy Code" has the meaning set forth in the first Recital.



e.   "Bankruptcy Court" has the meaning set forth in the first Recital.

f.   "Bankruptcy Rules" shall mean those rules and regulations promulgated under the Bankruptcy Code.

g.   "Bidding Procedures" shall have the meaning set forth in Section 2 hereof.

h.   "Closing" shall have the meaning set forth in Section 7 hereof.

i.   "Cure Payments" shall mean all unpaid amounts or unsatisfied obligations that must be paid or satisfied to effectuate, pursuant to all applicable provisions of the Bankruptcy Code, the assumption by and assignment to Purchaser of the Assumed Contracts, each as set forth next to such Assumed Contract on Exhibit A hereto.

j.   "Permits" means all notifications, licenses, permits (including environmental, construction and operation permits), franchises, certificates, approvals, consents, waivers, clearances, exemptions, classifications, registrations, variances, orders, tariffs, rate schedules and other similar documents and authorizations issued by any government, quasi governmental entity, or other governmental or regulatory body, agency or political subdivision thereof of any nature to the Seller and used, or held for use, in connection with the operation of the Business or applicable to ownership or use of the Purchased Assets or assumption of the Assumed Liabilities.

k.   "Purchase Price" shall have the meaning set forth in Section 5 hereof.

l.   "Purchased Assets" shall mean the following (i) the ethanol production plant located in Lima, Ohio owned by Seller, including, without limitation, all land and all buildings, structures, improvements, additions and fixtures related thereto, and all easements and other rights and interests appurtenant thereto (collectively, the "Owned Real Property"); (ii) all equipment and machinery owned by Seller (the "Owned Personal Property"); (iii) the Assumed Contracts and all rights and benefits under all non-executory contracts and agreements to which the Seller is a party; (iv) all Permits; (v) all documents used in or relating to the Business or in respect of the Purchased Assets or Assumed Liabilities, including but not limited to, the Assumed Contracts, products, services, marketing, advertising and promotional activities, trade shows and all files, supplier lists, vendor lists, records, literature and correspondence with sufficient detail as reasonably available; (vi) all accounts receivable, trade accounts and other amounts receivables (including overdue accounts receivable) owed with respect to the Assumed Contracts and any other rights to payment with respect to the Assumed Contracts and the full benefit of all security for such accounts or rights to payment and all claims, remedies or other rights relating to any of the foregoing; (vii) all deposits and prepaid expenses of the Seller with respect to the Purchased Assets (including, without limitation, the Assumed Contracts); (viii) all claims and causes of action against vendors and manufacturers with respect to the Owned Personal Property, including without limitation under vendors' and manufacturers' warranties, and all claims and causes of action of Seller against Gortech and Smith Boughan which are not being actively pursued by the Seller or its successor in interest in a court proceeding commenced on or before the 180th day

08-35508-maw    Doc 360    FILED 02/18/09    ENTERED 02/18/09 16:36:56    Page 18 of 33

following the Closing; (ix) any counterclaims, setoffs or defenses that the Seller may have with respect to any Assumed Liabilities; (x) all rights to pursue any claim under, and proceeds from, any insurance policy with respect to the fire that occurred on Seller's property on or about 2485 Houx Parkway; (xi) all of the Seller's right, title and interest in and to any intellectual property, including, without limitation, patents, trademarks and copyrights; (xii) all royalties; (xiii) the name "GOE Lima" and all derivations thereof; and (xiv) all goodwill and other intangible assets (but not including the claims and causes of action that are excluded from the definition of Purchased Assets under clauses (viii) and (x) above) associated with the Business or the Purchased Assets. For the avoidance of doubt, the Purchased Assets shall not include (x) all rights and benefits of Seller under all contracts of the Seller which are not Assumed Contracts or non-executory contracts or agreements to which the Seller is a party, including all contracts which have been rejected prior to or on or after the date hereof in connection with the Bankruptcy Case, (y) all avoidance claims and causes of action with respect to the Purchased Assets under the Bankruptcy Code or applicable state law, including, without limitation, all rights and avoidance claims of the Seller arising under Chapter 5 of the Bankruptcy Code, and (z) all of Seller's rights under this Agreement.

m.    "Sale Order" shall mean an order of the Bankruptcy Court, pursuant to all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, in the Bankruptcy Case that approves this Agreement and the transactions contemplated hereby and authorizes the assumption and assignment of the Assumed Liabilities in accordance with this Agreement, which order shall contain findings of fact, conclusions of law and other provisions acceptable to each of the Parties.

2.    Bidding Procedures.  This Agreement is made in general accordance with the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court pursuant to the Order Establishing Bid and Sale Procedures, Pursuant to Bankruptcy Code Sections 363 and 365 and Bankruptcy Rules 6004 and 6006 and Subject Thereto, for the Sale Free and Clear of Liens, Claims, Encumbrances and Interests of Substantially All of the Debtor's Assets and the Assumption and Assignment of Designated Contracts, Docket No. 127, as modified by the Order Granting Debtor's Motion to (A) Approve Modified Bid and Sale Procedures, Pursuant to Bankruptcy Code Sections 363 and 365 and Bankruptcy Rules 6004 and 6006 and Subject Thereto, for the Sale Free and Clear of Liens, Claims, Encumbrances and Interests of Substantially All of the Debtor's Assets and the Assumption and Assignment of Designated Contracts, (B) Approve Stalking Horse Bid and Bid Protections, (C) Schedule Auction Date for Sale of Assets and (D) Schedule Hearing on Approval of Sale of Assets, notwithstanding that the Purchaser has been advised that such Bidding Procedures may no longer be in effect. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures. In the event of a contradiction between this Agreement and the Bidding Procedures, this Agreement shall control.

3.    Purchase and Sale.  Subject to the terms and conditions set forth in this Agreement, at the Closing, Seller agrees to sell, transfer and deliver to Purchaser, and Purchaser agrees to purchase, acquire and accept from Seller, on an "as is, where is" basis and without any representation or warranty on the part of Seller, all right, title and interest of Seller as of the

Closing in the Purchased Assets, free and clear of all liens, claims and encumbrances to the maximum extent permitted by Section 363 of the Bankruptcy Code.

4.     Assumption and Assignment. Subject to the terms hereof, as of the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, Seller agrees to transfer, assume and assign to Purchaser without representation or warranty of any kind, and Purchaser agrees to assume, pay, perform and discharge promptly, when payment or performance is due or required, all of Seller's obligations under the Assumed Liabilities. Purchaser shall pay all legal fees and expenses of Seller relating to such assumption and assignment of the Assumed Liabilities which fees and expenses are incurred directly at the request of Purchaser. After the Closing, Seller shall have no further liability or obligations with respect to the Assumed Liabilities.

5.     Purchase Price. In addition to the assumption of the Assumed Liabilities, in consideration for the sale, transfer and delivery of the Purchased Assets, at the Closing, Purchaser shall (x) pay to Seller the sum of (i) Five Million Seven Hundred Fifty Thousand Dollars and No Cents ($5,750,000.00), in cash (the "Purchase Price"), less (ii) the Deposit, and (y) deliver a promissory note in the form of Exhibit B hereto. The Purchaser agrees that, subject to Section 6, up to $375,000 of the Deposit may be used by the Seller but only with the consent of its Senior Lenders prior to the Closing to pay the administrative and operational expenses reasonably incurred by Seller after the entry of the order of the Bankruptcy Court approving this Agreement and prior to the Closing pursuant to this Agreement (the "Seller's Preclosing Expenses"), provided that any portion of the Deposit so used to pay Seller's Preclosing Expenses shall be deemed debtor-in-possession financing on a pari passu basis with that debtor-in-possession financing provided by other third parties to the Seller. The Purchaser agrees that the Purchase Price for the Purchased Assets shall not be reduced if any contract or lease listed on Exhibit A hereto does not constitute an Assumed Contract pursuant to the definition thereof. If the Closing in accordance herewith does not occur on or before February 28, 2009 and the conditions set forth in Section 12(a) of this Agreement have been satisfied by February 28, 2009, then for each full week that elapses between February 28, 2009 and the date of the Closing the Purchase Price as defined herein shall be increased by an amount equal to $25,000 per each full week.

6.     Deposit. In accordance with the Bidding Procedures, Purchaser has submitted a deposit in the amount of $500,000 (the "Deposit"). The Deposit will be credited against the Purchase Price at the Closing and will otherwise be held and disbursed as provided in the Bidding Procedures, this Agreement and the escrow instructions submitted with the Deposit. By way of clarification, the full amount of the Deposit, including, without limitation, any portion of the Deposit used by the Seller prior to the Closing to pay the Seller's Preclosing Expenses in accordance with Section 5, will be (i) credited against the Purchase Price at the Closing or (ii) promptly refunded to the Purchaser in the event that the Closing does not occur on or before the thirtieth (30th) day following the entry of the order of the Bankruptcy Court approving this Agreement and the Purchaser is not otherwise then in breach of its obligations to the Seller under this Agreement.

7.     Closing. The closing of transactions contemplated by this Agreement shall occur as soon as reasonably practicable after satisfaction of the conditions set forth in Section 12 hereof or the waiver thereof by the Party entitled to waive the applicable conditions (the "Closing"),

but in no event later than the thirtieth (30th) day following the entry of the order of the Bankruptcy Court approving this Agreement.

8.  Cure Payments.  Purchaser shall be solely responsible for all Cure Payments, which Purchaser shall remit to the appropriate persons or entities at the Closing.

9.  Closing Costs.  Except as otherwise provided in this Agreement and whether or not the transactions contemplated hereby are consummated, the Seller and the Purchaser shall bear their own expenses incurred or to be incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby. In addition to the Purchase Price, Purchaser shall pay the following closing costs: (i) its own attorneys' fees and expenses, (ii) the entire cost of any title insurance policy (including extended coverage or endorsements) desired by Purchaser, (iii) all recording costs or fees, conveyance fees and any transfer taxes not precluded by the Sale Order under Section 1146(a) of the Bankruptcy Code, (iv) any and all costs and expenses necessary in connection with providing adequate assurance of future performance under section 365(f) of the Bankruptcy Code, and (v) Purchaser's due diligence expenses.

10. Delivery: "AS IS" Transaction.

    a.  Purchaser acknowledges that it has fully inspected or waived the right to inspect the Purchased Assets prior to the execution of this Agreement and does hereby assume all of the risks, including, but not limited to, latent defects in the Purchased Assets. Seller shall not be obligated to do any pre-occupancy work or make any repairs in or to the Purchased Assets. Any work (including demolition) which may be necessary to adapt the Purchased Assets for Purchaser's occupancy or for the operation of Purchaser's business shall be the sole responsibility of Purchaser and shall be performed by Purchaser at its sole cost and expense.

    b.  PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATED TO THE PURCHASED ASSETS, THE ASSUMED LIABILITIES OR THE BUSINESS (INCLUDING, WITHOUT LIMITATION, INCOME TO BE DERIVED FROM OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE PURCHASED ASSETS OR THE BUSINESS; THE PHYSICAL CONDITION OF THE PURCHASED ASSETS; THE PRESENCE OR ABSENCE OF ANY HAZARDOUS MATERIALS IN, ON OR ABOUT THE PURCHASED ASSETS OR ANY OTHER MATTER RELATED TO THE ENVIRONMENTAL CONDITION OF THE PURCHASED ASSETS; THE ZONING OF THE PURCHASED ASSETS; THE POSSIBILITY OF DEVELOPING OR USING THE PURCHASED ASSETS IN THE MANNER CONTEMPLATED BY PURCHASER OR OBTAINING ANY CONSENTS, APPROVALS, PERMITS, AUTHORIZATIONS OR ENTITLEMENTS IN CONNECTION THEREWITH; THE VALUE OF THE PURCHASED ASSETS; THE FITNESS OF THE PURCHASED ASSETS FOR ANY PARTICULAR PURPOSE OR USE; THE ACCURACY, COMPLETENESS, OWNERSHIP OR TRANSFERABILITY OF

08-35508-maw    Doc 360    FILED 02/18/09    ENTERED 02/18/09 16:36:56    Page 21 of 33

THE PURCHASED ASSETS OR ANY DOCUMENTS OR OTHER MATERIALS FURNISHED TO PURCHASER WITH RESPECT TO THE PURCHASED ASSETS (OR ANY PORTION THEREOF); TITLE TO THE PURCHASED ASSETS; OR ANY OTHER MATTER OR THING RELATED TO THE PURCHASED ASSETS, THE ASSUMED LIABILITIES OR THE BUSINESS. PURCHASER FURTHER ACKNOWLEDGES THAT IT HAS CONDUCTED OR WAIVED THE RIGHT TO CONDUCT AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PURCHASED ASSETS AND ALL SUCH OTHER MATTERS RELATED TO OR AFFECTING THE PURCHASED ASSETS, AS PURCHASER DEEMED NECESSARY OR APPROPRIATE, AND PURCHASER IS ACQUIRING THE PURCHASED ASSETS AND ASSUMING THE ASSUMED LIABILITIES BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS OR PURCHASER'S INDEPENDENT JUDGMENT. ACCORDINGLY, PURCHASER HEREBY ACCEPTS THE PURCHASED ASSETS "AS IS," "WHERE IS" AND "WITH ALL FAULTS."

11. <u>Adequate Assurances</u>.  If necessary, Purchaser shall provide adequate assurance of the future performance of each of the Assumed Contracts.  Purchaser shall promptly take all actions as are reasonably requested by Seller to assist in obtaining the Bankruptcy Court's entry of the Sale Order, including, without limitation, furnishing affidavits, financial information or other documents or information for filing with the Bankruptcy Court and making Purchaser's employees and representatives available to testify before the Bankruptcy Court.

12. <u>Conditions Precedent</u>.

    a.    The respective obligations of each Party to this Agreement to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing, of each of the following conditions (any or all of which may be waived in writing by the Purchaser and the Seller in whole or in part to the extent permitted by applicable law):

        (A)    The Bankruptcy Court shall have entered on or before February 18, 2009 the Sale Order in form and substance satisfactory to the Seller and the Purchaser, which shall be a final order and not stayed even if appealed or subject to a motion to reconsider; and

        (B)    Each Party shall have received a full and unconditional release from each other Party, and the parent of Seller, Greater Ohio Ethanol, LLC ("GOE"), on behalf of itself and each of its members, partners, shareholders, equityholders, managers, officers, directors and employees and all affiliates thereof and each of the members, partners, shareholders, equityholders, managers, officers, directors and employees of such affiliates, releasing and discharging the recipient and each of its members, partners, shareholders, equityholders, managers, officers, directors and employees and all affiliates thereof (including without limitation in the case of the Purchaser each equityholder of GOE that is affiliated with the Purchaser), and each of the

08-35508-maw   Doc 360   FILED 02/18/09   ENTERED 02/18/09 16:36:56   Page 22 of 33

members, partners, shareholders, equityholders, managers, officers, directors and employees of such affiliates, from any and all liabilities, obligations, costs, expenses, judgments, damages, claims, counterclaims and causes of action that have been, could have been or should have been assessed or asserted at any time prior to the Closing, in any respect and with respect to any matter, including, without limitation, with respect to the operation of the Seller or GOE, the ownership of any equity interest in the Seller or GOE or any agreement, document, instrument, note, liability, claim, obligation or right existing or alleged to exist whatsoever, such release to be on terms and conditions acceptable to the Seller and the Purchaser; provided, however, that notwithstanding anything to the contrary contained herein, the foregoing release shall not relate to any claim or cause of action asserted by any party with standing to assert such claim on behalf of the Seller and its bankruptcy estate in a court proceeding commenced on or before the 180th day following the Closing against any party covered by the release provided for herein, and, in the event that any such claim is so asserted within such 180 day period, the Seller shall be deemed not to have provided the release set forth herein but only as to any such party in such litigation.

b.     The obligations of the Purchaser to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing, of the following condition (which may be waived in writing by the Purchaser in whole or in part to the extent permitted by applicable law):

    (A)     No damage or destruction or other change shall have occurred after the date of this Agreement with respect to any of the Purchased Assets or any portion thereof that, individually or in the aggregate, would have a material adverse effect upon the use or occupancy of the Purchased Assets or the operation of the Business.

c.     Neither the Seller nor the Purchaser may rely on the failure of any condition set forth in this Section if such failure was caused directly by such Party's failure to comply with any provision of this Agreement.

13.     Notices. All notices, requests, demands and other communications made in connection with this Agreement shall be in writing and shall be (a) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, (b) transmitted by hand delivery, (c) sent by facsimile, or (d) sent by nationally recognized overnight courier for next business day delivery, addressed as follows:

TO PURCHASER:

    Paladin Ethanol Acquisition, LLC
    2001 Pennsylvania Ave., NW
    Suite 400
    Washington DC  20006
    Telephone:  (202) 293-5590
    Facsimile:  (202) 293-5526

08-35508-maw    Doc 360    FILED 02/18/09    ENTERED 02/18/09 16:36:56    Page 23 of 33

With a copy thereof, which shall not constitute notice to:

> Paul, Hastings, Janofsky & Walker LLP
> Attn: Siobhan M. Burke
> 515 South Flower Street
> Los Angeles, CA 90071
> Telephone: (213) 683-6282
> Facsimile: (213) 627-0705

TO SELLER:

> GOE Lima, LLC
> Attn: President and CEO
> 2485 Houx Parkway
> Lima, OH 45804
> Telephone: (419) 331-2676
> Facsimile: (419) 221-0037

with a copy (which shall not constitute notice) to:

> Taft Stettinius & Hollister LLP
> Attn: Timothy J. Hurley
> 425 Walnut Street, Suite 1800
> Cincinnati, Ohio 45202
> Telephone: (513) 357-9341
> Facsimile: (513) 381-0205

or, in each case, such other address as may be specified in writing to the other Party.

All such notices, requests, demands, waivers and other communications shall be deemed to have been received (w) if by first-class, registered or certified mail, on the fifth business day after the mailing thereof, (x) if by hand delivery, on the day of such delivery, (y) if by facsimile, on the day of transmission, and (z) if by nationally recognized overnight courier, on the next business day after deposit with such courier.

14. <u>Successors</u>. This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors and assigns.

15. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and all counterparts shall be construed together and shall constitute but one Agreement.

16. <u>Applicable Law; Jurisdiction and Venue</u>. This Agreement shall be construed under federal law and laws of the state of Ohio, and any disputes shall be resolved by the Bankruptcy Court which shall have exclusive jurisdiction at all times that the Bankruptcy Case is pending. Each of the Parties irrevocably consents for all purposes of this Agreement to the jurisdiction of the Bankruptcy Court and agrees that venue is proper in the Bankruptcy Court.

08-35508-maw    Doc 360    FILED 02/18/09    ENTERED 02/18/09 16:36:56    Page 24 of 33

17.     Entire Agreement. This Agreement and the Exhibits hereto represent the Parties' mutual understandings and supersede all prior agreements whether in oral or written form. This Agreement may be amended, supplemented or changed, and any provision hereof may be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

18.     Taxes. Any and all sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale, assignment and/or assumption of the Purchased Assets and the Assumed Liabilities, not precluded by the Sale Order under Section 1146(a) of the Bankruptcy Code, shall be the sole responsibility of Purchaser and shall be paid, if applicable, to the proper governmental body by Purchaser.

19.     Prevailing Party. If any action is brought by either Party against the other, then the prevailing Party shall be entitled to recover from the losing Party court costs and reasonable attorneys' fees and costs actually incurred.

20.     Drafting. This Agreement is deemed to have been drafted jointly by the Parties, and any uncertainty or ambiguity shall not be construed for or against either of the Parties as an attribution of drafting to such Party.

21.     Additional Instruments. The Parties agree to execute such additional instruments and take such actions as may be reasonably necessary to carry out the provisions of this Agreement.

22.     Access to Books and Records. Representatives of the Seller shall have the right to examine the books and records included in the definition of Purchased Assets up to the first anniversary of the Closing during regular business hours and on reasonable notice to the Purchaser.

23.     No Third-Party Beneficiaries. Nothing in this Agreement shall confer any rights upon any person or entity other than the Parties hereto and their respective successors and assigns.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered as of the date first above written.

SELLER:             GOE LIMA, LLC

                     By:_____

PURCHASER:      PALADIN ETHANOL ACQUISITION, LLC

                     Name:_____

                     Title:   An Authorized Signatory

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered as of the date first above written.

**SELLER:**          **GOE LIMA, LLC**

By: _Gregory A. Kruger_
    PRESIDENT

**PURCHASER:**       **PALADIN ETHANOL ACQUISITION, LLC**

Name: _____

Title: _____

## EXHIBIT A TO ASSET PURCHASE AGREEMENT

Assumed Contracts[1]

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF SELLER'S INTEREST, STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY | CURE PAYMENT |
|---|---|---|
| Dominion East Ohio 1201 East 55th Street Cleveland, Ohio 44103 | Seller has a contract for purchase of natural gas transportation services with this company | $103,350.76 |
| BP Products N.A., Inc. 28301 Ferry Road Warrenville, Illinois 60555 | Seller has a contract for sale of all ethanol produced by Seller at a formulaic price | $2,200,000.00 |
| BP Canada 240 4th Avenue SW P.O. Box 200 Calgary, Alberta T2P2H8 | Seller has a contract for purchase of natural gas from this company | $0.00 |

---

[1] For the avoidance of doubt, the assignment and assumption of these contracts is not a condition of the Purchaser to the Closing. Any of these contracts may not constitute an Assumed Contract pursuant to the definition thereof.

LEGAL_US_W # 60604610.20

**EXHIBIT B TO ASSET PURCHASE AGREEMENT**

Unsecured Note

LEGAL_US_W # 60604610.20

## UNSECURED NOTE

$15,050,000

.[March] __, 2009
New York, New York

      FOR VALUE RECEIVED, the undersigned, Paladin Ethanol Acquisition, LLC, a Delaware limited liability company (or its designated affiliate) ("Obligor"), unconditionally promises to pay to _____ (the "Payee") at _____, or at such other place as the Payee may from time to time designate to Obligor in writing, the principal sum of $15,050,000 (the "Note Amount") on the Termination Date or such lesser amount and at the time as provided in paragraph 2 below. This Unsecured Note ("Note") is the promissory note referred to in that certain Asset Purchase Agreement, dated as of February __, 2009, between Obligor and Payee (as amended from time to time, the "Asset Purchase Agreement"). This Note is a non-interest bearing promissory note.

    1.    Termination Date. "Termination Date" means the earliest of:

    (a)    [March] __, 2014;

    (b)    the sale or transfer of all or substantially all of the Purchased Assets (as defined in the Asset Purchase Agreement) by Obligor;

    (c)    the date on which any Event of Default occurs; and

    (d)    the date on which a Change in Control occurs.

      Upon the occurrence of the Termination Date the entire principal outstanding under this Note shall be declared and automatically become due and payable by Obligor.

      As used herein, "Change in Control" means the failure of _____ to act as sole ["Managing Member"] of Obligor and to own and to control all of the membership interest of the Obligor.

    2.    Voluntary Prepayment. This Note may be prepaid, without premium or penalty, as follows: (i) on or before the twenty-fourth (24th) month anniversary of the date of this Note, this Note may be prepaid in full by the payment of $2,500,000 to Payee; (ii) following the twenty-fourth (24th) month anniversary of the date of this Note and on or before the thirtieth (30th) month anniversary of the date of this Note, this Note may be prepaid in full by the payment of $2,750,000 to Payee; (iii) following the thirtieth (30th) month anniversary of the date of this Note and on or before the third anniversary of the date of this Note, this Note may be prepaid in full by the payment of $3,000,000 to Payee; and (iv) following the third anniversary of the date of this Note, the unpaid principal balance of this Note may be prepaid in whole or in

08-35508-maw   Doc 360   FILED 02/18/09   ENTERED 02/18/09 16:36:56   Page 30 of 33

part. Any prepayment of this Note as provided in clauses (i), (ii) or (iii) of the preceding sentence shall completely extinguish all of Obligor's liability hereunder.

3. <u>Representations and Warranties.</u> The Obligor represents and warrants as follows:

(a) <u>Existence; Power.</u> The Obligor (i) is duly organized, validly existing and in good standing as a limited liability company under the laws of the jurisdiction of its organization, (ii) has all requisite power and authority to carry on its business as now conducted, and (iii) is duly qualified to do business, and is in good standing, in each jurisdiction where such qualification is required, except for those jurisdictions where the failure to be so qualified would not have a material adverse effect on the Obligor's financial condition, operations or results of operations;

(b) <u>Organizational Power; Authorization.</u> The execution, delivery and performance by the Obligor of this Note are within its organizational powers and have been duly authorized by all necessary organizational, and if required, shareholder, partner or member, action. This Note has been duly executed and delivered by the Obligor, and constitutes the valid and binding obligation of the Obligor, enforceable against it in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity.

4. <u>Affirmative Covenants.</u> The Obligor shall provide to Payee on or before January 30 of each fiscal year a balance sheet for the Obligor at the close of the prior fiscal year containing statements of operations, retained earnings, and cash flows for such fiscal year, certified by the chief financial officer of Obligor.

5. <u>Events of Default.</u> If any of the following events (each an "<u>Event of Default</u>") shall occur: (i) Obligor shall become insolvent or generally fail to pay, or admit in writing its inability to pay, debts as they become due; (ii) the application for, consent to, or acquiesce in, the appointment of a trustee, receiver, sequestrator or other custodian for Obligor or any property of any thereof, or make a general assignment for the benefit of creditors; (iii) in the absence of such application, the consent or acquiescence, existence of a trustee, receiver, sequestrator or other custodian for Obligor or for a substantial part of the property of any thereof, and such trustee, receiver, sequestrator or other custodian shall not be discharged within sixty (60) days; or (iv) the existence of or commencement of any bankruptcy, reorganization, debt arrangement or other case or proceeding under any bankruptcy or insolvency law, or any dissolution, winding up or liquidation proceeding, in respect of Obligor.

6. <u>Governing Law, etc.</u> PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW, THIS NOTE SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW

LEGAL_US_W # 60843855. 82

PRINCIPLES. Time is of the essence hereunder. This Note shall be binding upon, and shall inure to the benefit of, Obligor, [DIP Agent, DIP Issuing Bank] [define] and Payee, and their respective successors and assigns; provided, however, that Obligor may not assign any of its rights or obligations under this Note and any such attempted assignment shall be null and void. This Note contains the entire understanding of the parties with respect to the subject matter hereof, and any prior agreement, whether written or oral, between the parties hereto is superseded hereby. Obligor hereby waives presentment, demand for payment, protest and notice of protest, notice of dishonor and all other notices in connection with this Note. By its acceptance of this Note, Payee agrees that no member, manager, equity holder, partner, director, officer, advisor, employee or affiliate of either Obligor or of any affiliate of Obligor shall have any liability under this Note.

7.    Notices.    All notices provided for hereunder shall be in writing and unless otherwise directed, if to the Payee, delivered by hand, overnight mail by a nationally reputable overnight delivery service, or facsimile or electronic mail (followed by an original notice by first class U.S. mail, postage prepaid) addressed to the Payee at its offices at _____; and if to Obligor, delivered by hand, overnight mail by a nationally reputable overnight delivery service, or facsimile or electronic mail (followed by an original notice by first class U.S. mail, postage prepaid) addressed to Obligor at 2001 Pennsylvania Ave., NW, Suite 400, Washington DC 20006, electronic mail: _____.

8.    Unsecured Note.    Notwithstanding anything to the contrary contained herein, the indebtedness evidenced by this Note is not secured by a lien, security interest, mortgage, encumbrance or other charge on any asset or other property of the Obligor or any other person or entity.

9.    Expenses.    In an Event of Default, Obligor shall pay all out-of-pocket costs and expenses (including, without limitation, the reasonable fees, charges and disbursements of counsel) incurred by the Payee in connection with the enforcement or protection of its rights in connection with this Note, including its rights under this Section, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of the Note.

[remainder of this page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have caused this Note to be duly executed and delivered under seal the day and year first above written.

OBLIGOR:

**PALADIN ETHANOL ACQUISITION, LLC (or its designated affiliate)**

By: _____
      Name:
      Title:

PAYEE:

By: _____
      Name:
      Title: