# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT TOLEDO

In re:                                           *

GOE LIMA, LLC,                                   *    Chapter 11

                                                 *    Judge Whipple

            Debtor.                              *    Case No. 08-35508 (MAW)

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## FIRST AMENDED JOINT PLAN OF LIQUIDATION

### Dated: March 8, 2010

**TAFT STETTINIUS & HOLLISTER LLP**
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838

**FROST BROWN TODD LLC**
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Telephone: (513) 651-6800

**ATTORNEYS FOR DEBTOR**

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS**

CINLibrary 0115848.0562637 2072519v2

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT TOLEDO

In re:                                  *

**GOE LIMA, LLC,**                      *    **Chapter 11**

                                        *    **Judge Whipple**

          **Debtor.**                   *    **Case No. 08-35508 (MAW)**

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## FIRST AMENDED JOINT PLAN OF LIQUIDATION

GOE Lima, LLC (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee") hereby jointly propose the following First Amended Joint Plan of Liquidation pursuant to section 1121(a), title 11, United States Code:

## TABLE OF CONTENTS

ARTICLE I      DEFINITIONS ................................................................................5

ARTICLE II     TREATMENT OF UNCLASSIFIED CLAIMS ................................................15

    2.1    Administrative Claims ................................................................15

    2.2    Administrative Claim Bar Date ................................................16

    2.3    Priority Tax Claims ................................................................17

    2.4    Priority Claims ................................................................18

ARTICLE III    CLASSIFICATION OF CLAIMS AND INTERESTS ..........................................18

    3.1    Class 1 Claims ................................................................18

    3.2    Class 2 Claims ................................................................18

    3.3    Class 3 Claims ................................................................18

    3.4    Class 4 Claims ................................................................19

    3.5    Class 5 Claims ................................................................19

3.6     Class 6 Claims ................................................................................................19

3.7     Class 7 Claims ................................................................................................19

3.8     Class 8 Interests .............................................................................................19

ARTICLE IV     TREATMENT OF CLASSES OF CLAIMS OR INTERESTS ........................19

4.1     Class 1 –DIP Lenders Allowed Secured Claim ....................................................19

4.2     Class 2 – Secured Claim of the Purchaser ..........................................................19

4.3     Class 3 –Prepetition Senior Lenders Allowed Secured Claim ............................20

4.4     Class 4 – Secured Claim of the Prepetition Junior Lenders ................................20

4.5     Class 5 – Secured Claim of the Ohio Rail Development Commission ...............21

4.6     Class 6 – Other Secured Claims .........................................................................21

4.7     Class 7 –General Unsecured Claims ...................................................................22

4.8     Class 8 – Interests .............................................................................................23

ARTICLE V     PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS ......................23

5.1     Objections to Claims ........................................................................................23

5.2     Resolution of Disputed Claims .........................................................................23

5.3     Estimation .........................................................................................................23

5.4     Distribution on Disputed Claims ......................................................................24

5.5     Reserve for Disputed Claims ............................................................................24

ARTICLE VI     EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................24

6.1     Assumption or Rejection of Executory Contracts .............................................24

6.2     Deadline to File Rejection Damage Claims .......................................................25

ARTICLE VII     EXECUTION AND IMPLEMENTATION OF THE PLAN ...........................25

7.1     Funding of the Plan ...........................................................................................25

7.2     Payment by the Prepetition Senior Lenders Of Amounts In Excess of Limited Proceeds .............................................................................................25

-2-

| | | |
|---|---|---|
| 7.3 | Creation of the Liquidating Trust ................................................................26 | |
| 7.4 | Vesting of Remaining Assets in the Liquidating Trust......................................26 | |
| 7.5 | Trust Administration Funds .......................................................................26 | |
| 7.6 | Federal Income Tax Treatment of Liquidating Trust ......................................27 | |
| 7.7 | Effectuating Documents............................................................................27 | |
| 7.8 | Paladin Settlement Agreement...................................................................28 | |

ARTICLE VIII  LIQUIDATING TRUSTEE ..................................................................29

| | | |
|---|---|---|
| 8.1 | Liquidating Trustee .................................................................................29 | |
| 8.2 | Duties ...................................................................................................29 | |
| 8.3 | Payment of Quarterly Fees.......................................................................29 | |
| 8.4 | Fees and Expenses .................................................................................29 | |
| 8.5 | Post-Effective Date Professional Fees ........................................................30 | |
| 8.6 | Liability; Indemnification ........................................................................30 | |

ARTICLE IX  DISTRIBUTIONS ..................................................................................31

| | | |
|---|---|---|
| 9.1 | Distributions..........................................................................................31 | |
| 9.2 | Time Bar to Cash Distribution Checks; Minimum Distribution; Unclaimed Funds ...................................................................................31 | |
| 9.3 | Untimely Claims ....................................................................................32 | |
| 9.4 | Interest on Claims ..................................................................................32 | |
| 9.5 | No Recourse ..........................................................................................32 | |

ARTICLE X  EFFECTS OF CONFIRMATION ...........................................................32

| | | |
|---|---|---|
| 10.1 | Binding Effect........................................................................................32 | |
| 10.2 | Discharge ..............................................................................................32 | |
| 10.3 | Releases and Injunctions..........................................................................33 | |
| 10.4 | Retention of Causes of Action/Reservation of Rights. ......................................37 | |

-3-

10.5    Preservation of Insurance ................................................................40

ARTICLE XI    MODIFICATION OF THE PLAN ................................................................41

11.1    Modification of the Plan ................................................................41

11.2    Revocation of the Plan ................................................................41

ARTICLE XII    CONDITIONS TO EFFECTIVE DATE OF PLAN ........................................42

12.1    Conditions to Effective Date ................................................................42

12.2    Notice of Effective Date ................................................................42

ARTICLE XIII    ADMINISTRATIVE PROVISIONS ................................................................42

13.1    Retention of Jurisdiction ................................................................42

13.2    Successors and Assigns ................................................................45

13.3    Severability ................................................................45

13.4    Governing Law ................................................................45

13.5    The Committee ................................................................45

13.6    Application of Bankruptcy Code Section 1146 ........................................45

13.7    Cramdown ................................................................45

13.8    Continuation of Injunctions and Stays ................................................................46

CINLibrary 0115848.0562637 2072519v2

## ARTICLE I

## DEFINITIONS

(a)     The following terms shall have the meanings indicated when used in capitalized form in this Plan:

**1.1**     *"Administrative Claim"* means a Claim for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code.

**1.2**     *"Administrative Claim Bar Date"* means the date fixed pursuant to section 2.2 of the Plan by which all Entities asserting Administrative Claims arising in the period from the Petition Date through the Effective Date, inclusive, must have filed proofs of such Administrative Claims or requests for payment of such Administrative Claims or be forever barred from asserting such Administrative Claims against the Debtor or its property, or such other date by which any such Administrative Claim must be filed as may be fixed by order of the Bankruptcy Court.

**1.3**     *"Affiliate"* means "affiliate" as defined in section 101(2) of the Bankruptcy Code.

**1.4**     *"Allowed Claim"* means a Claim: (a) either (i) proof of which has been timely filed with the Bankruptcy Court or has been deemed timely filed by a Final Order; or (ii) if not so filed, scheduled by the Debtor other than as disputed, contingent or unliquidated; or (iii) any stipulation of amount and nature of a Claim filed prior to entry of the Confirmation Order; and (b) allowed by a Final Order, by this Plan, or because no party in interest timely has filed an objection, filed a motion to equitably subordinate, or otherwise sought to limit recovery on such Claim.  An Allowed Claim shall not include interest accruing after the Petition Date on the amount of any Claim except as expressly provided herein.

-5-

**1.5** *"Avoidance Actions"* means any and all rights, claims, and Causes of Action under sections 510 and 544 through 553 of the Bankruptcy Code that the Debtor or its Estate may possess against any Entity, whether arising before or after the Petition Date.

**1.6** *"Bankruptcy Code"* means title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*), as amended from time to time, as applicable to the Chapter 11 Case.

**1.7** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Northern District of Ohio or any other court or adjunct thereof exercising competent jurisdiction.

**1.8** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Case.

**1.9** *"Bar Date"* means the date forty-five (45) days after entry of the Confirmation Order, by which date all Entities asserting certain Claims arising before the Petition Date must have filed proofs of such Claims or be forever barred from asserting such Claims against the Debtor or its Estate.

**1.10** *"Bar Date Order"* means the order(s) entered by the Bankruptcy Court establishing the Bar Date, including the Confirmation Order.

**1.11** *"Business Day"* means any day other than Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.12** *"Cash"* means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items.

**1.13** *"Cause of Action"* means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedy, right to an equitable remedy, right to payment and claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured

-6-

and whether asserted or assertable directly or derivatively, in law, equity or otherwise held by the Debtor or its Estate against any Entity, whether arising before or after the Petition Date, including, but not limited to those specifically described in Section 10.4 hereof.

**1.14** *"Chapter 11 Case"* means this case under chapter 11 of the Bankruptcy Code concerning the Debtor, administered under Case No. 08-35508.

**1.15** *"Claim"* means a claim against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.16** *"Class"* means a category of Claims or Interests as provided for in Article IV of the Plan.

**1.17** *"Closing"* means the closing of the Sale in accordance with the Purchase Agreement.

**1.18** *"Collateral"* means the Debtor's tangible and intangible real and personal property assets subject to valid, perfected and unavoidable Liens and security interests and the proceeds thereof.

**1.19** *"Committee"* means the Official Committee of Unsecured Creditors of GOE Lima, LLC, appointed on October 22, 2008 [DE #47], as such committee may be reconstituted from time to time.

**1.20** "C*onfirmation Date"* means the date the Bankruptcy Court enters an order confirming the Plan.

**1.21** *"Confirmation Hearing"* means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22** *"Confirmation Order"* means the order to be entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

-7-

**1.23** *"Construction Claims"* means the "Construction Claims" as defined in Paragraph D of the Paladin Settlement Agreement.

**1.24** *"Creditor"* means an Entity holding a Claim.

**1.25** *"Debtor"* means GOE Lima, LLC.

**1.26** *"Deficiency Claim"* means, with respect to a Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the Debtor's interest in the property that serves as Collateral for the Claim.

**1.27** *"DIP Lenders"* means the lenders providing post-petition financing to the Debtor, including SunTrust Bank, Farm Credit Bank of Texas, ING Fixed Income Absolute Return Master Ltd., ING VP Balanced Portfolio, Inc., ING VP Intermediate Bond Portfolio, ING Funds Trust, ING Series Fund, Inc., ING Life Insurance and Annuity Company, Allied Irish Banks, P.L.C., and Erste Group Bank AG.

**1.28** *"DIP Order"* means (a) the Final Order (i) Authorizing Use of Cash Collateral, (ii) Authorizing Post-Petition Financing, and (iii) Granting Senior Liens and Superpriority Administrative Expense Claim Status Pursuant to 11 U.S.C. §§ 105, 503(b), 507 and 364, entered on December 5, 2008 [DE #197]; and (b) the Order Extending Final Order (i) Authorizing Use of Cash Collateral, (ii) Authorizing Post-Petition Financing, and (iii) Granting Senior Liens and Superpriority Administrative Expense Claim Status Pursuant to 11 U.S.C §§ 105, 503(b), 507 and 364, entered on January 8, 2009 [DE #271], as each was entered, amended and/or extended from time to time by the Bankruptcy Court or as permitted by the terms of such orders, the terms of which orders are incorporated herein.

**1.29** *"Disclosure Statement"* means the disclosure statement relating to the Plan (including all exhibits and schedules annexed thereto or referred to therein) as may be altered,

-8-

amended, supplemented or modified from time to time, filed by the Debtor pursuant to section 1125 of the Bankruptcy Code and incorporated herein by reference.

**1.30** *"Disputed Claim"* means any Claim that is not an Allowed Claim as of the relevant date.

**1.31** *"Distribution"* means a payment made to holders of Claims pursuant to the Plan.

**1.32** *"Distribution Date"* means any date on which a Distribution is made.

**1.33** *"Effective Date"* means the first Business Day on which all conditions to effectiveness of the Plan have been satisfied or waived.

**1.34** *"Entity"* means "entity" as defined in section 101(15) of the Bankruptcy Code.

**1.35** *"Estate"* means the estate of the Debtor created on the Petition Date as defined under section 541 of the Bankruptcy Code.

**1.36** *"Final Order"* means an order, ruling or judgment, as entered by the Bankruptcy Court: (i) that has not been reversed, modified or amended, and is not stayed; (ii) as to which the time to appeal from or to seek review or rehearing or petition for certiorari has expired; and (iii) that is no longer subject to review, reversal, modification or amendment; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules, may be filed relating to such order or judgment shall not cause such order or judgment not to be a "Final Order."

**1.37** *"Frost Brown"* means Frost Brown Todd, LLC, in their capacity as counsel for the Committee and the Liquidating Trustee.

**1.38** *"Impaired"* means any Claim or Interest, or Class of Claims or Interests, which is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

-9-

**1.39** *"Interest"* means any ownership interest or right to acquire any ownership interest in the Debtor or any other equity security (as defined in the Bankruptcy Code) in the Debtor.

**1.40** *"Lien"* means "lien" as defined in section 101(37) of the Bankruptcy Code.

**1.41** *"Liquidating Trust"* means the trust created under this Plan pursuant to the Liquidating Trust Agreement.

**1.42** *"Liquidating Trust Agreement"* means that certain trust agreement, dated as of the Effective Date, which shall be substantially in the form attached as **Exhibit 1** to the Plan and incorporated herein by reference.

**1.43** *"Liquidating Trustee"* means Ronald E. Gold, Esq. of Frost Brown Todd LLC.

**1.44** *"Litigation Expenses"* means the "Litigation Expenses" as defined in Paragraph 8B of the Paladin Settlement Agreement.

**1.45** *"Net Cash Sale Proceeds"* means the balance of the Sale Cash Purchase Price after satisfying the Purchaser DIP Obligations.

**1.46** *"Net Proceeds of the Remaining Assets"* means the Cash proceeds realized from the collection and liquidation of the Remaining Assets after deducting the reasonable costs of pursuit, collection and liquidation of the Remaining Assets incurred by the Liquidating Trustee and his professionals.

**1.47** *"Other Secured Claim"* means a Secured Claim asserted against the Debtor other than the Secured Claims of the DIP Lenders, the Prepetition Senior Lenders, the Prepetition Junior Lenders and the Purchaser.

**1.48** *"Paladin Parties"* means the *"Paladin Parties"* as defined in Paragraph 9 of the Paladin Settlement Agreement.

-10-

**1.49** *"Paladin Released Claims"* means the "Released Claims" as defined in Paragraph 9 of the Paladin Settlement Agreement.

**1.50** *"Paladin Settlement Agreement Effective Date"* means the "Agreement Effective Date" as defined in Paragraph 3 of the Paladin Settlement Agreement.

**1.51** *"Paladin Settlement Agreement"* means the settlement agreement by and among the Debtor, PEA Assignee, PEAL and the Committee, which is attached hereto as **Exhibit 2** and incorporated by reference herein.

**1.52** *"Paladin Settlement Order"* means a Final Order approving the Paladin Settlement Agreement.

**1.53** *"PEA Assignee"* means PEA (LIT), LLC.

**1.54** *"PEAL"* means PEA Lima, LLC.

**1.55** *"Petition Date"* means October 14, 2008.

**1.56** *"Plan"* means this first amended joint plan of liquidation under chapter 11 of the Bankruptcy Code (including all exhibits and schedules annexed hereto), as the same may be altered, amended, or modified from time to time (after the Confirmation Date, such amendments or modifications being effective only if approved by order of the Bankruptcy Court).

**1.57** *"Prepetition Intercreditor Agreement"* means that certain Subordination Agreement, dated as of November 21, 2006 (as amended, restated, supplemented or otherwise modified from time to time), by and among the Debtor, Greater Ohio Ethanol, LLC, SunTrust Bank, on behalf of itself and the Prepetition Senior Lenders, and SunTrust Bank, as subordinated collateral agent on behalf of the Prepetition Junior Lenders.

**1.58** *"Prepetition Junior Lenders"* means the lender parties to that certain Subordinated Note Purchase Agreement, dated as of November 21, 2006 (as amended, restated,

-11-

supplemented or otherwise modified from time to time), among such lender parties and the Debtor, pursuant to which such lender parties agreed to purchase notes from the Debtor in an aggregate principal amount of $25,000,000.

**1.59**    *"Prepetition Senior Lenders"* means the lender parties to that certain Credit Agreement, dated as of November 21, 2006 (as amended, restated, supplemented or otherwise modified from time to time), among such lender parties, the Debtor, and SunTrust Bank, as administrative agent and collateral agent for such lender parties, pursuant to which such lender parties agreed to extend loans to, and issue letters of credit for, the Debtor.

**1.60**    *"Priority Claim"* means any Claim to the extent entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**1.61**    *"Priority Tax Claim"* means any Claim of governmental units, to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.62**    *"Pro Rata"* means the amount to be paid with respect to an Allowed Claim based on the ratio of the Allowed Claim to the total amount of Allowed Claims in the same Class.

**1.63**    *"Purchase Agreement"* means Asset Purchase Agreement by and between the Debtor and the Purchaser in the form approved by the Sale Order.

**1.64**    *"Purchaser"* means PEAL (formerly known as Paladin Ethanol Acquisition, LLC).

**1.65**    *"Purchaser DIP Obligations"* means financing provided by the Purchaser pursuant to the Purchaser DIP Order.

**1.66**    *"Purchaser DIP Order"* means the Final Order (i) Authorizing Post-Petition Financing, and (ii) Granting Senior Liens and Superpriority Administrative Expense Claim

-12-

CINLibrary 0115848.0562637 2072519v2

Status Pursuant to 11 U.S.C §§ 105, 503(b), 507 and 364, entered on February 20, 2009 [DE #370].

1.67    *"Remaining Assets"* means all legal or equitable interests of the Debtor or the Estate in property remaining after the Sale, including but not limited to, the Avoidance Actions and the Causes of Action (except the Construction Claims to the extent that the Construction Claims and proceeds thereof are assigned to the PEA Assignee as provided in the Paladin Settlement Agreement).

1.68    *"Sale"* means the sale of certain of the Debtor's assets to the Purchaser on the terms and conditions approved by the Bankruptcy Court in the Sale Order.

1.69    *"Sale Order"* means the Order Authorizing Sale of Debtor's Assets Pursuant to Sections 363(b) of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Interests entered on February 18, 2009 [DE #360], which, among other things approved the Sale and the terms of which, as may be amended from time to time by the Bankruptcy Court or as permitted by the terms of the Sale Order, are incorporated herein.

1.70    *"Sale Cash Purchase Price"* means the Cash portion of the purchase price paid by the Purchaser in connection with the Sale.

1.71    *"Schedules"* means the schedules, as amended from time to time, of assets and liabilities filed by the Debtor with the Bankruptcy Court on November 13, 2008 [DE #120] in accordance with sections 521 and 1106(a)(2) of the Bankruptcy Code.

1.72    *"Secured Claim"* means any Claim, or portion thereof, against the Debtor to the extent such Claim is secured within the meaning of section 506(a) or 1111(b) of the Bankruptcy Code.

-13-

**1.73**   *"Unfunded Carve-Out"* means $346,740 of the Net Cash Sale Proceeds payable to the professional fee escrow accounts ($225,000 to Debtor's counsel, $91,740 to Debtor's financial advisor and $30,000 to the Committee's counsel) representing the unfunded amount of the Carve-Out (as defined in the DIP Order) for fees and expenses of the professionals employed by the Debtor and the Committee in the Chapter 11 Case.

**1.74**   *"Unimpaired Claim"* means any Claim or Interest, or Class of Claims or Interests, which is not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.75**   *"Unsecured Claim"* means any Claim or portion thereof, against the Debtor, other than an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

## TERMS OF CONSTRUCTION

(b)   *Terms of Construction:*   The Plan shall be interpreted using the following standards:

(i)   *Capitalized Terms*:   The capitalized terms of this Plan shall have the meaning set forth in the Plan.  In the event a capitalized term of the Plan is not defined in the Plan, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules.  In the event a capitalized term of the Plan is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of the Plan and the Bankruptcy Code.

(ii)   *Reasonable Construction*:   The terms of the Plan shall not be construed against any Entity but shall be given a reasonable construction, consistent with the purposes of the Plan and the Bankruptcy Code.

-14-

(iii)    *Herein, Hereof, Hereto, and Hereunder:*  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

(iv)    *Plural:*  Unless otherwise specified, the plural shall include the singular and the singular shall include the plural.

(v)    *Gender:*  Unless otherwise specified, the references to the masculine shall include the feminine and references to the feminine shall include the masculine.

(vi)    *Including:*  The term "including" shall not be deemed to be exclusive and shall be deemed to mean "including without limitation."

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1**    *Administrative Claims.*  In full and complete satisfaction, discharge and release of its Administrative Claim, each holder of an Allowed Administrative Claim shall receive one of the following treatments, in the sole discretion of the Liquidating Trustee: (i) to the extent not already paid, on the later of the Effective Date or thirty (30) Business Days after the date on which such Administrative Claim becomes an Allowed Claim, or, in each such case, as soon as reasonably practicable thereafter, Cash in the full amount of such Allowed Administrative Claim; (ii) to the extent not yet due and payable, payment in accordance with the terms and conditions of the particular transaction giving rise to the Administrative Claim; (iii) to the extent such Claims are Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6), Cash in accordance with the applicable schedule for payment of such fees; (iv) treatment on such other terms as may be mutually agreed upon in writing between the holder of such Allowed Administrative Claim and the Debtor (in consultation with the Committee),

-15-

prior to the Effective Date, or the Liquidating Trustee, on or after the Effective Date; or (v) Cash on the first date that funds are available in the Liquidating Trust that are not subject to a Lien, as determined by the Liquidating Trustee in his sole discretion, to be available for Distribution; *provided, however*, that interim and/or final payment of Allowed Administrative Claims approved by the Bankruptcy Court shall be paid at the time of and in accordance with such Bankruptcy Court approval.

2.2    *Administrative Claim Bar Date.*    ADMINISTRATIVE CLAIM REQUESTS RESPECTING ADMINISTRATIVE CLAIMS THAT HAVE ARISEN OR WILL ARISE IN THE PERIOD FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE, INCLUSIVE, MUST BE FILED AND SERVED PURSUANT TO THE PROCEDURES SET FORTH IN THE CONFIRMATION ORDER AND/OR NOTICE OF ENTRY OF CONFIRMATION ORDER, NO LATER THAN FORTY-FIVE (45) DAYS AFTER THE EFFECTIVE DATE (unless an earlier date is set by the Bankruptcy Court).  Notwithstanding anything to the contrary herein, no Administrative Claim request need be filed for the allowance of any fees of the United States Trustee arising under 28 U.S.C. § 1930.  Any Entities that are required to, but fail to file such an Administrative Claim request on or before the deadline referenced above, shall be forever barred from asserting such Claim against the Debtor or the Liquidating Trust and their respective attorneys, other professionals, trustee and/or agents, or any of property of the Debtor or the Liquidating Trust, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

-16-

**2.3**     *Priority Tax Claims.*

(a)     *Payment.*  On the later of the Effective Date or thirty (30) Business Days after the date on which a Priority Tax Claim becomes an Allowed Claim, or, in each such case, as soon as reasonably practicable thereafter; each holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive in full and complete satisfaction, discharge and release of its Priority Tax Claim, one of the following treatments, in the sole discretion of the Liquidating Trustee: (i) Cash in the full amount of the Allowed Priority Tax Claim or (ii) regular installment payments in Cash, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, (a) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; and (c) over a period ending not later than 5 years after the Petition Date.

(b)     *Installment Payments.*  Any installment payments made pursuant to section 1129(a)(9)(C) of the Bankruptcy Code shall be in equal quarterly Cash payments beginning on the later of the first day of the calendar month following (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim, and subsequently on the first day of each third calendar month thereafter, as necessary.

(c)     *Priority Tax Claim That Is Not Otherwise Due And Payable On Or Prior To The Effective Date.*  The amount of any Priority Tax Claim that is not otherwise due and payable on or prior to the Effective Date, and the rights of the holder of such Claim, if any, to payment in respect thereof shall: (a) be determined in the manner in which the amount of such Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter

-17-

CINLibrary 0115848.0562637 2072519v2

11 Case had not been commenced; (b) survive after the Effective Date as if the Chapter 11 Case had not been commenced; and (c) not be discharged pursuant to section 1141 of the Bankruptcy Code. In accordance with section 1124 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Plan shall not alter or otherwise impair the legal, equitable, and contractual rights of any holder of a Priority Tax Claim that is not otherwise due and payable on or prior to the Effective Date.

2.4     *Priority Claims.*   In full and complete satisfaction, discharge and release of its Priority Claim, each holder of an Allowed Priority Claim will receive Cash equal to the unpaid portion of such Allowed Priority Claim, on (or as soon as practical thereafter) the later of (a) the Effective Date, (b) the date on which said entity becomes a holder of such Allowed Priority Claim, or (c) such date as such Entity may agree to with the Debtor (in consultation with the Committee) prior to the Effective Date, or the Liquidating Trustee on or after the Effective Date.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

For purposes of the Plan, Claims are classified as follows:

3.1     *Class 1 Claims.*   Class 1 contains the DIP Lenders Allowed Secured Claim under the DIP Order.

3.2     *Class 2 Claims.*   Class 2 contains the Secured Claim of the Purchaser under the Purchaser DIP Order.

3.3     *Class 3 Claims.*   Class 3 contains the Prepetition Senior Lenders Allowed Secured Claim.

-18-

CINLibrary 0115848.0562637 2072519v2

**3.4** *Class 4 Claims.* Class 4 contains the Secured Claim of the Prepetition Junior Lenders.

**3.5** *Class 5 Claims.* Class 5 contains the Secured Claim of the Ohio Rail Development Commission

**3.6** *Class 6 Claims.* Class 6 contains the Other Secured Claims.

**3.7** *Class 7 Claims.* Class 7 contains the General Unsecured Claims.

**3.8** *Class 8 Interests.* Class 8 contains the Interests in the Debtor.

## ARTICLE IV

## TREATMENT OF CLASSES OF CLAIMS OR INTERESTS

**4.1** *Class 1 –DIP Lenders Allowed Secured Claim*

(a) *Impairment*: Class 1 is Unimpaired under the Plan.

(b) *Treatment*: The Class 1 DIP Lenders Secured Claim already is an Allowed Claim pursuant to the DIP Order. Pursuant to the Sale Order, as previously approved by the Bankruptcy Court, SunTrust Bank, as agent for the DIP Lenders, received at the Closing of the Sale, in full and complete satisfaction, discharge and release of the DIP Lenders' Class 1 Allowed Secured Claim under the DIP Order, which Secured Claim shall be Allowed in the aggregate amount of $4,933,151.19, the Net Cash Sale Proceeds in an amount sufficient to satisfy in full the Class 1 Allowed Secured Claim of the DIP Lenders under the DIP Order.

**4.2** *Class 2 – Secured Claim of the Purchaser*

(a) *Impairment:* Class 2 is Unimpaired under the Plan.

(b) *Treatment:* Pursuant to the Sale Order and the Purchaser DIP Order, as previously approved by the Bankruptcy Court, the Purchaser received a credit in the amount of $211,000 at the Closing of the Sale against the Sale Cash Purchase Price representing the

-19-

outstanding Purchaser DIP Obligations in full and complete satisfaction, discharge and release of the Purchaser's Class 2 Secured Claim under the Purchaser DIP Order.

**4.3** *Class 3 –Prepetition Senior Lenders Allowed Secured Claim*

(a) *Impairment:* Class 3 is Impaired under the Plan.

(b) *Treatment:* The Class 3 Senior Lenders Secured Claim is already an Allowed Claim pursuant to the DIP Order. Pursuant to the Sale Order, as previously approved by the Bankruptcy Court, SunTrust Bank, as agent for the Senior Lenders, shall receive the following, in full and complete satisfaction, discharge and release of the Senior Lenders' Class 3 Allowed Secured Claim, which Secured Claim shall be Allowed in the amount of $97,458,500.00:

(i) The balance of the Net Cash Sale Proceeds, payable at the Closing, after payment of the DIP Lenders Allowed Secured Claim, the Unfunded Carve-Out, and the Allowed Secured Claim of the Ohio Rail Development Commission;

(ii) The promissory note referenced as Exhibit B to the Purchase Agreement and all proceeds there from which, pursuant to the Sale Order, shall not constitute property of the Estate; and,

(iii) eighty percent (80%) of the Net Proceeds of the Remaining Assets (the "Limited Proceeds").

(d) *Deficiency Claim*: The Prepetition Senior Lenders shall not hold any Deficiency Claim or receive any Distributions under Class 7 of the Plan, except in accordance with the terms of the Prepetition Intercreditor Agreement and related loan documents.

**4.4** *Class 4 – Secured Claim of the Prepetition Junior Lenders*

(a) *Impairment*: Class 4 is Impaired under the Plan.

-20-

(b)   *Treatment:*   In full and complete satisfaction, discharge and release of their Class 4 Secured Claim, the Prepetition Junior Lenders shall receive Distributions, if any, in accordance with the terms of the Prepetition Intercreditor Agreement and related loan documents.

(c)   *Deficiency Claim*:   The Prepetition Junior Lenders' entitlement, if any, to a Deficiency Claim shall be determined in accordance with the terms of the Prepetition Intercreditor Agreement and related loan documents and shall be treated as a Class 7 General Unsecured Claim.

**4.5**   *Class 5 – Secured Claim of the Ohio Rail Development Commission*

(a)   *Impairment:*   Class 5 is Impaired under the Plan.

(b)   *Treatment:*   Pursuant to the Sale Order, as previously approved by the Bankruptcy Court, the Ohio Rail Development Commission received at the Closing of the Sale, in full and complete satisfaction, discharge and release of its Class 5 Secured Claim, Cash in the amount of $35,751.47 equal to its pro rata share of the Net Cash Sale Proceeds after payment of the DIP Lenders Allowed Secured Claim and the Unfunded Carve-Out.

(c)   *Deficiency Claim*:   Any Deficiency Claim of the Ohio Rail Development Commission shall be treated as a Class 7 General Unsecured Claim.

**4.6**   *Class 6 – Other Secured Claims*

(a)   *Impairment:*   Class 6 is Unimpaired under the Plan.

(b)   *Treatment:*   In full and complete satisfaction, discharge and release of its Class 6 Other Secured Claim, each holder of an Allowed Class 6 Other Secured Claim shall receive one of the following treatments, in the sole discretion of the Debtor (in consultation with the Committee) prior to the Effective Date, or the Liquidating Trustee after the Effective Date:

-21-

(i)   *Lump Sum Payments*:   Holders of Allowed Class 6 Other Secured Claims shall receive payment in full on the later of: (i) the Effective Date, or (ii) the date that is ten (10) days after any such Claim is allowed by order of the Bankruptcy Court or by agreement between said holders of the respective Allowed Class 6 Other Secured Claim and the Debtor (in consultation with the Committee) prior to the Effective Date, or the Liquidating Trustee after the Effective Date; or

(ii)   *Return of Collateral*:   The Debtor (in consultation with the Committee) prior to the Effective Date, or the Liquidating Trustee after the Effective Date may surrender the Collateral securing said Allowed Class 6 Other Secured Claim to such Claim holder in full satisfaction of its Allowed Class 6 Other Secured Claim on the later of: (i) the Effective Date, or (ii) the date that is ten (10) days after any such Claim is allowed by order of the Bankruptcy Court or by agreement between such holder of an Allowed Class 6 Other Secured Claim and the Debtor (in consultation with the Committee) prior to the Effective Date, or the Liquidating Trustee after the Effective Date.

(c)   *Retention of Liens*:   The holder of an Allowed Class 6 Other Secured Claim shall retain its Lien securing such Claim as of the Confirmation Date until all Distributions have been made to such holder as provided in this Section 4.6.

(d)   *Deficiency Claim:*   Any Deficiency Claim of holders of Allowed Class 6 Other Secured Claims shall be treated as a Class 7 General Unsecured Claim.

**4.7**   *Class 7 –General Unsecured Claims*

(a)   *Impairment:*   Class 7 is Impaired under the Plan.

(b)   *Treatment*:   Each holder of an Allowed Class 7 General Unsecured Claim shall receive in Cash, in full and final satisfaction of such Claim, its Pro Rata share of the proceeds of

-22-

the Remaining Assets after payment in full of the Allowed Claims of Classes 1 through 6. Such Distributions shall be made from to time to time by the Liquidating Trustee as set forth in the Liquidating Trust Agreement.

**4.8**     *Class 8 – Interests*

(a)     *Impairment:*     Class 8 is Impaired under the Plan.

(b)     *Treatment:*     On the Effective Date, all Interests shall be deemed cancelled, and all holders of Interests shall neither receive nor retain any property under the Plan.

**ARTICLE V**

**PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS**

**5.1**     *Objections to Claims.*  Except with respect to Claims that already are Allowed Claims by order of the Bankruptcy Court, including Class 1 and Class 3 Allowed Claims, the Liquidating Trustee may object to any Claim, including, Administrative Claims, Priority Tax Claims, Priority Claims, whether listed on the schedules filed by Debtor or filed by any Creditor, on or before the later of (a) one hundred eighty (180) days from the date of filing of any Claim or (b) unless extended by the Bankruptcy Court, twelve (12) months after the Effective Date.

**5.2**     *Resolution of Disputed Claims.*  Subject to Section 5.1 hereof with respect to previously Allowed Claims, all objections to Claims shall be litigated to a Final Order except to the extent the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event the Liquidating Trustee may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

**5.3**     *Estimation.*  The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy

-23-

Code regardless of whether the Liquidating Trustee has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction (pursuant to Section 13.1 of the Plan) to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

       **5.4**    *Distribution on Disputed Claims*.  No Distributions shall be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  In the event, and to the extent, a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Allowed Claim shall receive such Distributions as to which such holder is then entitled under the Plan.

       **5.5**    *Reserve for Disputed Claims*.  With respect to Claims to be paid by the Plan, the Liquidating Trustee shall hold in reserve, for the benefit of each holder of a Disputed Claim, Cash in an amount required by order of the Bankruptcy Court or, in the absence of such order, Cash equal to the Distribution that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in the liquidated amount, if any, asserted on the Effective Date.  If and to the extent that a Disputed Claim becomes an Allowed Claim, on the first Distribution Date that is at least thirty (30) Business Days after such allowance, the Liquidating Trustee shall distribute to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

       **6.1**    *Assumption or Rejection of Executory Contracts*.  All executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, on the Confirmation Date <u>except</u> those executory contracts or unexpired leases that:  (i) have been assumed by the Debtor (or assumed and

-24-

CINLibrary 0115848.0562637 2072519v2

assigned by the Debtor to third parties) on or before the Confirmation Date; (ii) are assumed (or assumed and assigned) after the Confirmation Date by a Final Order granting a motion that is pending as of the Confirmation Date; or (iii) become the subject of a dispute over the amount or manner of cure and for which the Debtor (in consultation with the Committee) prior to the Effective Date, or the Liquidating Trustee on or after the Effective Date, makes a motion to reject such contract or lease based upon the existence of such dispute.

6.2 *Deadline to File Rejection Damage Claims.* Each Entity that is a party to an executory contract or unexpired lease rejected under the Plan must file with the Bankruptcy Court and serve on the Liquidating Trustee, on or before the later of forty five (45) days after entry of the Confirmation Order or twenty (20) days after entry of an order rejecting such contract or lease, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in Distributions under the Plan, related to such alleged rejection damages. Claims for damages for the rejection of an executory contract or unexpired lease shall constitute Class 7 General Unsecured Claims.

## ARTICLE VII

## EXECUTION AND IMPLEMENTATION OF THE PLAN

7.1 *Funding of the Plan.* The Plan shall be funded through the Sale of certain of the Debtor's assets as set forth and approved by the Bankruptcy Court in the Sale Order, and the effective collection and liquidation of the Remaining Assets of the Debtor into Cash.

7.2 *Payment by the Prepetition Senior Lenders Of Amounts In Excess of Limited Proceeds.* Pursuant to the Sale Order, as previously approved by the Bankruptcy Court, as consideration for the releases granted the DIP Lenders, the Prepetition Senior Lenders and SunTrust Bank, as agent for each, and their respective affiliates, officers, directors, shareholders,

-25-

employees, representatives, agents successors and assignees in the Sale Order, the Prepetition Senior Lenders shall pay to the Estate, prior to the Effective Date, or the Liquidating Trust, on or after the Effective Date, any amounts in excess of the Limited Proceeds (as defined in Section 4.3(b) of the Plan) to which the Prepetition Senior Lenders would otherwise be entitled to receive from the Remaining Assets with all such funds in excess of the Limited Proceeds to be distributed pursuant to the terms of the Plan.

7.3     *Creation of the Liquidating Trust.*   On or prior to the Effective Date, the Liquidating Trustee and the Debtor shall execute the Liquidation Trust Agreement.   The Liquidating Trust shall become effective on the Effective Date.  Except to the extent inconsistent with the terms of the Plan, the terms and conditions of the Liquidating Trust Agreement shall govern under the Plan.

7.4     *Vesting of Remaining Assets in the Liquidating Trust.*   Title to the Remaining Assets automatically vests in the Liquidating Trust upon the Effective Date.  On the Effective Date, the Debtor is discharged from its status as Debtor and the affairs and business of the Debtor thereafter shall be conducted by the Liquidating Trust without Bankruptcy Court involvement except as expressly set forth and governed by the Plan.

7.5     *Trust Administration Funds.*  Pursuant to the Sale Order, upon the Closing of the Sale the Prepetition Senior Lenders paid $200,000 to counsel for the Committee to be held on behalf of the Estate.  On the Paladin Settlement Agreement Effective Date, these funds shall be paid to the Liquidating Trust.  Also on the Paladin Settlement Agreement Effective Date, the PEA Assignee shall pay to the Liquidating Trust $150,000 pursuant to the Paladin Settlement Agreement (the "Administrative Expense Payment"); the Debtor will pay to the Liquidating Trust any funds held by the Debtor at that time; and the professionals employed by the Debtor

-26-

CINLibrary 0115848.0562637 2072519v2

and the Committee shall pay to the Liquidating Trust any balances remaining in their professional fee escrow accounts after payment of all allowed fees and expenses of such professionals. All funds paid to the Liquidating Trust shall be used to pay Allowed Administrative Claims and the administrative expenses of the Liquidating Trust as set forth in and consistent with the terms of the Sale Order and this Plan.

**7.6** *Federal Income Tax Treatment of Liquidating Trust.* For federal income tax purposes, the transfer by the Debtor of its title and interest in the Remaining Assets to the Liquidating Trust, pursuant to the terms of the Plan and the Liquidating Trust Agreement, will be treated as a deemed transfer of the title and interest in the Remaining Assets to creditors, that is, the Liquidating Trust beneficiaries, followed by a deemed transfer of the title and interest in the Remaining Assets by the Liquidating Trust beneficiaries to the Liquidating Trust. The Liquidating Trust beneficiaries will be treated as the grantors and owners of the Liquidating Trust for federal income tax purposes. All Remaining Assets transferred to the Liquidating Trust will be valued consistently by the Debtor, the Estate, the Liquidating Trustee, and the Liquidating Trust Beneficiaries, to the extent applicable, for all federal income tax purposes.

**7.7** *Effectuating Documents.* The Liquidating Trustee, or such other person(s) as the Liquidating Trustee may approve pursuant to the Liquidating Trust Agreement, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. Each of the Liquidating Trustee or such other person(s) is authorized to certify or attest to any of the foregoing actions.

-27-

CINLibrary 0115848.0562637 2072519v2

**7.8** *Paladin Settlement Agreement.*

(a) *Incorporation of Paladin Settlement Agreement.* This Plan incorporates all of the terms, conditions and provisions of the Paladin Settlement Agreement as though fully re-written herein.

(b) *Assignment of Construction Claims and Standing to Pursue Construction Claims.* Without limiting the foregoing, on the Paladin Settlement Agreement Effective Date, without any additional actions of the parties to the Paladin Settlement Agreement and without any additional documents, the Liquidating Trust and the Debtor shall be deemed to have assigned to the PEA Assignee the Construction Claims and all of their rights, title and interest therein. Pursuant to the terms of this Plan, the PEA Assignee shall have standing to pursue the Construction Claims on its own behalf and on behalf of the Debtor, the Estate and the Liquidating Trust.

(c) *Allocation of Proceeds of Construction Claims.* In accordance with the Paladin Settlement Agreement, any proceeds of the Construction Claims shall be used as follows:

> (i) First, to pay the PEA Assignee the amount of the Administrative Expense Payment, plus interest at the prime rate in effect from time to time (as published in the Wall Street Journal) until such payment is made;
>
> (ii) Second, to reimburse the PEA Assignee for the Litigation Expenses (subject to the conditions of the Paladin Settlement Agreement); and,
>
> (iii) Third, the remaining proceeds of the Construction Claims shall be paid fifty-five (55%) to the PEA Assignee and forty-five (45%) to the Liquidating Trust (to be distributed by the Liquidating Trust, as set forth in the Sale Order and the Plan, in the manner and priority as all other Remaining Assets).

-28-

# ARTICLE VIII

# LIQUIDATING TRUSTEE

**8.1** *Liquidating Trustee*. The Committee and the Debtor have selected Ronald E. Gold, Esq. to be the Liquidating Trustee and Mr. Gold has accepted such position. The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.

**8.2** *Duties.* The Liquidating Trustee's duties include: (i) the pursuit of Causes of Action, including Avoidance Actions; (ii) objections to, and resolution of, all Claims; (iii) the distribution of funds to pay expenses of the Liquidating Trust and to pay Claims; (iv) the liquidation of the Remaining Assets transferred to the Liquidating Trust on the Effective Date; and (v) such other matters as provided in the Liquidating Trust Agreement. The Liquidating Trustee may employ professionals or other persons, which may include firms that are or were employed by the Debtor or the Committee, in connection with the performance of his duties and compensate such persons for their reasonable fees and expenses in accordance with Section 8.5 hereof. The Liquidating Trustee may compromise or settle any Claims, Causes of Action (including Avoidance Actions) or other matters or disputes relating to the Remaining Assets or the Liquidating Trust without notice or Bankruptcy Court approval.

**8.3** *Payment of Quarterly Fees.* The Liquidating Trustee shall pay the quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the U.S. Trustee until this Chapter 11 Case has been converted, dismissed or closed by the Bankruptcy Court.

**8.4** *Fees and Expenses*. The fees and expenses of the Liquidating Trustee shall be governed by the terms of the Liquidating Trust Agreement. In no event shall the Liquidating Trustee be required to expend his own funds. Any fees and/or expenses incurred after the

-29-

Effective Date on behalf of the Liquidating Trust shall be handled in accordance with the Liquidating Trust Agreement.

**8.5** *Post-Effective Date Professional Fees.* Except as otherwise set forth herein, the reasonable fees and expenses of professionals representing the Liquidating Trust or Liquidating Trustee for services provided after the Effective Date may be paid by the Liquidating Trustee as provided herein without further Court approval. Provided available funds exist, payment shall be made within thirty (30) days after submission of a detailed invoice to the Liquidating Trustee. If the Liquidating Trustee disputes the reasonableness of any such invoice, the undisputed portion of such invoice shall be timely paid, and the affected professional may submit the dispute to the Bankruptcy Court for appropriate resolution. If there are insufficient funds available to pay all fees and expenses of professionals and compensation to the Liquidating Trustee in full, such professionals and the Liquidating Trustee shall share Pro Rata in the available funds until payment in full is made.

**8.6** *Liability; Indemnification.* The Liquidating Trustee shall not be required to give any bond for the faithful performance of his duties hereunder. Except for his or their own gross negligence or willful misconduct, neither the Liquidating Trustee or any professional person, representative, director, officer, employee, or agent of the Liquidating Trust or the Liquidating Trustee (collectively the "Indemnified Liquidating Trust Parties") shall have any liability to any Entity for acts or omissions related to the Liquidating Trust and the Liquidating Trust shall indemnify the Indemnified Liquidating Trust Parties against expenses, including attorney's fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by the Indemnified Liquidating Trust Parties.

-30-

CINLibrary 0115848.0562637 2072519v2

## ARTICLE IX

## DISTRIBUTIONS

**9.1**      *Distributions.*  Distributions to holders of Allowed Claims shall be made by the Liquidating Trustee in accordance with the Liquidating Trust Agreement and the Plan. Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless the Debtor or the Liquidating Trustee, as applicable, have been notified in writing of a change of address, including by the filing of a proof of claim or Administrative Claim request that contains an address for a holder of a Claim different from the address reflected on such Schedule(s) for such holder.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless the Liquidating Trustee is notified in writing of such holder's then current address within sixty (60) days after the date of such attempted Distribution, at which time all missed Distributions shall be made to such holder, without interest, from the date of the first attempted Distribution.  All unclaimed Distributions shall be used to satisfy the costs of administering and fully consummating the Plan and the holder of any such Claim or Interest shall not be entitled to any other or further Distribution under the Plan on account of such Claim or Interest.  Nothing contained in the Plan shall require the Committee, the Debtor, the Liquidating Trustee or any professional retained by the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

**9.2**      *Time Bar to Cash Distribution Checks; Minimum Distribution; Unclaimed Funds.* Distribution checks issued by the Liquidating Trust shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  If any Distribution to a holder of an Allowed Claim is less than $10.00, the holder of such Allowed Claim shall not receive such

-31-

CINLibrary 0115848.0562637 2072519v2

Distribution and shall be forever barred from asserting any Claim therefore against the Debtor, the Estate or the Liquidating Trust. If the Liquidating Trustee determines that there are de minimis undistributed funds held by the Liquidating Trust, such de minimis funds may be donated to a charity selected by the Liquidating Trustee.

**9.3** *Untimely Claims.* Except as otherwise agreed by the Liquidating Trustee, any Claim filed after the applicable Bar Date shall be deemed disallowed and expunged without further notice, action or order of the Bankruptcy Court, and holders of such Claims shall not receive any Distribution on account of such Claims.

**9.4** *Interest on Claims.* Interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing on any Claim unless otherwise expressly provided pursuant to the terms of the Plan.

**9.5** *No Recourse*. No claimant shall have recourse to the Liquidating Trustee other than for the enforcement of rights or Distributions.

## ARTICLE X

## EFFECTS OF CONFIRMATION

**10.1** *Binding Effect.* On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**10.2** *Discharge.* Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtor; provided, however, upon confirmation of the Plan and the occurrence of the Effective Date, Creditors may not seek payment or recourse against or

-32-

otherwise be entitled to any Distribution from the assets of the Debtor, the Estate or the Liquidating Trust except as expressly provided in the Plan.

**10.3**    *Releases and Injunctions.*

(a)    *Releases by Debtor and the Estate*.  **To the extent not previously released by prior orders of the Bankruptcy Court, on the Effective Date, the Debtor, in its individual capacity and as debtor-in-possession, for and on behalf of the Estate, releases and discharges, absolutely, unconditionally, irrevocably and forever, and shall be permanently enjoined from any prosecution or attempted prosecution of, any and all Causes of Action arising from the beginning of time through the Effective Date, against (i) the DIP Lenders, (ii) the Prepetition Senior Lenders; (iii) SunTrust Bank as agent for the DIP Lenders and as agent for the Prepetition Senior Lenders, (iv) Taft Stettinius & Hollister LLP, (v) GlassRatner Advisory & Capital Group, LLC, (vi) any member of the Committee, (vii) Frost Brown and (viii) the respective current members, officers, directors, shareholders, agents, subsidiaries, affiliates, general and limited partners, financial advisors, independent accountants, attorneys, employees, representatives, successors and assignees of the Entities released in subclauses (i) through (vii) of this Section 10.3(a) (the "Related Parties"), acting in such capacities, in any way relating to the Debtor, the Chapter 11 Case or the Plan; provided, however, that the foregoing shall not operate as a waiver of or release from any Causes of Action arising out of (x) the rights of the Debtor or the Liquidating Trustee to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder, and, as to the Entities identified in subclauses (iv) through (vii) and their respective Related Parties, (y) acts or omissions to act involving willful misconduct, recklessness or gross negligence, or (z) transactions avoidable or amounts**

-33-

CINLibrary 0115848.0562637 2072519v2

recoverable under sections 544, 547, 548 and 550 of the Bankruptcy Code. Notwithstanding anything to the contrary in this Plan or the Liquidating Trust Agreement, the releases provided to the Entities identified in subclauses (i) through (iii) and their respective Related Parties are complete and absolute.

(b) *Other Releases*. To the fullest extent permitted by applicable law, each holder of a Claim (whether or not Allowed) against or Interest in the Debtor or the Estate releases and discharges, absolutely, unconditionally, irrevocably and forever, and is permanently enjoined from any prosecution or attempted prosecution of any and all Causes of Action arising from the beginning of time through the Effective Date, against (i) the DIP Lenders, (ii) the Prepetition Senior Lenders; (iii) SunTrust Bank as agent for the DIP Lenders and as agent for the Prepetition Senior Lenders, (iv) Taft Stettinius & Hollister LLP, (v) GlassRatner Advisory & Capital Group, LLC, (vi) any member of the Committee, (vii) Frost Brown and (viii) their respective Related Parties, acting in such capacities, in any way relating to the Debtor, the Chapter 11 Case or the Plan; provided, however, that the foregoing shall not operate as a waiver or release nor shall it enjoin the prosecution of, any Causes of Action arising out of (x) the rights of the Debtor or the Liquidating Trustee to enforce the Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder, and, as to the Entities identified in subclauses (iv) through (vii) and their respective Related Parties, (y) acts or omissions to act involving willful misconduct, recklessness or gross negligence or (z) transactions avoidable or amounts recoverable under §§ 544, 547, 548 and 550 of the Bankruptcy Code.

(c) *Release of Paladin Parties*. On the Paladin Settlement Agreement Effective Date, the Debtor, the Committee and the Liquidating Trust, each in its own right and on

-34-

behalf of the Estate, and each holder of a Claim (whether or not Allowed) shall automatically and without the need for any further action irrevocably, completely and unconditionally waive, release and forever discharge the Paladin Parties of all Paladin Released Claims (except for any Paladin Parties' obligations under the Paladin Settlement Agreement), which the Debtor, the Committee or the Liquidating Trust, each in its own right and on behalf of the Estate, and each holder of a Claim (whether or not Allowed) has, has had or may have in the future against the Paladin Parties or any of them in any way relating to the Debtor, the Chapter 11 Case or the Plan.

(d) *Exculpation*. Except with respect to obligations under the Plan, neither (i) the DIP Lenders, (ii) the Prepetition Senior Lenders; (iii) SunTrust Bank as agent for the DIP Lenders and as agent for the Prepetition Senior Lenders, (iv) Taft Stettinius & Hollister LLP, (v) GlassRatner Advisory & Capital Group, LLC, (vi) any member of the Committee, (vii) Frost Brown, (viii) the Liquidating Trustee, and (ix) their respective Related Parties, solely in their capacity as such, shall have or incur any liability to any Entity whatsoever, including, without limitation, any holder of any Claim or Interest for any act or omission taken in good faith in connection with, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination or confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed pursuant to the Plan, or any contract, instrument, release, or other agreement or document created or entered into, pursuant to or in connection with the Plan, except for willful misconduct, recklessness or gross negligence.

(e) *Injunction*. Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all

-35-

Entities that have held, hold or may hold Claims or Interests in the Debtor or the Estate are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate, or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities, or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate or the Liquidating Trust or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Entities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate or the Liquidating Trust, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Entities; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law.

-36-

(f)     *Preservation of Releases.*  Nothing in this Plan shall reduce the scope of, limit or adversely affect the broader mutual releases included in the DIP Order, the Sale Order or the Paladin Settlement Agreement.

(g)     For clarification, and notwithstanding the provisions of Sections 10.3(a) through 10.3(e) of this Plan, nothing contained in the Plan shall effectuate a release or relinquishment of any right, claim or Cause of Action that the Debtor, the Estate or the Liquidating Trust may have against those Entities listed in **Exhibit C** to the Disclosure Statement.

**10.4**     *Retention of Causes of Action/Reservation of Rights.*

(a)     *Causes of Action.*  As provided in the Sale Order, except as expressly released in the Plan or by prior orders of the Bankruptcy Court, the Liquidating Trustee is granted authority and standing, on behalf of the Debtor, its Estate and the Liquidating Trust to initiate any Causes of Action, including Avoidance Actions, in the name of and on behalf of the Debtor, its Estate and the Liquidating Trust.  The Causes of Action may include:  (i) any and all Causes of Action pursuant to any applicable section of the Bankruptcy Code, including Avoidance Actions; (ii) objections to Claims; (iii) claims that the Estate is entitled to set off or recoupment claims against parties with claims against the Estate; (iv) subject to the limitations in the Paladin Settlement Agreement, claims against the Debtor's current or former shareholders, directors, officers or employees of the Debtor (including James F. Blair, Jim Bleyer, David Cahill, Dale Crumrine, William B. Drury, Roger Gipps, John Hogan, Gregory A. Kruger, Dave McElwain, Steve Patton, Steve Pope, Michael Steed, and Dan Vining) or any insider of the Debtor as defined in section 101(31) of the Bankruptcy Code or any other Entities related to or controlled by the foregoing parties (but expressly excluding the Paladin Parties) for conduct, actions, or failures to act prior to the Petition Date, which conduct is actionable under any theory of law or equity, including,

-37-

but not limited to, breach of fiduciary duty, breach of contract, mismanagement or malfeasance of any kind, self-dealing, abuse of discretion, professional malpractice, fraud, misrepresentation, violations of state or federal securities laws or similar claims, as well as claims that may be recoverable under any applicable insurance policies maintained by the Debtor, Greater Ohio Ethanol, LLC, James F. Blair, William B. Drury, John Hogan or Gregory A. Kruger; and (v) any other litigation or Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtor's business, assets, or operations, or otherwise affecting the Debtor, including actions relating to the design, development, construction, maintenance, repair and operation of the Facility, against any Entities engaged by or which conducted business with the Debtor.  In addition to the foregoing potential defendants, some of the Entities who may be the subject of litigation brought by the Liquidating Trustee (or the PEA Assignee with respect to the Construction Claims) are identified in **Exhibit C** to the Disclosure Statement.  The foregoing potential defendants and the Entities listed on **Exhibit C** to the Disclosure Statement are not exhaustive and if a specific Cause of Action or defendant is not identified thereon, it is because such Cause of Action or defendant is not known to the Debtor or the Liquidating Trustee at this time.  On behalf of the Debtor and its Estate, the Debtor preserves for the Liquidating Trust (and the PEA Assignee with respect to the Construction Claims), the rights to any Causes of Action that may be identified on or after the Effective Date.  The recoveries, if any, from any litigation brought by the Liquidating Trust will depend on many factors, which cannot be predicted at this time.  The Liquidating Trustee may in his sole discretion elect not to pursue any Causes of Action (including Avoidance Actions) the pursuit of which the Liquidating Trustee deems not to be in the best interest of the Estate or the Liquidating Trust.

-38-

(b) *Retention of Causes of Action.* Except as specifically provided herein or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims, or Causes of Action (including any Avoidance Actions) that the Debtor or the Liquidating Trust (or the PEA Assignee with respect to the Construction Claims), as the case may be, may have or which the Liquidating Trustee (or the PEA Assignee with respect to the Construction Claims) may choose to assert on behalf of the Estate or the Liquidating Trust in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, its officers, directors, or representatives, (ii) the avoidance of any transfer by or obligation of the Estate or the Debtor under chapter 5 of the Bankruptcy Code or the recovery of the value of such transfer, (iii) the turnover of any property of the Estate, or (iv) any other Cause of Action not specifically released pursuant to the Plan.

(c) *Reservation of Rights.* Except as specifically provided herein or in the Confirmation Order, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action (including Avoidance Actions), right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Liquidating Trust or the Liquidating Trustee (and the PEA Assignee with respect to the Construction Claims), as the case may be, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action (including Avoidance Actions), rights of setoff, or other legal or equitable defenses which the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee or the PEA

-39-

Assignee or any of them had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtor respecting any Claim, Cause of Action (including Avoidance Actions and the Construction Claims), right of setoff, or other legal or equitable defense left unimpaired by the Plan may be asserted after the Confirmation Date by the Liquidating Trust or the Liquidating Trustee (or the PEA Assignee with respect to the Construction Claims) to the same extent as if the Chapter 11 Case had not been commenced.

(d) **ALL CAUSES OF ACTION SHALL SURVIVE CONFIRMATION AND THE COMMENCEMENT OR PROSECUTION OF CAUSES OF ACTION SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE**. The Liquidating Trustee's right to commence and prosecute Causes of Action (including Avoidance Actions) (or the PEA Assignee's rights with respect to the Construction Claims) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No defendant party to any Cause of Action (including an Avoidance Action or to a Construction Claim) shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Plan, and confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of Causes of Action (including Avoidance Actions and Construction Claims). The Confirmation Order will contain findings that the foregoing shall be sufficient for all purposes to satisfy the requirements of the standard set forth in *Browning v. Levy,* 283 F.3d 761 (6th Cir. 2002).

**10.5** *Preservation of Insurance.* Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover Claims against the Debtor or any other Entity.

-40-

# ARTICLE XI

## MODIFICATION OF THE PLAN

**11.1**  *Modification of the Plan.*  The Debtor and the Committee jointly may alter, amend, or modify the Plan under section 1127 of the Bankruptcy Code at any time prior to the Effective Date, provided that any such alteration, amendment or modification is consistent with the terms of the DIP Order, the Sale Order and the releases provided in this Plan.  After the Effective Date, the Liquidating Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, or to address such matters as may be necessary to carry out the purposes and effects of the Plan.  Notwithstanding any reference herein to the forms of documents to be filed with the Bankruptcy Court prior to the Confirmation Hearing, and without limiting the preceding portions of this Article XI, the Debtor and the Committee jointly may make any non-material changes to such forms prior to the Effective Date.

**11.2**  *Revocation of the Plan.*  The Debtor and the Committee reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor and the Committee revoke or withdraw the Plan, or if confirmation of the Plan does not occur, then the Plan shall be null and void, and nothing contained herein shall:  (i) constitute a waiver or release of any Claims by or against, or Liens in property of, the Debtor; or (ii) serve as an admission of fact or conclusion of law or otherwise prejudice in any manner the rights of the Debtor or the Committee in any further proceedings involving the Debtor.

-41-

CINLibrary 0115848.0562637 2072519v2

## ARTICLE XII

## CONDITIONS TO EFFECTIVE DATE OF PLAN

**12.1** *Conditions to Effective Date.* The Plan may not be consummated unless each of the conditions set forth below has been satisfied:

(a) The Confirmation Order shall have been entered.

(b) The Paladin Settlement Order shall have been entered.

(c) All documents, instruments and agreements, in form and substance satisfactory to the Debtor and the Committee, provided for under or necessary to implement the Plan, including the Liquidating Trust Agreement, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been jointly waived by the Debtor and the Committee.

**12.2** *Notice of Effective Date.* Within five (5) Business Days of the Effective Date the Liquidating Trustee shall file a notice of occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE XIII

## ADMINISTRATIVE PROVISIONS

**13.1** *Retention of Jurisdiction.* Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan as is legally permissible, including:

(a) Determination of the allowability of Claims against, or the administrative expenses of, the Debtor, and the validity, extent, priority, and nonavailability of consensual and nonconsensual liens and other encumbrances;

-42-

(b)     Determination of any of the Debtor's tax liability pursuant to section 505 of the Bankruptcy Code;

(c)     Approval, pursuant to section 365 of the Bankruptcy Code, of all matters related to the assumption, assumption and assignment, or rejection, of any executory contract or unexpired lease of the Debtor;

(d)     Resolution of controversies and disputes regarding the enforcement or interpretation of the Plan, the Confirmation Order, or the Bankruptcy Court's orders that survive confirmation of the Plan pursuant to the Plan or other applicable law;

(e)     Implementation of the provisions of the Plan, and entry of orders in aid of confirmation and consummation of the Plan and enforcing settlements or orders entered during the Chapter 11 Case or as part of the Plan;

(f)     Modification of the Plan pursuant to section 1127 of the Bankruptcy Code;

(g)     To hear and determine all matters related to the Liquidating Trust, including but not limited to:  (i) the formation, operation and winding up of the Liquidating Trust; (ii) the appointment and/or removal of a Liquidating Trustee; and (iii) disputes concerning the administration of the Liquidating Trust and payment of costs and expenses of the Liquidating Trust;

(h)     Entry of a Final Order closing the Chapter 11 Case;

(i)     Resolution of disputes concerning Disputed Claims, Claims for disputed Distributions and recharacterization or equitable subordination of Claims;

(j)     Resolution of any disputes concerning whether an Entity had sufficient notice of, among other things: (i) the Chapter 11 Case; (ii) the applicable Claims' Bar Date; or (iii) the

-43-

CINLibrary 0115848.0562637 2072519v2

hearing on confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder;

(k) Issuance of injunctions, grant and implementation of other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l) Resolution of controversies and disputes regarding settlement agreements, orders, injunctions, judgments, and other matters entered or approved by the Bankruptcy Court in connection with any adversary proceeding, discovery, or contested matter in the Chapter 11 Case;

(m) Correction of any defect, cure of any omission or reconcile any inconsistency in the Plan, the Confirmation Order or any other documents relating to the Plan, as may be necessary to carry out the purposes or intent of the Plan;

(n) Adjudication of any pending adversary proceeding, or other controversy or dispute, in the Chapter 11 Case for the Debtor, which arose pre-confirmation and over which the Bankruptcy Court had jurisdiction prior to confirmation of the Plan;

(o) Adjudication of any Causes of Action (including Avoidance Actions);

(p) Entry and implementation of such orders as may become necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated; and

(q) Determination of any other matters that may arise in connection with or related to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan.

-44-

**13.2**  *Successors and Assigns*.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Entity.

**13.3**  *Severability*.  Should any provision in the Plan be determined to be unenforceable following the Confirmation Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan; provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, including, without limitation, section 1127 of the Bankruptcy Code.

**13.4**  *Governing Law*.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, other federal laws apply, or as otherwise expressly provided in the Plan, the rights and obligations arising under the Plan shall be governed by the laws of the State of Ohio without giving effect to principles of conflicts of law.

**13.5**  *The Committee*.  As of the Effective Date, the duties of the Committee shall terminate except as to any appeal or motion for reconsideration of the Confirmation Order.

**13.6**  *Application of Bankruptcy Code Section 1146*.  The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall be entitled to the tax treatment provided by section 1146 of the Bankruptcy Code and each recording or other agent of any governmental office shall record any such documents of issuance, transfer, or exchange without any further direction or order from the Bankruptcy Court.

**13.7**  *Cramdown.*  In the event a Class votes against this Plan, and this Plan is not withdrawn as provided above, the Debtor reserves the right to affect a "cram down" of this Plan pursuant to section 1129(b) of the Bankruptcy Code.  To the extent any Class is deemed to reject

-45-

this Plan by virtue of the treatment provided to such Class, this Plan shall be "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

**13.8** *Continuation of Injunctions and Stays*.  Unless otherwise provided, all injunctions or stays ordered in the Chapter 11 Case, pursuant to section 105 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date shall remain in full force and effect unless or until subsequently modified or terminated.

[SIGNATURE PAGES IMMEDIATELY FOLLOW]

CINLibrary 0115848.0562637 2072519v2

Respectfully submitted,

**The Official Committee of**　　　　**GOE Lima, LLC**
**Unsecured Creditors**

By: _____　　By:  ___/s/ Gregory A. Kruger_____

　　Kenny Foo　　　　　　　　　　Gregory A. Kruger
　　Chairperson　　　　　　　　　 President

**FIRST AMENDED JOINT PLAN**
**EXHIBIT 1**

**LIQUIDATING TRUST AGREEMENT**

CINLibrary 0115848.0562637 2072536v2

# GOE LIMA, LLC LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Trust Agreement" or the "Agreement") dated this _____ day of _____, 2010, is entered into by and between GOE Lima, LLC, an Ohio limited liability company, debtor and debtor-in-possession in such Chapter 11 Case referred to below (the "Debtor") and Ronald E. Gold, Esq. (the "Liquidating Trustee" or the "Trustee"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Plan (as hereinafter defined).

## RECITALS:

WHEREAS, on October 14, 2008, the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio, Western Division at Toledo (the "Bankruptcy Court"), under Case No. 08-35508 (MAW) (the "Chapter 11 Case"); and

WHEREAS, on _____, 2010, the Debtor and the Official Committee of Unsecured Creditors appointed in the Debtor's case (the "Committee") filed the First Amended Joint Plan of Liquidation (as the same may be amended or modified from time to time, the "Plan");

WHEREAS, by Order dated _____, 2010, the Bankruptcy Court confirmed the Plan, a copy of which Confirmation Order (and the Plan which is attached to the Confirmation Order);

WHEREAS, the Plan and the Confirmation Order, which are incorporated herein by reference, provide for the irrevocable transfer, effective as of the Effective Date, of the Remaining Assets (as hereafter defined) to the Liquidating Trust established by this Trust Agreement and the subsequent administration and Distribution of the Remaining Assets to holders of Allowed Claims in accordance with the Plan;

WHEREAS, the Plan also provides for the appointment of the Liquidating Trustee to administer this Liquidating Trust to and for the benefit of holders of Allowed Claims in accordance with the Plan and this Trust Agreement, and to provide administrative services relating to the implementation of the Plan;

WHEREAS, this Trust Agreement is executed to facilitate the implementation of (A) the Plan, which Plan provides for the establishment of this GOE Lima, LLC Liquidating Trust created by this Trust Agreement and the retention and preservation of the Remaining Assets by the Liquidating Trustee, all for the benefit of holders of Allowed Claims to the extent that such holders of Allowed Claims are entitled to share in the Remaining Assets in accordance with the terms of the Plan (collectively, the "Beneficiaries") and (B) the other articles of the Plan that deal with the collection, liquidation and Distribution of the Remaining Assets as required by the Plan and this Trust Agreement;

WHEREAS, the Liquidating Trust is organized for the primary purposes of (A) holding and preserving the value of the Remaining Assets for Distribution; (B) the reconciliation of Claims under the Plan (to the extent such Claims have not been previously Allowed by the Plan or by previous orders of the Bankruptcy Court); (C) investigating and pursuing potential Causes of Action, including Avoidance Actions; (D) litigating and/or settling Causes of Action, including Avoidance Actions, and (E) making Distributions from the Remaining Assets, if any, to holders of Allowed Claims in accordance with the Plan;

WHEREAS, the Liquidating Trustee's activities, powers, and duties are those determined to be reasonably necessary to, and consistent with, the accomplishment of these purposes;

WHEREAS, the Liquidating Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Trust Agreement;

2

NOW, THEREFORE, in accordance with the Plan and in consideration of the mutual promises and covenants and agreements contained herein, the parties hereto agree and covenant as follows:

## DECLARATION OF LIQUIDATING TRUST

In consideration of the confirmation of the Plan under the Bankruptcy Code, the Debtor and the Liquidating Trustee have executed this Trust Agreement and, effective on the Effective Date of the Plan, in accordance with Section 7.4 of the Plan and section 1123(b)(3) of the Bankruptcy Code, the Debtor and the Debtor's Estate are hereby deemed to have irrevocably assigned, transferred and conveyed, to the Liquidating Trustee, and to its successors and assigns, all the right, title and interests of the Debtor and the Debtor's Estate in and to the Remaining Assets, with no reversionary interest whatsoever therein of the Debtor, to have and to hold unto the Liquidating Trustee and its successors and assigns forever, in trust nevertheless, under and subject to the terms and conditions set forth in this Trust Agreement and in the Plan for the benefit of the Beneficiaries and their successors and assigns permitted under the Plan and this Trust Agreement, as provided for in the Plan and in this Trust Agreement.  Provided, however, upon termination of the Trust in accordance with Article 4.12 hereof, this Trust Agreement shall cease, terminate and be of no further force and effect.  It is further agreed and declared that the Remaining Assets are to be held and applied by the Liquidating Trustee upon the further covenants and terms and subject to the conditions set forth in this Trust Agreement.

## ARTICLE I – DEFINITIONS

1.1    Terms Defined Herein.  For purposes of this Agreement, all capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan

3

and/or the Bankruptcy Code. As used in this Agreement, the following terms shall have the meanings specified below:

"Administrative Expenses" means (A) fees, expenses, and other compensation of the Liquidating Trustee and any accountants, legal counsel, or other professionals or agents employed by the Liquidating Trustee in connection with the administration of the Liquidating Trust, (B) expenses associated with the transfer, disposition, and liquidation of the Remaining Assets, (C) taxes, fees, levies, assessments, and other governmental charges, if any, incurred and payable by the Liquidating Trust, (D) all other costs and expenses of administration of the Liquidating Trust; and, (E) costs and expenses – including fees of legal counsel, for litigating, settling, and otherwise resolving all Causes of Action, including Avoidance Actions, Disputed Claims, and other contested matters relating to the Plan and its consummation.

"Beneficiaries" means the holders of Allowed Claims as defined in the Plan.

"Debtor's Estate" means the bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

"Liquidating Trust" and "Trust" means the trust created by this Trust Agreement.

"Liquidating Trustee" or "Trustee" means Ronald E. Gold, Esq., not individually but, instead, as Liquidating Trustee, or any successor appointed as provided for herein.

"Permitted Investments" means temporary liquid investments such as United States Treasury Bills, short-term interest-bearing certificates of deposits, tax exempt securities, money market accounts, cash-equivalent investments or investments permitted pursuant to section 345 of the Bankruptcy Code or as otherwise permitted under a Final Order of the Bankruptcy Court.

CINLibrary 0115848.0562637 2072536v2

"Remaining Assets" means all legal or equitable interests of the Debtor or the Debtor's Estate in property remaining after the Sale, including but not limited to, the Avoidance Actions and the Causes of Action (except the Construction Claims to the extent that the Construction Claims and proceeds thereof are assigned to the PEA Assignee as provided in the Paladin Settlement Agreement), any and all Trust Recoveries at any time received by the Liquidating Trustee in respect to the Remaining Assets, and all income at any time received by the Liquidating Trustee in respect of any of the foregoing.

"Trust Account" means the account(s) into which the Liquidating Trustee shall deposit those Remaining Assets consisting of the money recovered, if any, from the Causes of Action, including Avoidance Actions.

"Trust Recoveries" means any and all proceeds received by the Liquidating Trust arising from the Remaining Assets, including, without limitation, (A) the prosecution to, and collection of, a final judgment with respect to any Causes of Action (including any Avoidance Actions and the Liquidating Trust's share of the proceeds, if any, from the Construction Claims) and (b) the settlement or other compromise of any Causes of Action (including any Avoidance Actions and the Liquidating Trust's share of the proceeds, if any, from the Construction Claims).

## ARTICLE II - CREATION OF THE TRUST; NAME; PURPOSE; ASSETS

2.1    Purpose.  The primary purpose of the Liquidating Trust is to hold and effectuate an orderly liquidation and disposition of the Remaining Assets and to distribute and pay over to the Beneficiaries the Remaining Assets and the proceeds of the Remaining Assets in accordance with this Trust Agreement and the terms of the Plan with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent

5

with, the liquidation purpose of the Liquidating Trust. The Liquidating Trustee, on behalf of the Liquidating Trust, may perform any activities reasonably necessary to, and consistent with, the purposes set forth in the preceding sentence and the provisions of this Trust Agreement, including, without limitation, the prosecution, enforcement, and settlement of the Causes of Action, including Avoidance Actions, Distribution of the Remaining Assets and the resolution of Disputed Claims, all of which may be done at the Liquidating Trustee's discretion without further approval of the Bankruptcy Court. In furtherance of such purposes with respect to the Remaining Assets, the Liquidating Trustee shall be responsible for pursuing, litigating, settling or abandoning all Causes of Action and Avoidance Actions, which are transferred to the Liquidating Trust, and to be the representative of all Beneficiaries with respect to the Remaining Assets and to perform all obligations specified for the Liquidating Trustee under the Plan. In the event of any inconsistency as set forth in this Trust Agreement and as set forth in the Plan, the provisions of this Trust Agreement shall govern.

      2.2    <u>Appointment of Trustee</u>. Pursuant to the terms of the Plan, Ronald E. Gold, Esq. is hereby named and appointed as the Liquidating Trustee, to act on behalf of the Liquidating Trust and to hold and administer the Remaining Assets, subject to the conditions set forth in this Trust Agreement and in the Plan. The Liquidating Trustee shall endeavor to collect and liquidate all Remaining Assets and close the Liquidating Trust as expeditiously as possible compatible with the best interests of the Beneficiaries.

      2.3    <u>Acceptance</u>. The Liquidating Trustee is willing to, and does hereby, accept the appointment to serve as the Liquidating Trustee and to hold and administer the Remaining Assets pursuant to the terms of this Trust Agreement and the Plan. The Liquidating Trustee agrees to observe and perform all duties and obligations imposed upon the Liquidating Trustee by this

6

Trust Agreement and under the Plan, including, without limitation, to accept and hold and administer the Remaining Assets and otherwise to carry out the purpose of the Liquidating Trust in accordance with the terms and subject to the conditions set forth herein. The Liquidating Trustee shall have the fiduciary duties to the Beneficiaries in the same manner that members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have fiduciary duties to the creditor constituents represented by such a committee. The Liquidating Trustee shall be charged with the responsibility of, among other things (i) distributing cash received from the Remaining Assets and (ii) winding down and terminating the Liquidating Trust as expeditiously as is compatible with the best interests of the Beneficiaries. In connection with and in furtherance of the purposes of the Liquidating Trust, the Liquidating Trustee hereby expressly accepts the transfer of the Remaining Assets, subject to the terms of the Confirmation Order, the Plan and this Trust Agreement. In accepting the Liquidating Trust hereby created, the Liquidating Trustee acts solely as Liquidating Trustee hereunder and not in his individual capacity.

2.4     Name of Trust.  The Liquidating Trust established hereby shall be called and known as the "GOE Lima, LLC Liquidating Trust." In connection with the exercise of his powers as Liquidating Trustee, the Liquidating Trustee may use this name or his own name as the Liquidating Trustee.

2.5     Transfer of Remaining Assets to Trust.  Pursuant to the Sale Order, upon the Closing of the Sale the Prepetition Senior Lenders paid $200,000 to counsel for the Committee to be held on behalf of the Estate. On the Paladin Settlement Agreement Effective Date, these funds shall be paid to the Liquidating Trust. Also on the Paladin Settlement Agreement Effective Date, the PEA Assignee shall pay to the Liquidating Trust $150,000 pursuant to the

7

Paladin Settlement Agreement (the "Administrative Expense Payment"); the Debtor will pay to the Liquidating Trust any funds held by the Debtor at that time; and the professionals employed by the Debtor and the Committee shall pay to the Liquidating Trust any balances remaining in their professional fee escrow accounts after payment of all allowed fees and expenses of such professionals. All funds paid to the Liquidating Trust shall be used to pay Allowed Administrative Claims (as defined in the Plan) and the Administrative Expenses (as defined in this Agreement) as set forth in and consistent with the terms of the Sale Order and the Plan. In addition, effective as of the Effective Date, the Debtor and the Debtor's Estate shall irrevocably transfer, convey and assign the Remaining Assets to the Liquidating Trust with no reversionary interest therein in favor of the Debtor. From and after the transfer, all of the Remaining Assets shall be held by the Liquidating Trustee in trust for the Beneficiaries and the Remaining Assets shall be administered by the Liquidating Trustee on behalf of the Beneficiaries pursuant to the terms of this Trust Agreement and the Plan.

## ARTICLE III - POWERS OF THE LIQUIDATING TRUSTEE

3.1     Title. The legal title to all Remaining Assets shall be vested in the Liquidating Trustee, except that the Liquidating Trustee shall have the power to cause legal title (or evidence of title) to any of the Remaining Assets to be held by any nominee, on such terms, in such manner, and with such power consistent with this Liquidating Trust as the Liquidating Trustee may reasonably determine. The Liquidating Trustee hereby acknowledges that upon creation of the Liquidating Trust, the Beneficiaries shall have the beneficial interest in all Remaining Assets. The ownership of a beneficial interest hereunder shall not entitle any Beneficiary to any title in or to the Remaining Assets as such (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of Remaining Assets or to require an accounting.

8

CINLibrary 0115848.0562637 2072536v2

3.2    General Powers.  Except as otherwise provided in this Trust Agreement or in the Plan, the Liquidating Trustee shall have, without prior or further authorization or further order of the Bankruptcy Court, such powers and authority necessary to fulfill the purpose of the Liquidating Trust set forth in Article 2.1 of this Trust Agreement including, but not limited to, the following:  (A) to prosecute and defend all actions affecting the Liquidating Trust and to compromise or settle any suits, claims, or demands, or waive or release any rights relating to the Liquidating Trust; (B) to prosecute, settle, or otherwise resolve Disputed Claims and Causes of Action, including Avoidance Actions and deposit any proceeds therefrom in the Trust Account for Distribution pursuant to the provisions of the Plan and this Trust Agreement; (C) to make Permitted Investments; (D) to maintain escrows and other accounts, make Distributions to holders of Allowed Claims and take other actions consistent with the Plan and the implementation thereof; (E) to pay Administrative Expenses; (F) to implement and enforce all provisions of the Plan relating to Remaining Assets; (G) to maintain appropriate books and records, including but not limited to, maintaining a record and account for all proceeds received by the Liquidating Trust for Distribution in accordance with the Plan; (H) to abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Liquidating Trustee's choice, any assets that the Liquidation Trustee concludes are of no benefit to the Beneficiaries; and (I) to otherwise engage in all acts that would constitute ordinary course of business in performing the obligations of a Liquidating Trustee under a trust of this type.

3.3    Limitation on the Liquidating Trustee' Powers.  The Liquidating Trustee may invest and reinvest all funds held by the Liquidating Trust (subject to Distribution requirements set forth in the Plan) in Permitted Investments designed to provide a reasonable return to the

9

Liquidating Trust and consistent with liquidity requirements for payment of Administrative Expenses and making of Distributions hereunder. The Liquidating Trustee shall not be responsible, and shall have no liability whatsoever, to the Beneficiaries or any other person or entity for any loss to the Liquidating Trust, or the amount of interest thereon, resulting from the investment thereof in such Permitted Investments. The Liquidating Trustee shall not invest any funds in a security or instrument that does not constitute a Permitted Investment or take any action that may cause the Liquidating Trust to become subject to the provisions of the Investment Company Act of 1940, as amended.

3.4     Selection of Agents and Professionals. The Liquidating Trustee, in his discretion, may select and employ legal counsel (including existing counsel to the Committee), accountants, financial advisors, consultants, and other agents and pay the reasonable fees and expenses of such agents or professionals as Administrative Expenses, subject to the provisions of the Plan.

3.5     Trust Accounts. The Liquidating Trustee may maintain such accounts as necessary at any bank or financial institution organized under the laws of the United States of America or any state thereof, as he may, in his discretion, select in accordance with Section 345(a) of the Bankruptcy Code.

3.6     Settlement of Claims. The Liquidating Trustee shall have the power to compromise or settle Disputed Claims and Causes of Action, including Avoidance Actions, according to the procedures set forth in the Plan and this Trust Agreement, without further approval of the Bankruptcy Court.

3.7     Payment of Administrative Expenses. The Liquidating Trustee shall pay all Administrative Expenses of the Liquidating Trust first from the Liquidating Trust Expense Fund and next from the proceeds of the Causes of Action and Avoidance Actions, if any, as such

10

Administrative Expenses are incurred in the ordinary course of administering the Liquidating Trust.

     3.8     <u>Compensation of the Liquidating Trustee and His Professionals.</u>

     (A)  The Liquidating Trustee shall receive compensation based on customary hourly rates to be paid monthly commencing on the Effective Date and ending upon the termination of the Liquidating Trust.  The Liquidating Trustee's fee will be payable on the first Business Day of the month (being the first day on which banking institutions in the State of Ohio are not authorized or required by law or regulation to be closed) following the month for which service has been rendered.  Such compensation shall be paid as an Administrative Expense.  In addition, the Liquidating Trustee shall be entitled to reimbursement for all reasonable out-of-pocket expenses incurred in the performance of his duties hereunder.  Such fees and reimbursements shall be paid as Administrative Expenses pursuant to Article 3.7 hereof.

     (B)  On or before the last day of each month following the month for which compensation is sought, each of the Liquidating Trustee's professionals seeking compensation shall serve a monthly statement on the Liquidating Trustee provided, however, that failure of any of the professionals to serve a monthly statement on the Liquidating Trustee for any one or more months shall not waive or impair the right of such professionals to subsequently seek compensation for all or any number of such months in a later statement delivered to the Liquidating Trustee.  The Liquidating Trustee will have fifteen (15) days from the date such statement is received to review the statement and object to such statement by serving a written objection on such professional setting forth the precise nature of the objection and the amount at issue. At the expiration of the fifteen (15) day period, the Liquidating Trustee shall promptly pay out in accordance with Article 3.7 hereof, 100% of the amounts requested, except for the portion

11

CINLibrary 0115848.0562637 2072536v2

of such fees and disbursements to which an objection has been made. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party which received an objection to its fees may seek payment of such fees by filing a motion with the Bankruptcy Court on proper notice to the Liquidating Trustee. Such compensation shall be paid as an Administrative Expense.

      3.9    <u>Limitation of Liability and Indemnification of the Liquidating Trustee</u>.

      3.9.1   <u>Standard of Care</u>. The Liquidating Trustee shall exercise the rights and powers vested in him by this Liquidating Trust and use the same degree of care and skill in his exercise as a prudent person would exercise or use under the circumstances in the conduct of that person's own affairs. No provision of this Trust Agreement shall be construed to relieve the Liquidating Trustee from liability for his own grossly negligent actions, his own grossly negligent failure to act, fraud, or his own willful misconduct, except as otherwise provided herein.

      3.9.2   <u>No Liability for Acts of Predecessor</u>. No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any Liquidating Trustee in office prior to the date on which they become Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility.

      3.9.3   <u>No Implied Obligations</u>. Subject to Article 2.3 hereof, the Liquidating Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein and in the Plan, and no implied covenants or obligations shall be read into this Trust Agreement.

12

CINLibrary 0115848.0562637 2072536v2

3.9.4 <u>No Liability for Good Faith Error of Judgment</u>. The Liquidating Trustee shall not be liable for any error of judgment made in good faith, unless it shall be proved that the Liquidating Trustee was grossly negligent in ascertaining the pertinent facts.

3.9.5 <u>Reliance on Agents and Professionals</u>. Except as otherwise provided in this Trust Agreement, the Liquidating Trustee may engage and consult with legal counsel and other agents and professionals selected and employed by him pursuant to Article 3.4 hereof and shall not be liable for any action taken or suffered by the Liquidating Trustee in reliance upon the advise of such counsel, agents or advisors unless it shall be proved that such reliance constituted willful misconduct or gross negligence. The Liquidating Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Remaining Assets.

3.9.6 <u>Reliance on Documents</u>. Except as otherwise provided herein, the Liquidating Trustee: (A) may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties; and (B) shall have no liability or responsibility with respect to the form, execution, or validity thereof and no duty to inquire as to the identity, authority, or rights of the persons so signing or presenting.

3.9.7 <u>No Personal Obligation</u>. None of the provisions hereof shall require the Liquidating Trustee to expend or risk his own personal funds or otherwise incur personal financial liability or expense in the performance of his duties hereunder. Persons dealing with the Liquidating Trustee, or seeking to assert claims against him shall look only to the Remaining

13

CINLibrary 0115848.0562637 2072536v2

Assets, to the extent permitted by the Plan or applicable law, to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of the Liquidating Trust, and the Liquidating Trustee shall have no personal, individual obligation to satisfy any such liability.

3.9.8    Indemnification.  So long as the Liquidating Trustee shall have acted in compliance with the standards of conduct set forth in this Article 3.9, the Liquidating Trustee shall be indemnified by and receive reimbursement from the Remaining Assets against and from any and all losses, claims, damages, and expenses (including, without limitation, any reasonable fees of counsel or other expenses incurred in defense or investigation of actions or proceedings in respect thereof) which he may incur in the exercise and performance of any of his powers and duties under this Trust Agreement.

3.10    Removal of Liquidating Trustee.  The Liquidating Trustee(s) may be removed for cause shown upon application to the Bankruptcy Court by the holders of fifty-one percent (51%) or more in dollar amount of Allowed Claims for each Class of Claims.  For purposes of this Trust Agreement, "cause" shall mean (A) the willful and continued refusal by the Liquidating Trustee to perform his duties as set forth herein (other than due to physical illness or disability); or (B) gross negligence, gross misconduct, fraud, embezzlement or theft.  If a Liquidating Trustee is removed for "cause," as that term is hereinafter defined, he shall not be entitled to any accrued but unpaid fees, reimbursements, or other compensation under this Trust Agreement or otherwise.  If a Liquidating Trustee is removed: (A) by virtue of his or her inability to perform his duties under this Trust Agreement due to illness or other physical or mental disability; (B) following the liquidation of all or substantially all of the Remaining Assets; or (C) for any reason whatsoever other than for "cause," the Liquidating Trustee shall be entitled to all accrued and

14

unpaid fees, reimbursements, and other compensation, to the extent incurred or arising or relating to events occurring before such removal.

3.11     Resignation.     A Liquidating Trustee may resign by an instrument in writing signed by the Liquidating Trustee and filed with the Bankruptcy Court, provided that the Liquidating Trustee shall continue to serve as a Liquidating Trustee after his resignation until the appointment of a successor Liquidating Trustee shall become effective in accordance with Article 3.12 hereof or as the Bankruptcy Court shall otherwise order.

3.12     Appointment of Successor Trustee.     In the event of the death, resignation, incompetence, total disability, or removal of a Liquidating Trustee, the Bankruptcy Court shall have authority to appoint a successor Liquidating Trustee.  Such appointment may specify the date on which such appointment shall be effective.  Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge, and deliver to the Bankruptcy Court and the predecessor Liquidating Trustee (if practicable) an instrument accepting such appointment and the terms and provisions of this Trust Agreement and thereupon the resignation or removal of the retiring Liquidating Trustee shall become effective and such successor Liquidating Trustee without any further act, deed, or conveyance shall become vested with all the rights powers, trusts, and duties of the retiring Liquidating Trustee.

3.13     Trust Continuance.     Unless otherwise ordered by the Bankruptcy Court, the death, incompetence, total disability, resignation, or removal of a Liquidating Trustee shall not operate to terminate the Liquidating Trust created by this Trust Agreement or to revoke any existing agency created pursuant to the terms of this Trust Agreement or invalidate any action theretofore taken by a Liquidating Trustee.  In the event of the resignation or removal of a Liquidating Trustee, the Liquidating Trustee shall promptly execute and deliver such documents,

15

instruments, and other writings as may be reasonably requested by the successor Liquidating Trustee or the Bankruptcy Court.

## ARTICLE IV - DISTRIBUTIONS

4.1     <u>Creditors Must Provide Identifying Information</u>.  In order to receive Distributions, all holders of Allowed Claims shall be required to provide to the Liquidating Trustee, at the address set forth below, such holder's federal tax identification number.  A notice identifying the holder's name, address, and federal tax identification number must be mailed to:

Ronald E. Gold, Esq.
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202

4.2     <u>Distributions</u>.  The Liquidating Trustee shall make Distributions of the proceeds of the Remaining Assets, if any, in the priorities and amounts established in the Plan.  In general, the Liquidating Trustee will distribute at least annually to the Liquidating Trust beneficiaries the net income of the Liquidating Trust plus all proceeds from the sale of assets.  Notwithstanding that general intent, Distributions shall commence if and when there has been sufficient recovery of by the Trust to make a Distribution practical and continue thereafter at such intervals as determined in the Liquidating Trustee's discretion, provided however, that the Liquidating Trustee shall not be required to make any Distribution if the Remaining Assets available for Distribution for the Beneficiaries are not sufficient, in the Liquidating Trustee's discretion to justify incurring the expense to the Liquidating Trust necessarily associated with the making of such Distributions.   The Liquidating Trustee may retain an amount of Remaining Assets reasonably necessary to meet claims and contingent liabilities (including Disputed Claims) and Administrative Expenses.

16

4.3    Disputed Claims.  With respect to Disputed Claims, any Distribution otherwise payable to the holders of such claims shall be held in a reserve account by the Liquidating Trustee pending resolution of the disputed status of such claim.  After final resolution has been reached with respect to the Disputed Claims, any remaining property held in such reserve account will be distributed in accordance with the Plan and this Trust Agreement.

4.4    Distribution After Allowance.  Within thirty (30) Business Days after the date when a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee will distribute to the holders of Disputed Claims that have become Allowed any property in the reserve account that would have been distributed to such Claim holders on the Distribution dates on which Distributions previously were made to Beneficiaries, if the Disputed Claims that have become Allowed had been Allowed Claims, on such earlier Distribution dates.

4.5    No Partial Distribution.  The Liquidating Trustee shall not make any partial Distributions to any holder of any Disputed Claims pending resolution of such Disputed Claims.

4.6    Delivery of Distributions.  The Liquidating Trustee is only required to make a Distribution to a Beneficiary where the Liquidating Trustee has a current mailing address for the Beneficiary and the Beneficiary's tax identification number.  The Liquidating Trustee shall use his reasonable efforts to ascertain this information prior to making such Distributions but shall not be required to overcome these or any other barriers which would prevent a Distribution from being made.

4.7    Fractional Dollars.  Notwithstanding anything to the contrary contained in this Trust Agreement, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under the Plan or this Trust Agreement would otherwise be called for, the actual payment shall reflect a

17

rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

4.8     De Minimis Distributions.  The Liquidating Trustee shall have no obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the holder of an Allowed Claim on the Distribution date has a value of less than $10.00.

4.9     Undeliverable Checks or Uncashed Checks.  The Liquidating Trustee is not be required to make subsequent Distributions to any beneficiaries with Distribution checks which have been returned to the Liquidating Trustee as undeliverable (the "Undeliverable Checks") or Distribution checks which have not been cashed by beneficiaries (the "Uncashed Checks") unless the required information is received from such beneficiaries within 90 days of the first attempted Distribution.

4.10    Unclaimed Property.  All unclaimed or returned Distributions as described in the Plan shall constitute Remaining Assets to be distributed in accordance with the terms of the Plan and this Trust Agreement.

4.11    Charitable Donations.  The Liquidating Trustee may donate to a charitable organization any remaining proceeds after the Liquidation Trustee has made all of the Distributions possible pursuant to the terms and conditions hereof.

4.12    Final Distribution and Termination of Trust.  The final Distribution shall occur upon the payment of all Administrative Expenses and the payment of all Allowed Claims pursuant to the terms set forth in the Plan to the extent funds are available after liquidation of all the Remaining Assets; whereupon the Liquidating Trust created by this Trust Agreement shall terminate and the Liquidating Trustee shall be discharged upon the filing of the Liquidating

18

Trustee's final report with the Bankruptcy Court. In any event, the Liquidating Trust shall, if not sooner terminated pursuant hereto, terminate no later than five (5) years after the date of this Liquidating Trust's formation; *provided, however*, that the Liquidating Trustee may, prior to such termination date, petition a court of competent jurisdiction to extend the termination date in order to more effectively carry out the purposes of the Liquidating Trust. Each extension must be approved by such court within six months of the beginning of the extended term.

## ARTICLE V - ACCOUNTING AND REPORTS TO BENEFICIARIES

5.1     To the extent it is feasible and practicable as determined by the Liquidating Trustee, each Distribution by the Liquidating Trustee shall be accompanied by a report to the Beneficiaries which details and accounts for the Remaining Assets since the prior report. The report shall contain a summary of expenses incurred by the Liquidating Trustee and Distributions made on account of Allowed Claims.

## ARTICLE VI - TAXES

6.1     <u>General Treatment</u>.  For federal income tax purposes, the transfer by the Debtor of its title and interest in the Remaining Assets to the Liquidating Trust, pursuant to the terms of the Plan and the Liquidating Trust, will be treated as a deemed transfer of the title and interest in the Remaining Assets to creditors, that is, the Liquidating Trust beneficiaries, followed by a deemed transfer of the title and interest in the Remaining Assets by the Liquidating Trust beneficiaries to the Liquidating Trust. The Liquidating Trust beneficiaries will be treated as the grantors and owners of the Liquidating Trust for federal income tax purposes. All Remaining Assets transferred to the Liquidating Trust will be valued consistently by the Debtor, the Estate,

19

CINLibrary 0115848.0562637 2072536v2

the Liquidating Trustee, and the Liquidating Trust Beneficiaries, to the extent applicable, for all federal income tax purposes.

6.2     Withholding.  To the extent that the Liquidating Trustee is required by applicable law to withhold or otherwise deduct any taxes, fees, levies, assessments, or other governmental charges in respect of any Distributions made pursuant to the Plan and this Trust Agreement, the Liquidating Trustee shall be entitled to withhold or deduct the amount of such taxes, fees, levies, assessments, or other governmental charges from the gross amounts of such Distributions and remit such amounts to the applicable taxing or other governmental authorities.  Each Beneficiary shall be required to provide the Liquidating Trustee with such Beneficiary's federal tax identification number.  For United States federal income taxes purposes, it is intended that the Liquidating Trust be classified as, a "grantor" trust subject to the provisions of section 671 et. seq. of the Internal Revenue Code, and as a "liquidating" trust under Treasury Regulation section 301.7701-4(d).

6.3     Tax Returns.  The Liquidating Trustee shall be responsible for filing all of the tax returns required for the Liquidating Trust and shall file such returns as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations.

6.4     Proration of Tax Items.  Each Beneficiary's Pro-Rata share of any item of Liquidating Trust income, gain, loss, deduction, or credit for any taxable year shall be the sum of the amounts determined with respect to such Beneficiary: (A) by assigning an equal portion of such item to each day of the taxable year, and (B) then by dividing that portion, Pro-Rata, among all Beneficiaries.  Such items will be subject to tax to the Beneficiaries on a current basis even if no Distributions are made to the Beneficiaries.

20

# ARTICLE VII - TRUST BENEFICIARIES

7.1     Interest of Beneficiaries.  The Beneficiaries shall have a beneficial interest in the Remaining Assets as specified herein and in the Plan.  The ownership of a beneficial interest hereunder shall not entitle any Beneficiary to any title in or to the Remaining Assets, as such, or to any right to call for a partition or division of the same or to require an accounting except as specifically required by the terms hereof.

7.2     Effect of Status of Beneficiary.  The death, incapacity, insolvency, or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate the Liquidating Trust, nor shall it entitle the representatives or creditors of the deceased, incapacitated, insolvent, or bankrupt Beneficiary to an accounting or to take any action in the courts or elsewhere for the Distribution of the Remaining Assets or for partition thereof, nor shall it otherwise affect the rights and obligations of any Beneficiary.

7.3     Conflicting Claims.  In the event the Liquidating Trustee becomes aware of any disagreement or conflicting claims with respect to the Remaining Assets, or if he, in good faith, is in doubt as to any action which should be taken under this Liquidating Trust, he shall have the absolute right, at his election, to do any or all of the following: (A) to the extent and only to the extent of such disagreement or conflict, or to the extent deemed by the Liquidating Trustee necessary or appropriate in light of such disagreement or conflict, withhold or cease all further performance under this Liquidating Trust (save and except for the safekeeping of the Remaining Assets) until the Liquidating Trustee is satisfied that such disagreement or conflicting claims have been fully and finally resolved; (B) file a suit in interpleader or in the nature of interpleader in the Bankruptcy Court or any other court of competent jurisdiction and obtain an order requiring all parties involved to litigate in the Bankruptcy Court their respective claims arising

21

CINLibrary 0115848.0562637 2072536v2

out of or in connection with this Agreement; or (C) file any other appropriate action, adversary proceeding, motion, or other request for relief in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE VIII - JURISDICTION

8.1     The Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust, the Liquidating Trustee and the Remaining Assets as provided in the Plan, including the determination of all controversies and disputes arising under or in connection with the Liquidating Trust or this Trust Agreement.

## ARTICLE IX - BOOKS AND RECORDS

9.1     <u>Access to the Debtor's Books and Records</u>.  As set forth in the Sale Order, the Purchaser shall preserve and grant the Liquidating Trustee full and complete access the Debtor's books and records, upon reasonable notice and during normal business hours, for the purposes of administering the Liquidating Trust until such time as this Chapter 11 case is closed by an order of the Bankruptcy Court.

9.2     The Liquidating Trustee and his professionals are authorized, in their discretion, to destroy or otherwise dispose of the books and records of the Debtor and the books and records of the Liquidating Trust that are in the Liquidating Trustee's or his professionals' possession at any time following six months after filing of the Trust Final Report, without further notice.

## ARTICLE X - MISCELLANEOUS

10.1     <u>Effectiveness</u>.  This Trust Agreement shall become effective upon the Effective Date.

CINLibrary 0115848.0562637 2072536v2

10.2   <u>Governing Law</u>.  This Trust Agreement shall be governed by, construed under, and interpreted in accordance with the laws of the State of Ohio, without regard to its conflict of law provisions.

10.3   <u>Headings</u>.  Sections, subheadings, and other headings used in this Trust Agreement are for convenience of reference only and shall not affect the meaning or interpretation of any provision of this Trust Agreement.

10.4   <u>Severability</u>.  Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof and this Trust Agreement shall be construed, to the extent consistent with the purpose hereof, as if such invalid or unenforceable provision had never been contained herein; further, any such prohibition or unenforceability in any jurisdiction shall not *per se* invalidate or render unenforceable any such provision in any other jurisdiction.

10.5   <u>Amendments</u>.  This Trust Agreement may be amended, modified, terminated, revoked or altered only upon order of the Bankruptcy Court.

10.6   <u>Successors and Assigns</u>.  This Trust Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, administrators, executors, successors, and assigns.

10.7   <u>Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

23

CINLibrary 0115848.0562637 2072536v2

10.8  _Entire Agreement_.  This Trust Agreement, the Plan and the Confirmation Order constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations with respect to the subject matter hereof except as set forth herein or therein.  This Trust Agreement together with the Plan and the Confirmation Order supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to such subject matter.  Except as otherwise authorized by the Bankruptcy Court or specifically provided in this Trust Agreement, the Plan or the Confirmation Order, nothing in this Trust Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

10.9  _Notices_.  (A) All notices, requests or other communications required or permitted to be made in accordance with this Trust Agreement shall be in writing and shall be mailed by first class mail or delivered by courier service or such other means that shall be reasonable and appropriate under the circumstances:

        (i)      if to the Liquidating Trust or Liquidating Trustee:

              Ronald E. Gold, Esq.
              Frost Brown Todd LLC
              2200 PNC Center
              201 East Fifth Street
              Cincinnati, Ohio 45202

        with a copy to:

              Beth A. Buchanan, Esq.
              Frost Brown Todd LLC
              9277 Centre Pointe Drive, Suite 300
              West Chester, OH 45069

CINLibrary 0115848.0562637 2072536v2

GOE Lima, LLC

_____
_____

Attention:  _____

with a copy to:

Timothy J. Hurley, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202

(B)  Any Person may change the address at which it is to receive notices under this Trust Agreement by furnishing written notice to the Liquidating Trustee.

10.10  <u>Tax Identification Numbers</u>.  The Liquidating Trustee may require any Beneficiary to furnish to the Liquidating Trustee with its employer or taxpayer identification number as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any Distribution to any Beneficiary upon such receipt of such identification number and any other information required for the Liquidating Trustee to comply with Internal Revenue Service requirements.  The Debtor shall use its reasonable efforts to provide such information in their possession to the Liquidating Trustee.

10.11  <u>Interpretative Provisions</u>.  (A) All references to the plural herein shall also mean the singular and to the singular shall also mean the plural unless the context otherwise requires; (B) All references to the Debtor and the Liquidating Trustee pursuant to the definitions set forth in this Trust Agreement, or to any other Person herein, shall include their respective successors and assigns; (C) The words "hereof", "herein", "hereunder", "this Trust Agreement" and words of similar import when used in this Trust Agreement shall refer to this Trust Agreement as a whole and not any particular provision of this Trust Agreement and as this Trust Agreement now

25

exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced; (D) the word "including" when used in this Trust Agreement shall mean "including, without limitation".

      10.12 <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same document.

[The remainder of this page is intentionally left blank]

26

CINLibrary 0115848.0562637 2072536v2

IN WITNESS WHEREOF, the undersigned have caused this Trust Agreement to be duly executed as of the day and year first given above to evidence their consent and agreement with the terms and provisions of this Trust Agreement.

GOE LIMA, LLC
Debtor

By_____
Name_____
Title_____



LIQUIDATING TRUSTEE


_____
Ronald E. Gold, Esq.

27

CINLibrary 0115848.0562637 2072536v2

STATE OF _____ )

                                        ) SS:

COUNTY OF _____ )

       Before me, a Notary Public in and for said County and State, personally appeared _____, known to me to be the _____ of GOE Lima, LLC, who executed the Trust Agreement for and on behalf of said limited liability company, this _____ day of _____, 2010.

                                        _____

                                        Notary Public

                                        Residing in _____County

My Commission Expires:

_____

STATE OF _____ )

                                        ) SS:

COUNTY OF _____ )

       Before me, a Notary Public in and for said County and State, personally appeared Ronald E. Gold, Esq., who executed the foregoing Trust Agreement in his individual capacity as Liquidating Trustee, this _____ day of _____, 2010.

                                        _____

                                        Notary Public

                                        Residing in _____County

My Commission Expires:

_____

CINLibrary 0115848.0562637 2072536v2

**FIRST AMENDED JOINT PLAN**
**EXHIBIT 2**

**PALADIN SETTLEMENT AGREEMENT**

CINLibrary 0115848.0562637 2072536v2

<u>SETTLEMENT AGREEMENT</u>

This settlement agreement (the "Agreement") is entered into this ___day of February, 2010, by and among GOE Lima, LLC, debtor and debtor in possession (the "Debtor"), the Official Committee of Unsecured Creditor (the "Committee"), PEA (LIT), LLC (the "Assignee"), and PEA Lima, LLC, a Delaware limited liability company ("PEAL"). The Debtor, the Committee, Assignee and PEAL shall individually be referred to herein as a "Party" and collectively as the "Parties".

<u>Background</u>

A.    On October 14, 2008, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") which has been assigned Case No. 08-35508 (the "Bankruptcy Case").

B.    As evidenced by a notice filed October 22, 2008 (Doc. No. 47), the Committee was appointed in the Bankruptcy Case, pursuant to section 1102(a) of the Bankruptcy Code. The Committee is the duly-constituted and acting committee of unsecured creditors in the Bankruptcy Case pursuant to sections 1102 and 1103 of the Bankruptcy Code.

C.    The Bankruptcy Court entered an order on February 18, 2009 (Doc. No. 360) in the Bankruptcy Case (the "Sale Order"), approving the sale of certain assets of the Debtor (the "Property") to Paladin Ethanol Acquisition, LLC, a Delaware limited liability company ("PEA") or its designee, pursuant to the Purchase Agreement (as defined in the Sale Order). The closing of the sale of the Property PEAL, as

1

CINLibrary 0115848.0562637 2063998v2

designee of PEA, occurred on or about March 20, 2009 (the "Closing"). Proceeds of the sale were disbursed pursuant to the Sale Order.

D.  Pursuant to the terms and conditions of the Purchase Agreement and the Sale Order, PEAL has purchased and owns all claims, demands, choses in action, actions and causes of action of the Debtor's estate against third parties ("Claims") except for (i) Claims of the Debtor, the Debtor's estate, the Committee, or the Liquidating Trust (defined below) arising under chapter 5 of the Bankruptcy Code (the "Avoidance Actions"), (ii) purported Claims of the Debtor, the Debtor's estate, the Committee, or the Liquidating Trust (defined below) against the Debtor's insiders, and (iii) Claims against Smith-Boughan, Inc. ("Smith-Boughan") and Smith-Boughan's bonding company Ohio Farmers Insurance Company and Gortech Global Fabrications LLC, and/or any of its affiliates (hereinafter, "Gortech") (the "Construction Claims"). By way of counterclaim against Smith-Boughan, Inc. in Adversary Proceeding No. 09-03020 and complaint against Ohio Farmers Insurance Company in Adversary Proceeding No. 09-03204, the Debtor commenced its pursuit of the Construction Claims. The Bankruptcy Court has stayed the litigation of the claims and counterclaims asserted by Debtor, Smith-Boughan and Ohio Farmers Insurance Company in these adversary proceedings pending arbitration of these claims and counterclaims. For the avoidance of doubt, the term Construction Claims includes the claims and counterclaims asserted or to be asserted in the litigations or arbitrations involving Smith-Boughan, Ohio Farmers Insurance Company and

2

Gortech as described in this paragraph, and the Claims purchased and owned by PEAL shall be referred to herein as the "PEAL Claims."

E.      The Sale Order provides, in relevant part, that the Debtor and the Committee would propose a joint plan of liquidation (the "Plan") which would provide for the creation of a liquidating trust (the "Liquidating Trust") to which the Debtor will assign and which will thereafter pursue, collect and liquidate the Debtor's Remaining Assets (as defined in the Sale Order), including the Avoidance Actions, the Construction Claims and Claims, if any, of the Debtor, the Debtor's estate, the Committee and the Liquidating Trust against, among others, Gregory A. Kruger, James F. Blair, William B. Drury and John Hogan (the "Insured Claims"). The Plan would designate Ronald E. Gold of Frost Brown Todd LLC, counsel for the Committee, as trustee of the Liquidating Trust ("Liquidating Trustee") to implement and supervise the pursuit, collection and liquidation of the Remaining Assets. The Prepetition Senior Lenders (as defined in the Sale Order) paid $200,000 at the closing of the sale of the Property to be used to pay the costs of administering the Liquidating Trust, including the fees and expenses of the Liquidating Trustee and professionals hired by the Liquidating Trustee. The funds are currently being held by the Committee's counsel pending approval of the Plan.

F.      On July 24, 2009, as contemplated by the Sale Order, the Debtor and Committee filed the Plan with a joint motion (Doc. No. 492) requesting approval of the proposed Disclosure Statement (Doc. No. 490) (the "Proposed Disclosure Statement"). The hearing on approval of the Proposed Disclosure Statement was

3

08-35508-maw    Doc 612    FILED 03/08/10    ENTERED 03/08/10 16:57:28    Page 81 of 92

scheduled for September 24, 2009, but was continued to October 29, 2009 and then again to December 17, 2009, and then again to March 3, 2010, to allow the Parties to continue the negotiations which resulted in this Agreement.

G.    By this Agreement, the Debtor, the Committee, and the Assignee intend to resolve any and all disputes between them, subject to the terms, conditions and limitations set forth herein, and to facilitate the effective and efficient pursuit, collection and liquidation of the Remaining Assets, including the Avoidance Actions, the Insured Claims and the Construction Claims.

NOW THEREFORE, the Debtor, the Committee, and the Assignee, intending to be legally bound hereby, and in consideration of the mutual promises and covenants set forth herein, agree as follows:

1.    Each of the recitals set forth above are incorporated as if fully stated herein.

2.    This Agreement is subject to the approval of the Bankruptcy Court, the confirmation of the Plan, which shall be amended, along with the Liquidating Trust, to comport with the terms of this Agreement, and the Plan becoming effective, as contemplated under the terms of the Plan.  The amended Plan will include an irrevocable, complete and unconditional release of the Paladin Parties (as defined in paragraph 9 below) from any and all claims of the Debtor, the Debtor's estate, Debtor's creditors and the Committee relating to, arising out of or in any respect in connection with any matter involving the Debtor or its estate.

3.    Unless changed by the written agreement of the Parties, this Agreement will become effective (the "Agreement Effective Date") upon the occurrence of both of the following and upon the later of (a) the 15th day following the entry of an

order of the Bankruptcy Court approving this Agreement ("Settlement Approval Order") if no appeal of the Settlement Approval Order has been filed or, if such an appeal has been filed, the date upon which the Settlement Approval Order is affirmed and no further appeals are possible, and (b) the Effective Date (as defined in the Plan) of the Plan. In the event that this Agreement does not become effective, the Parties shall retain all rights, remedies, privileges, set-offs, defenses and claims that they had or may have had prior to entering into this Agreement.

4. The Parties acknowledge that upon the Effective Date the Liquidating Trust will be the assignee and the successor in interest to all of the Debtor's rights, title and interest in the Remaining Assets (and defined in the Sale Order), including but not limited to the Avoidance Actions, the Insured Claims and the Construction Claims, and all of the rights of the Committee and the Debtor under this Agreement. Neither this Agreement nor the terms of the Plan shall modify or impair any of those rights, title(s) and interests, except as set forth herein.

5. On the Agreement Effective Date, without any additional actions by any of the Parties and without any additional documents, the Liquidating Trust and the Debtor shall be deemed to have assigned to the Assignee the Construction Claims and all of their rights, title and interest therein. The Liquidating Trust and the Debtor shall retain all of their rights, title and interest in the Remaining Assets other than the Construction Claims.

6. On the Agreement Effective Date, (a) the Assignee will pay $150,000 (the "Administrative Expense Payment") to the Liquidating Trust, subject to

5

CINLibrary 0115848.0562637 2063998v2

reimbursement as set forth in paragraph 8 below, (b) the Debtor will pay to the Liquidating Trust any funds held by the Debtor at that time and any funds received by the Debtor after the date of this Agreement, and (c) the Committee will pay to the Liquidating Trust the $200,000 described above (all such funds paid to the Liquidating Trust, the "Trust Administration Funds"). The Trust Administration Funds shall be used, subject to appropriate Bankruptcy Court approval, to pay allowed administrative expense claims incurred during the Bankruptcy Case and the administrative expenses of the Liquidating Trust as set forth in and consistent with the terms of the Sale Order and Plan. The Liquidating Trustee and the Committee hereby acknowledge and agree that the Assignee shall have no liability or responsibility for any administrative expense of the Debtor's estate or the Liquidating Trust regardless of whether the Trust Administration Funds are sufficient for the satisfaction of such expenses. Except as provided in paragraph 8(c) below, nothing herein shall obligate the Assignee to make any further payments to the Liquidating Trust under any circumstances. The Debtor and the Committee each acknowledges and agrees to provide the Assignee thirty days' notice of any motion or other action to convert the Bankruptcy Case to a Chapter 7 bankruptcy case under the Bankruptcy Code that may be filed by either the Debtor or the Committee.

7.    The Debtor and the Committee each acknowledges and agrees that PEAL currently has and will continue to have the full, complete, exclusive and unfettered right to pursue and prosecute the PEAL Claims as it determines in its sole and absolute discretion, including, without limitation, the determination not

6

CINLibrary 0115848.0562637 2063998v2

to prosecute any of the PEAL Claims, the direction and making of all decisions in connection with the pursuit of the PEAL Claims, the choice of counsel with respect thereto, and the settlement thereof. The Debtor and the Committee each acknowledges and agrees that, on the Agreement Effective Date, the Assignee shall have the full, complete, exclusive and unfettered right to prosecute the Construction Claims as it determines in its sole and absolute discretion, including, without limitation, the direction and making of all decisions in connection with the pursuit of the Construction Claims, the choice of counsel with respect thereto and the settlement thereof, provided, however, that (a) the Assignee hereby covenants that it shall diligently prosecute the Construction Claims, in its sole discretion as described above, and shall pay the fees and expenses incurred in Assignee's prosecution of such claims (subject to reimbursement as provided herein), (b) any settlement of the Construction Claims shall be subject to the consent of the Liquidating Trustee, which consent will not be unreasonably withheld, and (c) any abandonment of the Construction Claims shall be subject to consultation with the Liquidating Trustee.

8.    Any proceeds of the Construction Claims shall be used as follows:

      A.    First: To pay the Assignee $150,000, the amount of the Administrative Expense Payment, plus interest at the prime rate in effect from time to time (as published in *The Wall Street Journal*) until such payment is made.

      B.    Second: To reimburse the Assignee for all actual and reasonable out of pocket fees and expenses incurred or paid by Assignee or any of its affiliates or designees in connection with or in preparation for its pursuit

7

CINLibrary 0115848.0562637 2063998v2

of the Construction Claims (the "Litigation Expenses").  Assignee shall provide the Liquidating Trust with a statement of the Litigation Expenses prior to said Litigation Expenses being reimbursed from the Construction Claims.

C.  Third:  The remaining proceeds from the Construction Claims shall be paid fifty-five (55%) to the Assignee and forty-five percent (45%) to the Liquidating Trust (to be distributed by the Liquidating Trust as set forth in the Sale Order and the Plan).

9.  On the Agreement Effective Date, the Debtor, the Committee and the Liquidating Trust (individually a "Releasing Party" and collectively "Releasing Parties"), each in its own right and on behalf of the Debtor's estate, shall automatically and without the need for any further action irrevocably, completely and unconditionally waive, release and forever discharge PEA, PEAL, PEA Lima Holdings, LLC, a Delaware limited liability company, PEA Lima Corporation, a Delaware corporation, PEA Lima (CI) Corporation, a Delaware corporation, Greater Ohio Ethanol, LLC, an Ohio limited liability company, GOE Management Company, LLC, an Ohio limited liability company, Paladin Capital Partners Fund, L.P., a Delaware limited partnership, Paladin Capital Partners Co-Investment, LLC, a Delaware limited liability company, Paladin Homeland Security Fund, L.P., a Delaware limited partnership, Paladin Homeland Security Fund (CA), L.P., a Delaware limited partnership, Paladin Homeland Security Fund (Cayman Islands), L.P., a Cayman Islands limited partnership, Paladin (NY), L.P., a Delaware limited partnership, Paladin Homeland Security Fund (NY

8

CINLibrary 0115848.0562637 2063998v2

City), L.P., a Delaware limited partnership, Paladin Homeland Security Co-Investment, LLC, a Delaware limited liability company, Paladin III, L.P., a Delaware limited partnership, Paladin III (Cayman Islands), L.P., a Cayman Islands limited partnership, and Paladin III (NY City), L.P., a Delaware limited partnership, Paladin III (HR), L.P., a Delaware limited partnership, Paladin III (CA), L.P., a Delaware limited partnership, Paladin Ethanol Corporation, a Delaware corporation, Paladin CI Ethanol Corporation, a Delaware corporation, Paladin CP Ethanol Corporation, a Delaware corporation, all parallel vehicles and co-investment vehicles organized by the general partner or manager of any of the foregoing in connection therewith and all portfolio companies of any of the foregoing, and each of their respective present and former officers, directors, members, shareholders, agents, affiliates, partners, consultants, advisors and family members and the successors and assigns of such persons and entities (collectively, the "Paladin Parties") from any and all claims, complaints, demands, actions, choses in action, charges, allegations, causes of action, suits, liabilities, obligations, promises, contracts, agreements, damages, losses, expenses and costs (including, without limitation, actual court costs and attorneys fees) of whatever nature and kind, known and unknown, fixed or contingent, direct or indirect, consequential, equitable or legal, foreseen or unforeseen, matured or unmatured, developed or undeveloped, concealed or unconcealed, wherever made, filed or prosecuted, and whether or not yet asserted, relating to, arising out of or in any respect in connection with the Debtor or any of its existing or prior assets, properties, liabilities or business from the beginning of time until the

9

CINLibrary 0115848.0562637 2063998v2

Agreement Effective Date (individually a "Released Claim" and collectively "Released Claims"), which any of the Releasing Parties now has, has had or may have in the future against the Paladin Parties or any of them. Each of the Releasing Parties hereby represents and warrants to the Paladin Parties that it has not transferred, assigned or subrogated and, on or before the Agreement Effective Date, will not transfer, assign or subrogate any of the Released Claims

10.     Notwithstanding the provisions of paragraph 9 above, the Paladin Parties shall not include James F. Blair, William B. Drury, John Hogan and Gregory A. Kruger, (the "Non-Released Parties"), and the Released Claims shall not include any and all claims of the Debtor, its estate, the Committee and the Liquidating Trust against the Non-Released Parties; provided, however, that any recoveries by the Debtor, its estate, the Committee or the Liquidating Trust on any claims against the Non-Released Parties, other than claims under Chapter 5 of the Bankruptcy Code, shall be limited to the available proceeds of any applicable insurance policies maintained by the Debtor or Greater Ohio Ethanol, LLC, or any of the Non-Released Parties. For disclosure purposes, the Paladin Parties represent that the Non-Released Parties were not involved in the negotiations or documentation of this Agreement.

11.     As of the Agreement Effective Date, the Debtor, the Committee and the Liquidating Trust will have full and complete access to: (a) the Debtor's records now in the possession of PEAL and (b) the records of Greater Ohio Ethanol, LLC and GOE Management Company, LLC relating in any way to the Debtor or the Non-Released Parties, which are now in the possession of PEAL, to allow for the

10

CINLibrary 0115848.0562637 2063998v2

investigation of the Avoidance Actions and the Insured Claims and for the full administration of the Bankruptcy Case until such time as the Bankruptcy Court enters an order closing the Bankruptcy Case, provided, however, that the Debtor, the Committee and the Liquidating Trust shall have access to check registers, invoices and payment records related to the prospective Avoidance Actions immediately upon the execution of this Agreement. No documents described in paragraph 11 shall be withheld on a claim of privilege or otherwise by the Debtor. The documents described in paragraphs 11(b) shall be subject to the terms of a mutually agreeable confidentiality agreement. So as to strictly limit any burdensome discovery, the parties acknowledge and agree that PEAL or a Paladin Party shall respond to reasonable requests for information sent by the Committee or the Liquidating Trustee expressly purporting to seek supplemental documents appearing to exist, but not otherwise produced, based on discovery responses provided by parties other than PEAL or its affiliates, after the Committee and the Liquidating Trustee have first sought to obtain said information from third parties other than PEAL; it being acknowledged and agreed that no discovery request (other than a request for oral examination of PEAL or a Paladin Party, but only in connection with an adversary proceeding or action that is subsequently filed by the Liquidating Trustee in connection with the Insured Claims) shall be propounded upon any Paladin Party and that no Paladin Party shall have any obligation to respond to any discovery request. The parties acknowledge and agree that any materials produced or received pursuant to this Agreement but not relevant to the subject matter hereof shall be tagged and immediately destroyed or

11

08-35508-maw    Doc 612    FILED 03/08/10    ENTERED 03/08/10 16:57:28    Page 89 of 92

returned to the producing party. The parties further agree that as to the documents set forth above in 11(a) and 11(b), if PEAL shall sell the Property after the Effective Date of this Agreement but prior to the close of the Bankruptcy Case, PEAL shall use commercially reasonable efforts to seek to bind any subsequent purchaser of all or substantially all of the Property to the provisions set forth in this paragraph.

12. Each of the Parties agrees that solely with respect to the Insured Claims any releases and time limitations set forth in paragraph 12(a)(B) of the Purchase Agreement are hereby vacated and deleted from the Purchase Agreement solely as to "any claim or cause of action asserted by any party with standing to assert such claim on behalf of the Seller [the Debtor] and its bankruptcy estate" and further agree that there is no deadline, other than applicable statutes of limitation, governing or limiting any Insured Claims or Avoidance Actions that may be brought against the Non-Released Parties by any party in interest. All other releases provided for in said paragraph of the Purchase Agreement are not impaired or otherwise modified.

13. Except to the extent expressly set forth herein, neither this Agreement nor its approval by the Bankruptcy Court, is intended to, nor shall it, limit, modify or otherwise affect the rights or obligations of the Debtor (or its estate), the Committee, the Liquidating Trust, the Liquidating Trustee and PEAL under the Sale Order.

14. This Agreement contains the entire agreement among the Parties with respect to the subject matter contained herein and may be modified or amended only in a

12

CINLibrary 0115848.0562637 2063998v2

writing signed by the Parties which has been approved by the Bankruptcy Court.

15. Each provision of this Agreement shall be deemed to be jointly drafted by the Parties and, therefore, any ambiguity shall not be interpreted against any Party as the drafter of the Agreement.

16. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without regard to conflicts of law, and any disputes shall be resolved by the Bankruptcy Court which shall have exclusive jurisdiction at all times that the Bankruptcy Case is pending. Each of the Parties irrevocably consents for all purposes of this Agreement to the jurisdiction of the Bankruptcy Court and agrees that venue is proper in the Bankruptcy Court.

17. The Parties shall execute and deliver such additional documents and take such additional action as may be necessary to effectuate the provisions of this Agreement.

18. This Agreement shall not be deemed an admission by any of the Parties of any breach or violation of any duty or obligation whatsoever.

19. Each of the Parties hereby warrants and represents that it has the authority and legal right to execute, deliver, and perform this Agreement. Each of the Parties and each person executing this Agreement warrant and represents that such person has been duly authorized to execute this Agreement on behalf of such Party.

20. This Agreement may be executed in counterparts and any executed copy, when taken with another executed copy, shall be considered and deemed an original. Executed counterparts of this Agreement delivered by facsimile machine or

13

electronic mail in PDF form shall be deemed an original for all purposes.

21. Nothing in this Agreement shall confer any rights upon any person or entity other than the Parties hereto and their respective successors and assigns, except for the Paladin Parties as provided in paragraph 9 hereto.

IN WITNESS WHEREOF, the Debtor, the Committee, and Assignee, intending to be legally bound, have caused this Agreement to be duly executed on the dates indicated below.

**PEA (LIT), LLC**

By: _____     Dated: ____2/12/10____
Print Name: _Michael R. Steed_
Title: _Authorized Signator_

**PEA LIMA, LLC**

By: _____     Dated: ____2/12/10.____
Print Name: _Michael R. Steed_
Title: _Authorized Signator_

**GOE LIMA, LLC**

By: _____     Dated: __2/12/2010__
Print Name: _GREGORY A. KRUGER_
Title: _MEMBER, MANAGER, PRESIDENT_

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _____     Dated: __2/11/10__
Print Name: _Ronald t. Gold_
Title: _Counsel_

14